**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-2680

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
CRAIG WRIGHT, and
GORDON MADONNA,
JAMES MICHAEL JONES, and
MARTIN CARTER KEHOE,

      Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE, COLORADO,
CITY OF BOULDER, COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

      Defendants.

---

**COMPLAINT**

---

Plaintiffs submit the following Complaint against Defendants the Town of Superior, Colorado; the City of Louisville, Colorado, the City of Boulder, Colorado, and the Board of County Commissioners of Boulder County (collectively, the "Municipalities").

**I. PARTIES**

1.    Plaintiff RMGO is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4). RMGO seeks to defend the right of all law-abiding individuals to keep and bear arms. RMGO has members who reside within each of the

1

Municipalities. RMGO represents the interests of its members who reside in the Municipalities. Specifically, RMGO represents the interests of those who are affected by the Municipalities' prohibition of commonly used firearms and magazines. In addition to their standing as citizens and taxpayers, those members' interests include their wish to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution and to continue to lawfully possess and/or transfer property that they lawfully obtained. But for the Municipalities' unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, RMGO members would seek to acquire, keep, possess and/or transfer lawful arms for self-defense and other lawful purposes. For purposes of this Complaint, the term "Plaintiffs" is meant to include RMGO in its capacity as a representative of its members.

2. Plaintiff NAGR is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4). NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has members who reside within the Municipalities. NAGR represents the interests of its members who reside in the Municipalities. Specifically, NAGR represents the interests of those who are affected by the Municipalities' prohibition of commonly used firearms and magazines. In addition to their standing as citizens and taxpayers, those members' interests include their wish to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution and to continue to lawfully possess and/or transfer property that they lawfully obtained. But for the Municipalities' unlawful prohibition of commonly used arms and their reasonable fear of prosecution for violating these prohibitions, NAGR members would seek to acquire, keep, possess and/or transfer lawful arms

for self-defense and other lawful purposes. For purposes of this Complaint, the term "Plaintiffs" is meant to include NAGR in its capacity as a representative of its members.

3. Plaintiff Charles Bradley Walker is a resident of the Town of Superior and a law-abiding citizen of the United States. He also currently owns certain semi-automatic firearms that are putatively made illegal by the Superior Ordinance (defined below), and he currently owns magazines capable of holding more than 10 rounds of ammunition. He has possessed this property lawfully for years. He seeks to continue possessing his lawfully owned property, acquire additional arms putatively made illegal by the Superior Ordinance, and lawfully transfer his property to others. But for the Town of Superior's restrictions on commonly used arms, and his reasonable fear of criminal prosecution for violating these restrictions, he would continue to possess his lawfully owned arms, acquire additional arms, and/or transfer them to others.

4. Plaintiff James Michael Jones is a resident of the City of Boulder and a law-abiding citizen of the United States. He currently owns certain semi-automatic firearms that are putatively made illegal by the Boulder Ordinance (defined below), and he currently owns magazines capable of holding more than 10 rounds of ammunition. He has possessed this property lawfully for years. He seeks to continue possessing his lawfully owned property, acquire additional arms putatively made illegal by the Boulder Ordinance, and lawfully transfer his property to others. But for the City of Boulder's restrictions on commonly used arms, and his reasonable fear of criminal prosecution for violating these restrictions, he would continue to possess his lawfully owned arms, acquire additional arms, and/or transfer them to others.

5. Plaintiff Martin Carter Kehoe is a resident of unincorporated Boulder County and is a law-abiding citizen of the United States. He currently owns certain semi-automatic firearms that are putatively made illegal by the County Ordinance (defined below), and he currently owns

3

magazines capable of holding more than 10 rounds of ammunition.  He seeks to acquire additional arms putatively made illegal by the County Ordinance and lawfully transfer his property to others.  But for Boulder County's restrictions on commonly used arms, and his reasonable fear of criminal prosecution for violating these restrictions, he would like to acquire additional arms and/or transfer currently owned arms to others.

6. Plaintiffs Bryan LaFonte, Craig Wright and Gordon Madonna are residents of the City of Louisville and are law-abiding citizens of the United States.  They currently own certain semi-automatic firearms that are putatively made illegal by the Louisville Ordinance (defined below), and they currently own magazines capable of holding more than 10 rounds of ammunition.  They have possessed this property lawfully for years.  They seek to continue possessing their lawfully owned property, acquire additional arms putatively made illegal by the Louisville Ordinance, and lawfully transfer their property to others.  But for the City of Louisville's restrictions on commonly used arms, and their reasonable fear of criminal prosecution for violating these restrictions, they would continue to possess their lawfully owned arms, acquire additional arms, and/or transfer them to others.

7. Defendant Town of Superior is a Colorado statutory town with an address of 124 East Coal Creek Drive, Superior, Colorado 80027.

8. Defendant City of Boulder, Colorado is a Colorado home rule municipal corporation with an address of 1777 Broadway, Boulder, Colorado 80302.

9. Boulder County is a subdivision of the State of Colorado and is a body corporate and politic in the State of Colorado empowered to sue and be sued.  Its address is 1325 Pearl Street, Boulder, Colorado 80302.

4

10. Defendant City of Louisville, Colorado is a Colorado home rule municipal corporation with an address of 749 Main Street, Louisville, Colorado.

11. At all times relevant to this Complaint, Defendants have been or will be acting under color of state law within the meaning of 42 U.S.C. § 1983.

## II. JURISDICTION AND VENUE

12. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983.

13. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

14. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## III. GENERAL ALLEGATIONS

**A. Defendants Enact the Ordinances**

15. The Defendants are all political subdivisions of the State of Colorado. Each Defendant passed separate but substantially similar ordinances regulating certain weapons and accessories, all of which became effective between July 7, 2022 and August 2, 2022.

16. For purposes of this Complaint:

(a) SUPERIOR, COLO., CODE ch. 10, art. IX (as adopted Jun. 7, 2022 in Ord. No. O-9, § 1) shall be referred to as the "Superior Ordinance."

(b) BOULDER, COLO., REV. CODE title 5, ch. 8 (as adopted Jun. 7, 2022 in Ord. Nos. 8494, 8525-29) shall be referred to as the "Boulder Ordinance."

(c) BOULDER COUNTY, COLO., ORDINANCES, Ord. No. 2022-5 (as adopted Aug. 2, 2022) shall be referred to as the "County Ordinance."

(d) LOUISVILLE, COLO., CODE title 9, ch. VIII (as adopted Jun. 7, 2022 in Ord. No. 1831-2022) shall be referred to as the "Louisville Ordinance."

17. Each of the ordinances set forth in the previous paragraph have similar definitions of the statutory terms. One such definition is "assault weapon." The term "assault weapon" as used in these ordinances is not a technical term used in the firearms industry or community for firearms commonly available to civilians. Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by millions of law-abiding American citizens for lawful purposes. Plaintiffs refuse to adopt the Municipalities' politically charged rhetoric in this Complaint. Therefore, for purposes of this Complaint, the term "Banned Firearm" shall have the same meaning as the term "assault weapon" in the respective ordinances.

18. The ordinances' characterization of certain firearms magazines as "large capacity" is a misnomer. Magazines capable of holding more than 10 rounds are standard capacity magazines. Plaintiffs refuse to adopt the Municipalities' politically charged rhetoric in this Complaint. Therefore, for purposes of this Complaint, the term "Banned Magazine" shall have the same meaning as the term "large-capacity magazine" in respective ordinances.

**B.     The Superior Ordinance**

19.     Section 10-9-20 of the Superior Ordinance defines the term "assault weapon." Section 10-9-20 states that the term "illegal weapon" includes any "assault weapon." Section 10-9-40 makes it illegal to possess, sell or otherwise transfer any "illegal weapon."

20.     Under section 10-9-240, a person who legally possessed a Banned Firearm on July 1, 2022, may apply to the Boulder County Sheriff's office for a certificate. If the Boulder County Sheriff issues the certificate, under section 10-9-190, if the person is prosecuted for possessing a Banned Firearm, he may assert as a defense the fact that he has a certificate. After July 1, 2022, no person (including persons who have obtained a certificate) may acquire Banned Firearms or transfer a grandfathered Banned Firearm in the Town, including to members of his own family. Any person who inherits a Banned Firearm must destroy it or remove it from the Town.

21.     Section 10-9-20 defines the term "large-capacity magazine" to mean any firearm magazine capable of holding more than ten rounds of ammunition. Section 10-9-20 states that the term "illegal weapon" includes any "large-capacity magazine." Section 10-9-40 makes it illegal to possess, sell or otherwise transfer any "illegal weapon."

22.     Mr. Walker and RMGO's and NAGR's members currently own and possess Banned Firearms and Banned Magazines in the Town of Superior. Mr. Walker and RMGO's and NAGR's members desire to continue to possess the Banned Firearms and Banned Magazines in the Town. Moreover, they wish to acquire more Banned Firearms and Banned Magazines, transfer their currently owned Banned Firearms and Banned Magazines to other persons in the Town, and bequeath their Banned Firearms and Banned Magazines to their devisees.

**C.     The Boulder Ordinance**

23.     Section 5-8-2 of the Boulder Ordinance defines the term "assault weapon."  Section 5-8-2 states that the term "illegal weapon" includes any "assault weapon."  Section 5-8-10(a) makes it illegal to possess, sell or otherwise transfer any "illegal weapon" in the City of Boulder.

24.     Section 5-8-28 provides an exception to the general illegality of Banned Firearms in the City of Boulder.  Under that section, a person who legally possessed a Banned Firearm on July 1, 2022, may apply to the Boulder Police Department for a certificate.  If the Boulder Police Department issues a certificate to a person and the person is later prosecuted for possession of a Banned Firearm, he may assert as a defense the fact that he has a certificate.  No person in the City (including persons who have obtained a certificate) may acquire Banned Firearms or transfer a grandfathered Banned Firearm in the City, including to members of his own family.  Any person who inherits a Banned Firearm must destroy it or remove it from the City.

25.     Section 5-8-2 defines the term "large-capacity magazine" to mean any firearm magazine capable of holding more than ten rounds of ammunition.  Section 5-8-2 states that the term "illegal weapon" includes any "large-capacity magazine."  Section 5-8-10 makes it illegal to possess, sell or otherwise transfer any "illegal weapon."

26.     Mr. Jones and RMGO's and NAGR's members currently own and possess Banned Firearms and Banned Magazines in the City of Boulder.  Mr. Jones and RMGO's and NAGR's members desire to continue to possess the Banned Firearms and Banned Magazines in the City.  Moreover, they wish to acquire more Banned Firearms and Banned Magazines, transfer their currently owned Banned Firearms and Banned Magazines to other persons in the City, and bequeath their Banned Firearms and Banned Magazines to their devisees.

**D.     The County Ordinance**

27.     Section 1(a) of the County Ordinance defines the terms "assault weapon." Section 2(a) of the Ordinance makes it illegal to manufacture, import, purchase, sell or transfer any so-called "assault weapon" in an unincorporated part of the County.

28.     Section 1(c) of the Ordinance defines the term "large-capacity magazine" to mean any firearm magazine capable of holding more than ten rounds of ammunition. Section 2(a) of the Ordinance makes it illegal to manufacture, import, purchase, sell or transfer any such magazine in an unincorporated part of the County.

29.     Martin Carter Kehoe and RMGO's and NAGR's members who live in unincorporated Boulder County desire to acquire more Banned Firearms and Banned Magazines in unincorporated Boulder County, transfer their currently owned Banned Firearms and Banned Magazines to other persons in Boulder County, and bequeath their Banned Firearms and Banned Magazines to their devisees, all of which are prohibited by the County Ordinance.

**E.     The Louisville Ordinance**

30.     Section 9.80.010 of the Louisville Ordinance defines the term "assault weapon." Section 9.80.010 states that the term "illegal weapon" includes any "assault weapon." Section 9.84.010(a) makes it illegal to possess, sell or otherwise transfer any "illegal weapon" in the City of Louisville.

31.     Section 9.86.010 provides an exception to the general illegality of Banned Firearms in the City of Louisville. Under that section, a person who legally possessed a Banned Firearm on July 1, 2022, may apply to the Louisville Police Department for a certificate. If the Louisville Police Department issues a certificate to a person and the person is later prosecuted for possession of a Banned Firearm, he may assert as a defense the fact that he has a certificate. No person in the

City (including persons who have obtained a certificate) may acquire Banned Firearms or transfer a grandfathered Banned Firearm in the City, including to members of his own family. Any person who inherits a Banned Firearm must destroy it or remove it from the City.

32. Section 9.80.010 defines the term "large-capacity magazine" to mean any firearm magazine capable of holding more than ten rounds of ammunition. Section 9.80.010 states that the term "illegal weapon" includes any "large-capacity magazine." Section 9.84.010(a) makes it illegal to possess, sell or otherwise transfer any "illegal weapon."

33. Bryan LaFonte, Craig Wright and Gordon Madonna and RMGO's and NAGR's members who live in the City currently own and possess Banned Firearms and Banned Magazines in the City of Louisville. Bryan LaFonte, Craig Wright and Gordon Madonna and RMGO's and NAGR's members desire to continue to possess the Banned Firearms and Banned Magazines in the City. Moreover, they wish to acquire more Banned Firearms and Banned Magazines, transfer their currently owned Banned Firearms and Banned Magazines to other persons in the City, and bequeath their Banned Firearms and Banned Magazines to their devisees.

**F.    The Ordinances are Unconstitutional**

34. The provisions of the Superior Ordinance, the Boulder Ordinance, the County Ordinance, and the Louisville Ordinance described in paragraphs 19-21; 23-25; 27-28; and 30-32 shall be referred to collectively as the "Ordinances."

35. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. Amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008) ("*Heller*"); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ("*McDonald*"); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*").

36.     The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment.  *McDonald, supra*.

37.     The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes.  *Heller*, *supra*, at 627.

38.     There is a venerable tradition in this country of lawful private ownership of semiautomatic rifles such as those banned by the Ordinances.  The Supreme Court has held as much.  In *Staples v. United States*, 511 U.S. 600 (1994), the Court noted that semiautomatics, unlike machine guns, "traditionally have been widely accepted as lawful possessions." *Id.*, 511 U.S.  611-12 (identifying the AR-15 – the archetypal "assault weapon" – as a traditionally lawful firearm).  The vast majority of states do not ban the type of semiautomatic rifles deemed "assault weapons" in the Ordinances.

39.     Millions of law-abiding citizens choose to possess firearms such as the Banned Firearms. *Duncan v. Becerra ("Duncan IV")*, 970 F.3d 1133, 1147 (9th Cir. 2020) [1] ("Commonality is determined largely by statistics."); *Ass'n of N.J Rifle & Pistol Clubs, Inc. v. Atty. Gen. N.J.*, 910 F.3d 106, 116 (3d Cir. 2018) (finding an "arm" is commonly owned because "[t]he record shows that millions . . . are owned"); *New York State Rifle & Pistol Ass 'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in *Heller*."); *Heller v. D.C. ("Heller II")*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use.'"). This is demonstrated by the AR-15 and other modem semiautomatic rifles, which epitomize the firearms the Municipalities have banned.

---

[1] , *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and *on reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

40. The AR-15, as just one example among many of a Banned Firearm, is America's "most popular semi-automatic rifle," *Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting), and in recent years it has been "the best-selling rifle type in the United States," Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285, 1296 (2009). Already in early 2013, sources estimated that there were five million AR- 15s in private hands. Dan Haar, *America's Rifle: Rise of the AR-15*, HARTFORD COURANT (Mar. 9, 2013), https://bit.ly/3whtDTj (last visited August 25, 2022); *see also Duncan v. Becerra ("Duncan III")*, 366 F. Supp. 3d 1131, 1145 (S.D. Cal. 2019). [2]

41. Millions of law-abiding citizens own and use for lawful purposes semi-automatic firearms such as the Banned Firearms currently possessed by Plaintiffs. The Ordinances' prohibition on the possession, sale, or other transfer of the Banned Firearms possessed by Plaintiffs and/or their members violates the Second Amendment.

42. Magazines are indisputably "arms" protected by the Second Amendment, as the right to keep and bear arms necessarily includes the right to keep and bear components such as ammunition and magazines that are necessary for the firearm to operate. *See United States v. Miller*, 307 U.S. 174, 180 (1939) (citing seventeenth century commentary recognizing that "[t]he possession of arms also implied the possession of ammunition"); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("[W]ithout bullets, the right to bear arms would be meaningless").

43. The magazines the Municipalities have banned unquestionably satisfy the "common use" test. *Duncan III,*, 366 F. Supp. 3d at 1143-45; *Duncan IV*, 970 F.3d at 1146-47.

---

[2] *aff'd*, 970 F.3d 1133 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and on *reh'g en banc sub nom*. *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), and *rev'd and remanded sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), and *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

44. In *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated by Bruen*, *supra*, Judge Traxler (whose dissenting opinion almost certainly accurately states the law post *Bruen*) stated:

> The record also shows unequivocally that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as there are more than 75 million such magazines owned by them in the United States. These magazines are so common that they are standard on many firearms: On a nationwide basis most pistols are manufactured with magazines holding ten to 17 rounds. Even more than 20 years ago, fully 18 percent of all firearms owned by civilians were equipped with magazines holding more than ten rounds."

*Id.*, 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks omitted).

45. Magazines capable of holding more than 10 rounds of ammunition are commonly owned by millions of Americans for all manner of lawful purposes, including self-defense, sporting, and hunting. They come standard with many of the most popular handguns and long guns on the market, and Americans own roughly 115 million of them, *Duncan IV*, 970 F.3d at 1142, accounting for "approximately half of all privately owned magazines in the United States," *Duncan v. Bonta*, 19 F.4th 1087, 1097 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022). Indeed, the most popular handgun in America, the Glock 17 pistol, comes standard with a 17-round magazine. *See Duncan III*, 366 F.Supp.3d at 1145.

46. There can be no serious dispute that magazines capable of holding more than 10 rounds are bearable arms that satisfy the common use test and thus are presumptively protected by the Second Amendment. Law-abiding citizens own over 115 million magazines such as the Banned Magazines. The Ordinances' prohibition on the possession, sale, or other transfer of the Banned Magazines owned by Plaintiffs and/or their members violates the Second Amendment.

47. The Second Amendment's plain text covers the Banned Firearms and the Banned Magazines. It therefore falls to the Defendants to justify their regulations as consistent with historical tradition rooted in the Founding. This they cannot possibly do so, because *Bruen* has

already established that there is no tradition of banning commonly possessed arms, such as the Banned Firearms and the Banned Magazines.

48.     There is an actual and present controversy between the parties.  The Ordinances infringe on Plaintiffs' right to keep and bear arms under the Second Amendment by generally prohibiting the possession of arms that are commonly possessed by millions of Americans for lawful purposes.  Defendants deny these contentions.  Plaintiffs desire a judicial declaration that the Ordinances, facially and/or as applied to them, violate their constitutional rights.  Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights.  This is true even if certain provisions of the Ordinances provide affirmative defenses to criminal prosecution.  The risk of criminal prosecution on account of exercising a constitutionally protected right unlawfully chills the exercise of that right and thus violates the Constitution even if the criminal defendant ultimately prevails.

49.     Plaintiffs are or will be injured by Defendants' enforcement of the Ordinances insofar as those provisions violate Plaintiffs' rights under the Second Amendment by precluding the acquisition, possession, transfer and use of arms that are "typically possessed by law-abiding citizens for lawful purposes" nationwide.  If not enjoined by this Court, Defendant will enforce the Ordinances in derogation of Plaintiffs' constitutional rights.  Plaintiffs have no plain, speedy, and adequate remedy at law.  Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to Defendant's present or contemplated enforcement of these provisions.

## IV. FIRST CLAIM FOR RELIEF
### Right to Keep and Bear Arms
### U.S. Const., amends. II and XIV

50. Paragraphs 1-49 are realleged and incorporated by reference.

51. The Ordinances ban firearms and firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide. The Ordinances, therefore, generally prohibit residents of the Municipalities including Plaintiffs, from acquiring, keeping, possessing, and/or transferring arms protected by the Second Amendment. There are significant penalties for violations of the Ordinances.

52. These restrictions infringe on the right of the people of the Municipalities, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment.

53. The Ordinances' prohibitions extend into Plaintiffs' homes, where Second Amendment protections are at their zenith.

54. Defendants cannot satisfy their burden of demonstrating that these restrictions on the Second Amendment right of Plaintiffs to bear, acquire, keep, possess, transfer, and use arms that are in common use by law-abiding adults throughout the United States for the core right of self-defense in the home and other lawful purposes are consistent with this Nation's historical tradition of firearm regulation.

## V. PRAYER FOR RELIEF

Plaintiffs pray that the Court:

55. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Ordinances are unconstitutional on their face or as applied to the extent their prohibitions apply to law-abiding

adults seeking to acquire, use, transfer, or possess arms that are in common use by the American public for lawful purposes;

56.   Enter preliminary and permanent injunctive relief enjoining Defendants and their officers, agents, and employees from enforcing the Ordinances;

57.   Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law;

58.   Award actual compensatory and/or nominal damages; and

59.   Grant any such other and further relief as the Court may deem proper.

Respectfully submitted this 12th day of October 2022.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
Voice:  (303) 205-7870; Fax:  (303) 463-0410
Email:   barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033
Phone Number:  (303) 991-7600
Fax Number:  (303) 991-7601
E-mail:   shaun@pearmanlawfirm.com

*Attorneys for Plaintiffs*