IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 22-cv-2680-NYW-SKC**

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
CRAIG WRIGHT,
GORDON MADONNA,
JAMES MICHAEL JONES, and
MARTIN CARTER KEHOE,

      Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE, COLORADO,
CITY OF BOULDER, COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

      Defendants.

---

**RESPONSE TO DEFENDANTS' MOTION PARTIALLY TO STRIKE
MARK PASSAMANECK'S REPORT AND EXCLUDE HIS TESTIMONY**

---

Plaintiffs submit the following response to Defendants' motion partially to strike expert Mark Passamaneck's expert report and exclude his testimony.

## INTRODUCTION

Plaintiffs have designated Mr. Passamaneck to provide testimony regarding the prevalence of "assault weapons"[1] and "large capacity magazines"[1] in the United

---

[1] In using the politically charged terms in the Challenged Ordinances, Plaintiffs do not concede that popular semi-automatic rifles are in any sense "assault weapons." Nor do they concede that the banned standard capacity magazines are "large capacity magazines."

1

States. The National Shooting Sports Foundation ("NSSF") is the firearms industry trade association, and its compilations are the standard source for information about the number of such arms in circulation. Passamaneck Depo. 234:5-13. Both Mr. Passamaneck and Defendants' expert Louis Klarevas make extensive use of NSSF's 2022 compilation in their reports. For example, Dr. Klarevas relied extensively on NSSF's estimate that there were 24.4 million "modern sporting rifles"[2] produced in the United States from 1990 to 2020. *See*, e.g., Exhibit C, 11. And Mr. Passamaneck cited the same figure in his report. Exhibit A, 5. Indeed, the only difference between Dr. Klarevas' and Mr. Passamaneck's estimates is that Mr. Passamaneck's includes an estimate for rifles produced before 1990 and after 2020. Ex. B, 1-2.

Plaintiffs' expert and Defendants' expert are in agreement about two things: (1) The 2022 NSSF compilation is a reliable source of information upon which expert reports can be based; and (2) there are tens of millions of AR and similar rifles in the United States. Indeed, when it comes to estimating the number of such rifles, Plaintiffs are willing to stipulate to Defendants' expert's estimate that there are 24.4 million "modern sporting rifles" in circulation. There is no need to quibble about whether there are 34 million such rifles or "only" 24 million. The important thing is that all parties agree there are tens of millions. And that is sufficient to establish that the rifles are in common use.

Plaintiffs point out the commonality between Dr. Klarevas' and Mr. Passamaneck's reports because it bears on Defendants' motion to strike. Apparently,

---

[2] NSSF's term for AR-15s and similar rifles.

Defendants believe their expert should be able to rely extensively on the NSSF compilation as the basis for his estimate of the number of "assault weapons," but when Plaintiffs' expert relies on the same source of information in his report, the report should be stricken. Unsurprisingly, Plaintiffs do not believe this double standard is appropriate. As set forth in detail below, Mr. Passamaneck is qualified to render his opinion and the methodology he applied is reliable. Therefore, Defendants' motion should be denied.

## LEGAL STANDARD

A proffer of expert testimony is tested against the standard of reliability, not correctness. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008), *citing Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). The proponent need only show that the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used, and that the methodology was otherwise reliably applied. *Id*. "[T]he rejection of expert testimony is the exception rather than the rule." *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017), (quoting Fed. R. Evid. 702 advisory committee's note). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id*. "Vigorous cross-examination and presentation of contrary evidence are the traditional and appropriate means of attacking admissible evidence." *Id*.

This rule applies with even more force when the matter is before the Court and not a jury. "Because this case will be tried to the Court, 'the usual concerns

3

regarding unreliable expert testimony reaching a jury obviously do not arise.'" *Barnett v. Surefire Med., Inc.*, 2021 WL 1015983, at *3 (D. Colo. Mar. 16, 2021) (*quoting Atty. Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779-80 (10th Cir. 2009). Thus, a judge maintains greater leeway in admitting expert evidence, weighing its persuasive value upon presentation. *Id.*

## ARGUMENT

### I. Mr. Passamaneck is Qualified to Render the Challenged Opinion

Mr. Passamaneck is qualified to render his opinions. Rule 702 requires that a witness have expertise resulting from "knowledge, skill, experience, training, or education." Any of these qualifications can be sufficient to support a finding that an expert is qualified. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008), *citing* Fed.R.Evid. 702 Advisory Committee Notes, 2000 Amendments. "Indeed, in some fields, experience alone is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* (internal quotation marks and citations omitted).

Rule 702 does not impose an "overly rigorous" requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training. *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011) (*citing United States v. Velasquez*, 64 F.3d 844, 849 (3rd Cir.1995)). It is sufficient if the expert's experience or knowledge in a field make it appear that his opinion rests on a substantial foundation and aids the trier of fact

4

in its search for truth. *Id.*, 829 F. Supp. 2d at 10418 (internal quotation marks and citations omitted).

Mr. Passamaneck easily meets these criteria. He is the owner of Carbon Arms Corp., a firearms products manufacturing and design company. Depo.Trans. 45:22-46:12. He has approximately 30 years of professional firearms experience as a firearms instructor, engineer and manufacturer. *Id.* 221:16-18; Ex. A, 10. He has read literally thousands of firearms related articles. *Id.* 226:24-227:6. In 2022, he was part of the management team for SHOT Show, the largest firearms tradeshow in the world. *Id.* 226:1-23. He has personally spoken to dozens of firearm and magazine manufacturer agents and representatives about market information. *Id.* 225:9-25. Mr. Passamaneck's company has produced and sold firearm components, including magazines, and after 30 years he has multi-faceted experience in the firearms industry. 229:19-231:16. In summary, Mr. Passamaneck's decades of experience in the firearms field, including experience as a manufacturer of firearms magazines, make him well qualified to render the opinions he has given.

## II. Defendants Misunderstand the Basis of Mr. Passamaneck's Opinion

Defendants argue that Mr. Passamaneck is not qualified to render his opinion because he is not an expert in statistical analysis. Mot. 4. This objection misses the mark because Plaintiffs have not designated Mr. Passamaneck as an expert in statistical analysis. In arriving at his estimates, Mr. Passamaneck relied most prominently on the NSSF industry compilation. Thus, statistical analysis was not

5

necessary to reach his conclusions. As discussed below, Mr. Passamaneck was entitled to rely on the NSSF compilation and other data so long as they are generally relied on in the field. Therefore, it was not necessary for Mr. Passamaneck to be an expert in statistical analysis to rely on this information.

Defendants do not hold their own expert to the same standard. In his report, Dr. Klarevas also based his conclusions about the prevalence of assault weapons on the NSSF compilation. Ex. C, 11. (Indeed, his estimate is based almost exclusively on that compilation, and in that sense is less thorough than Mr. Passamaneck's who reviewed other data sources as well.) But Dr. Klarevas never subjected the NSSF compilation to an independent statistical analysis. Like Mr. Passamaneck, he relied on the NSSF compilation on its face for his estimates. Presumably, he did so because he agrees with Mr. Passamaneck that the NSSF compilation is the best available source of data for the number of arms in circulation and is generally relied on in the field. Once again, Defendants have proposed a double standard: Dr. Klarevas should be allowed to accept the NSSF industry compilation without subjecting it to statistical analysis, but Mr. Passamaneck's report should be stricken because he did not subject the NSSF data to a statistical analysis. For obvious reasons, Plaintiffs disagree with Defendants' double standard.

### III. Mr. Passamaneck's Opinion and the Basis for the Opinion

Mr. Passamaneck's opinion is based primarily on the following information:

(a) An industry compilation produced by NSSF. (Ex. A, 11-28). This compilation discloses that from 1990 to 2020, approximately 24.4 million AR15 and

6

similar rifles (which NSSF calls "modern sporting rifles") were produced. Ex. A, 17. It discloses that in the same period approximately 159 million LCMS were in the possession of consumers.

(b) A 2021 Survey conducted by Georgetown University Professor William English. Ex. B. This survey estimates that Americans have owned some 542 million rifle and handgun magazines that hold more than 10 rounds, with the most common capacity being in excess of 15 rounds. Ex. B, 24-25.

(c) Information received directly from Mag-pul, the largest manufacturer of AR-15 magazines. Ex. A, 2. Mag-pul estimates there are approximately 350 million magazines with a capacity in excess of 15 rounds.

(d) A 2022 Washington Post survey (*Why do Americans own AR-15s?* (March 27, 2023) (available at bit.ly/3G0vbG9)). Ex. A, 2.

Based on this data, Mr. Passamaneck reported that the number of LCMs in circulation is conservatively 159.8 million (based on the NSSF compilation) and probably much higher, perhaps as many as 350 million. He reported that there are conservatively 24.4 million "modern sporting rifles" in circulation (again based on the NSSF compilation) and perhaps as many as 34 million. Ex. A, 2, 6.

## IV.   The Basis of Mr. Passamaneck's Opinion is Reliable

### A.   Experts May Rely on Industry Compilations

The proponent of expert testimony must show that the methodology applied by the witness is reliable, that sufficient facts and data were used, and that the methodology was otherwise reliably applied. *United States v. Crabbe*, 556 F. Supp.

7

2d 1217, 1221 (D. Colo. 2008), *citing Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Mr. Passamaneck's opinion easily meets all of these criteria.

Mr. Passamaneck's method for reaching an opinion was to obtain data from various sources, most prominently the 2022 NSSF industry compilation. Rule 703 requires only that an expert's data be of a type reasonably relied upon by experts in the field. As a general matter, "the cases uniformly recognize that trade and industry publications and compilations can be appropriate sources of facts and data upon which an expert can reasonably rely." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 656 (N.D. Ill. 2006) (collecting cases). With respect to experts in the field of firearms in particular, courts have held that such experts may rely on firearms trade books and other reference materials. *See, e.g., United States v. Thornton*, 642 F.3d 599, 607 (7th Cir. 2011); *United States v. Ware*, 914 F.2d 997, 1003 (7th Cir. 1990); and *United States v. Gresham*, 118 F.3d 258, 266 (5th Cir. 1997).

### B. Defendants' Expert Relied Extensively on the Same NSSF Industry Compilation as Plaintiffs' Expert

Defendants can hardly argue that the NSSF compilation relied on by Mr. Passamaneck is not the sort of data reasonably relied upon by experts in the field, because Dr. Klarevas relied extensively on the same data. Ex. C, 11.[3] The following

---

[3] Indeed, as noted above, when it comes to estimating the number of "assault weapons," Plaintiffs are willing to stipulate to Dr. Klarevas's estimate that there are 24.4 million "modern sporting rifles" in circulation less those possessed by law enforcement. His estimate is generally consistent with Mr. Passamaneck's and the number he estimates (tens of millions) is sufficient to demonstrate that the arms are in common use.

discussion is a sample of the extensive use Dr. Klarevas made of the NSSF compilation.[4]

Dr. Klarevas estimated that there are approximately 24.4 million "modern sporting rifles" (which he uses as a proxy for "assault weapons") in the United States. He based this estimate on the 2022 NSSF compilation:

> Based on National Sport Shooting Foundation (NSSF) and federal government data, "modern sporting rifles"—which is a firearm industry term for AR-15-platform and AK-47-platform firearms—make up approximately 5.3% of all firearms in circulation in American society, according to the most recent publicly available data (24.4 million out of an estimated 461.9 million firearms).

Ex. C, 11

Dr. Klarevas suggested that the NSSF estimate is an overestimation because it includes rifles owned by law enforcement. *Id*. But he nevertheless treated the NSSF data as generally reliable throughout his report.[5] Dr. Klarevas continued:

> The 5.3% ownership rate for modern sporting rifles was calculated using *NSSF* and Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) data. The *NSSF* estimates that there are approximately 24.4 million modern sporting rifles in civilian hands in the United States as of the end of 2020 (when the most recent data are available). *NSSF*, "Commonly Owned: *NSSF* Announces over 24 Million MSRs in Circulation," July 20, 2022, available at https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-million-msrs-in-circulation (last accessed January 3, 2023). In a 2020 report that captured data through the end of 2018, the *NSSF* estimated that there were 433.9 million total firearms in civilian circulation in the United States. *NSSF*, Firearm Production in the United States with Firearm Import and Export Data, Industry Intelligence Report, 2020, at 18,

---

[4] Dr. Klarevas cited the NSSF compilation several times. The quoted passages are only some of the examples.

[5] He does not explain why the fact that a rifle is owned by a law enforcement officer means it should be excluded from the total number of rifles in circulation among citizens. Law enforcement officers are, after all, citizens. Moreover, there are approximately 750,000 law enforcement officers in the United States. Exhibit D, Report of U.S. Department of Justice Bureau of Justice Statistics, 2. Even if one assumes each officer has an AR-15 (certainly a vast overestimation), that still leaves 23.65 million rifles in circulation.

> available at https://www.nssf.org/wp- content/uploads/2020/11/IIR-2020-Firearms-Production-v14.pdf (last accessed January 3, 2023). According to ATF data, in 2019 and 2020, an additional 28.0 million firearms entered the civilian stock nationwide. ATF, National Firearms Commerce and Trafficking Assessment: Firearms in Commerce (2022), at 181, 188, 193, available at https://www.atf.gov/firearms/docs/report/national-firearms-commerce-and-trafficking- assessment-firearms-commerce-volume/download (last accessed January 3, 2023). *Assuming these figures reported by the NSSF and ATF are accurate*, this brings the estimated number of firearms in civilian circulation through the end of 2020 to approximately 461.9 million. The ownership rate is calculated as follows: 24.4 million modern sporting rifles divided by 461.9 million total firearms equals approximately 5.3%.

Ex. C, 11, n.8 (emphasis added).

In summary, Dr. Klarevas based his estimate of the number of "assault weapons" in the United States almost exclusively on the same NSSF compilation relied on by Mr. Passamaneck. Thus, Defendants can hardly suggest that Mr. Passamaneck was somehow remis in relying on this data.

### C. Numerous Courts Have Also Relied on the NSSF Compilation

Numerous courts have relied on NSSF reports in reaching conclusions about the number of firearms and/or magazines in circulation, including the same NSSF report relied upon by Mr. Passamaneck and Dr. Klarevas. *See Barnett v. Raoul*, 2023 WL 3160285, at *10 (S.D. Ill. Apr. 28, 2023) (citing NSSF report for number of arms in circulation); *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 2023 WL 2655150, at *6 (D. Del. Mar. 27, 2023) (same); *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1022 (S.D. Cal. 2021), *vacated and remanded on other grounds*, 2022 WL 3095986 (9th Cir. 2022) (same); *Ass'n of New Jersey Rifle & Pistol Clubs Inc. v. Att'y Gen. New Jersey*, 974 F.3d 237, 256 (3d Cir. 2020), *cert. granted,*

*judgment vacated on other grounds* 142 S. Ct. 2894 (2022) (Matey J. dissenting) (same); *Friedman v. City of Highland Park*, 68 F. Supp. 3d 895, 904 (N.D. Ill. 2014) (same); *Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 786 (D. Md. 2014) (same); and *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 990 F. Supp. 2d 349, 364 (W.D.N.Y. 2013) (same).

### D. Mr. Passamaneck's Other Sources Are Reliable

Mr. Passamaneck also cited a survey published by Georgetown University Professor William English. Exhibit B. In two recent decisions, courts relied on the English study. *See Duncan v. Bonta*, 2023 WL 6180472, at *4 (S.D. Cal. Sept. 22, 2023) (citing English study to estimate number of magazines)l and *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 2023 WL 2655150, at *6 (D. Del. Mar. 27, 2023) ("Taken together, these data [including the English survey] suggest that the banned assault long guns are indeed 'in common use' for several lawful purposes, including self-defense.").

Mr. Passamaneck also supported his conclusions with information he obtained directly from Magpul, the largest manufacturer of AR-15 magazines in the country. Ex. A 2. Numerous courts have held that a firearms expert may rely on information obtained directly from manufacturers. *See e.g.*, *United States v. Gresham*, 118 F.3d 258 (5th Cir. 1997). Defendants asserts that Mr. Passamaneck merely "parrot[ed]" Magpul's statement. Mot. 12. But this is not a valid objection. It is true that Mr. Passamaneck's report would be objectionable if it *merely* quoted a statement from Magpul. But that is not the case. Instead, he applied his expertise

11

to synthesize various sources, including the Magpul statement, to reach his conclusions. In *Gresham*, the court rejected an argument identical to the one advanced by Defendants here. In that case, firearms experts based their opinions in part on discussions with manufacturers. *Id.*, 118 F.3d at 266. The defendant objected on hearsay grounds. The court allowed the expert testimony, holding that experts may base their opinion on hearsay, including discussions with firearms manufacturers. *Id.*

### V. Mr. Passamaneck's Opinion is Reliable; Indeed, His Estimates are Not Reasonably Disputable

As noted above, Mr. Passamaneck estimated that tens of millions of rifles considered to be "assault weapons" by Defendants are owned by American citizens. He estimated that well over 100 million magazines considered "large capacity magazines" are owned by American citizens. Defendants wish to strike Mr. Passamaneck's opinion as unreliable. But far from being unreliable, Mr. Passamaneck's conclusions are not genuinely disputable. Certainly, Defendants have offered no evidence to dispute them. Indeed, the evidence they have offered actually confirms Mr. Passamaneck's conclusions. Moreover, numerous courts have held that these arms are held by millions of American citizens. **As for AR-15 and similar rifles**, *see Barnett v. Raoul*, 2023 WL 3160285, at \*10 (S.D. Ill. Apr. 28, 2023) (citing same 24 million NSSF statistic as Mr. Passamaneck and Dr. Klavevas); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) (millions owned); *Kolbe v. Hogan*, 849 F.3d 114, 128–29 (4th Cir. 2017), *abrogated by Bruen* (millions owned); *United States v. Barber*, 2023 WL 1073667, at \*5 (E.D.

Tex. Jan. 27, 2023) (most popular rifle in America); *Kolbe v. Hogan*, 849 F.3d 114, 153 (4th Cir. 2017), *abrogated by Bruen* (Traxler, J., dissenting) ("beyond any reasonable dispute" that millions are owned); *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039, 136 S. Ct. 447, 449 (2015) (Thomas, J., dissenting) (millions owned); *Heller v. D.C.*, 670 F.3d 1244, 1287 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (millions owned).

**As for magazines** *see Duncan v. Bonta*, 2023 WL 6180472, at *4 (S.D. Cal. Sept. 22, 2023) ("millions of Americans across the country own large capacity magazines. 'One estimate ... shows that ... civilians possessed about 115 million LCMs'"); *Barnett v. Raoul*, 2023 WL 3160285, at *10 (S.D. Ill. Apr. 28, 2023) (hundreds of millions owned); *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 2023 WL 2655150, at *8 (D. Del. Mar. 27, 2023) (tens of millions owned); *Kolbe v. Hogan*, 849 F.3d 114, 129 (4th Cir. 2017), *abrogated by Bruen* (75 million); *Heller v. D.C.*, 670 F.3d 1244, 1261 (D.C. Cir. 2011); *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 2023 WL 2655150, at *6 (D. Del. Mar. 27, 2023) (millions owned); *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 910 F.3d 106, 112 (3d Cir. 2018), *abrogated by Bruen*; *Oregon Firearms Fed'n v. Kotek Oregon All. for Gun Safety*, 2023 WL 4541027, at *10 (D. Or. July 14, 2023) (Millions of Americans today own LCMs); *Wiese v. Becerra*, 263 F. Supp. 3d 986, 991 (E.D. Cal. 2017); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015); *Fyock v. City of*

13

*Sunnyvale*, 25 F. Supp. 3d 1267, 1275 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015).

An expert opinion should be excluded only if it is so "fundamentally unsupported" that it can offer "no assistance" to the trier of fact. *McCullon v. Parry*, 2021 WL 4947237, at *12 (D. Colo. June 23, 2021). It is difficult to understand why Defendants believe Mr. Passamaneck's opinion is "fundamentally unsupported" when his opinion is substantially the same as Defendant's expert and is also consistent with the findings of numerous courts.

## VI. Defendants' Other Objections to the Admissibility of Mr. Passamaneck's Testimony are Meritless

### A. Mr. Passamaneck Has Not "Parroted" Survey Results

Defendants cites *Fish v. Kobach*, 304 F. Supp. 3d 1027 (D. Kan. 2018), where an expert was excluded because his testimony was based entirely on a voter confusion survey performed by another person. *Id.*, at 1038. But the NSSF compilation is not a "survey" like the voter confusion survey in *Fish*. Rather, it is a compilation of data by a trade group that is generally deemed reliable by experts in the firearms field. Such compilations are "uniformly recognize[d]" as an appropriate source of facts for an expert. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 656 (N.D. Ill. 2006). Indeed, the court in *Sulfuric Acid Antitrust Litigation* rejected the exact argument advanced by Defendants here. There the plaintiffs moved to exclude because the expert relied on a report that, like the NSSF compilation, compiled industry data and was accepted in the industry as a reliable source of information. The plaintiffs cited cases involving consumer confusion surveys in support of their

14

argument, but the court held that cases about surveys are not relevant to whether an expert may rely on a compilation of industry data that is widely accepted in the field. *Id.*, 235 F.R.D. at 657.

### B. *Oregon Firearms Fed'n* Has No Bearing on This Case

In *Oregon Firearms Fed'n v. Kotek*, 2023 WL 4698752, at *2 (D. Or. May 31, 2023), the court precluded an expert from testifying regarding the number of rounds fired in self-defense situations because he lacked experience in statistical analysis. Defendants cite this case in support of their motion. Mot. 8. As discussed above, Defendants have a fundamental misunderstanding of the nature of Mr. Passamaneck's testimony. He is not an expert in statistical analysis and he has not based his opinion on statistical analysis. Therefore, the court's conclusion in *Oregon Firearms Fed'n* has no bearing on this case.

### C. Personal Experience is a Valid Ground for an Expert Opinion

Defendants argue that Mr. Passamaneck cannot rely on his three decades of experience in the firearms industry to support his opinion. Mot. 7. This is not accurate. Rule 702 specifically states that experience may be the basis of an opinion. "Indeed, in some fields, experience alone is the predominant, if not sole, basis for a great deal of reliable expert testimony." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (internal quotation marks and citations omitted).

### D. An Expert is not Required to "Verify" a Source He Considers to be Reliable

Defendants object because Mr. Passamaneck did not independently verify the NSSF report, the English report and the Washington Post survey. Mot. 12. But it is

15

not necessary for an expert independently to verify reports upon which he relies so long as the reports are of the type relied upon in the field. *Tilstra v. BouMatic LLC*, 791 F.3d 749, 753 (7th Cir. 2015); *see also Arkansas River Power Auth. v. Babcock & Wilcox Power Co.*, 2016 WL 9734682, at *4 (D. Colo. 2016) (expert not required independently to verify facts relied upon). In *Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 9038355 (N.D. Cal. 2021), the defendant, like Defendants here, objected to an expert's report because he did not verify the studies he relied on. The court rejected the defendant's argument, holding: "it is black letter law that "[t]he facts or data relied upon [by an expert] need not be otherwise admissible if they are 'of a type reasonably relied upon by experts in a particular field.'" *Id.*, at *11 (*quoting Scott v. Ross*, 140 F.3d 1275, 1285-86 (9th Cir. 1998)).

### E.   Defendants Do Not Argue They Were Prejudiced by the Supplemental Report

Mr. Passamaneck submitted a two-page supplemental report several days prior to his deposition to update his opinions based on the latest edition of the NSSF compilation. Ex. A, 5-6. Defendants could not have been surprised by this supplemental report, because it is based on the same NSSF compilation on which their own expert, Dr. Klarevas, relied. Ex. C, 11. Moreover, Defendants' counsel examined Mr. Passamaneck extensively regarding the supplemental report at his 6.5-hour[6] deposition. Depo. Trans., 94-121. Defendants suggest in a footnote that the supplemental report should be stricken because it was late. Mot. 1, n.1. However, they do not claim they suffered any prejudice as a result of the late disclosure, nor

---

[6] Deposition Trans., 249:17.

could they. Thus, Defendants cannot establish any of the factors set forth in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999), showing late production was not harmless, and they did not even try to do so. Defendants thus apparently concede they were not in any way harmed or prejudiced by the late production.

### F. Alleged Errors Go to Weight, not Admissibility

Finally, Defendants assert that Mr. Passamaneck made errors in his report in terms of transcribing source data, grammar, and arithmetic. Mot. 13-14. But attacks of this nature go to the "credibility of the testimony, not the admissibility." *McCullon v. Parry*, 2021 WL 4947237, at *12 (D. Colo. June 23, 2021) (quotation omitted). These are matters Defendants may bring up on cross-examination. *Obeslo v. Great-W. Cap. Mgmt., LLC*, 2019 WL 1651844, at *6 (D. Colo. 2019). They are not a ground for excluding the testimony altogether. *See also Tuft v. Indem. Ins. Co. of N. Am.*, 2021 WL 1041801, at *2 (D. Colo. Feb. 4, 2021) ("[D]oubts . . . concerning the sufficiency of factual basis to support [the expert's] opinion goes to its weight, and not to its admissibility.") (q*uoting Werth v. Makita Electric Works, Ltd.*, 950 F.2d 643, 654 (10th Cir. 1991).

## VII. Defendants' Motion Should be Denied

In summary, Mr. Passamaneck's three decades of experience in the firearms field makes him qualified to render opinions about various topics related to firearms. Even Defendants concede this point to some degree.[7] That experience, especially his

---

[7] Defendants have not objected to Mr. Passamaneck's testimony on some of the firearms topics covered in his report.

17

experience as a manufacturer of magazines, qualifies him to render the opinion challenged by Defendants. The methods Mr. Passamaneck employed are reliable, and the data he used are generally relied upon by experts in the field. Defendants can hardly dispute this, since their own expert has relied on the same methods and data. Therefore, Mr. Passamaneck's testimony is admissible.

Defendants' assertions that Mr. Passamaneck made various errors do not change this conclusion. Plaintiffs do not concede such errors exist, but even if they do, the reliability of the method employed is the standard, not correctness. Only if the expert's opinion is so "fundamentally unsupported" that it can offer "no assistance" to the trier of fact should it be excluded. *McCullon v. Parry*, 2021 WL 4947237, at *12 (D. Colo. June 23, 2021). Far from being fundamentally unsupported, Mr. Passamaneck's report is well supported, and, therefore, Defendants' motion should be denied.

Respectfully submitted this 5th day of October 2023.

*/s/ Barry K. Arrington*
_____

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033
Voice:  (303) 205-7870
Email:  barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033
Phone Number:  (303) 991-7600
Fax Number:  (303) 991-7601
E-mail:  shaun@pearmanlawfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2023, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email to parties of record.

*/s/ Barry K. Arrington*
_____

Barry K. Arrington