**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-2680-NYW-SKC

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN
RIGHTS, CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
CRAIG WRIGHT,
GORDON MADONNA,
JAMES MICHAEL JONES, and
MARTIN CARTER KEHOE,

  Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE,
COLORADO, CITY OF BOULDER,
COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

  Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO PARTIALLY STRIKE EXPERT
REPORTS AND PARTIALLY EXCLUDE TESTIMONY OF MARK PASSAMANECK**

  As shown in Defendants' opening brief, the reports and testimony of Plaintiffs' sole proffered expert—Mr. Mark Passamaneck, a mechanical engineer and competitive shooter—should be excluded because (1) he is unqualified to offer an opinion on the prevalence of assault weapons and large capacity magazines ("LCMs") in the United States, and (2) he did not employ reliable principles or methods in reaching his purported expert opinion.

  Plaintiffs' opposition brief highlights why Defendants' motion should be granted: Not only do Plaintiffs fail to show that Mr. Passamaneck is qualified to provide an expert opinion on

1

the prevalence of assault weapons and LCMs in the United States, they in fact *concede* that he lacks expertise in statistical analysis that would enable him to form an opinion on that question from other sources.  Opp. at 12-13 (Mr. Passamaneck "***is not an expert in statistical analysis and he has not based his opinion on statistical analysis***") (emphasis added).

Even if Mr. Passamaneck were qualified to offer an expert opinion in the first place, his proffered reports and testimony should still be excluded because he failed to verify that his opinion is based on reliable facts or data and failed to follow any reliable methodology in reaching his opinion on the number of assault weapons and LCMs in the United States today.  As confirmed by Plaintiffs' opposition, Mr. Passamaneck's opinion is based on four different third-party sources, none of which he verified or validated.  Instead, he merely parroted their conclusions before offering his own estimate without any explanation as to how he arrived at it.  Such testimony falls far short of the requirements of Federal Rule of Evidence 702.

As explained below, and for the reasons set forth in their opening brief, Defendants respectfully submit that the Court should exclude Mr. Passamaneck's opinions and testimony about the prevalence of assault weapons and LCMs in the United States (the "Numerical Estimates").

I.     **Mr. Passamaneck Is Admittedly Unqualified to Opine as an Expert on Data or Statistical Analysis**

In their opening brief, Defendants showed that Mr. Passamaneck is not qualified to offer an opinion on the Numerical Estimates because he lacks expertise in statistical analysis, is not qualified to evaluate the statistical work of others, and otherwise lacks experience relevant to the Numerical Estimates.  Mot. at 4-9.

In response, Plaintiffs *concede* that Mr. Passamaneck is not an expert in statistical analysis.  Opp. at 5, 12-13.  That concession is fatal.  Plaintiffs' attempts to rehabilitate Mr.

2

Passameneck by arguing that (1) he has significant experience in manufacturing, training, and shooting firearms, (2) experts are entitled to rely on industry data and sources in formulating their opinions, and (3) one of Defendants' unchallenged experts also cites one of the sources that Mr. Passameneck relied on (Opp. at 3-8) lack merit and fail for the reasons below.

*First*, Plaintiffs cannot rescue Mr. Passameneck's testimony by falling back on his personal experience with firearms. That Mr. Passameneck "has approximately 30 years of professional firearms experience as a firearms instructor, engineer and manufacturer" (Opp. at 4) may be true, but it is also irrelevant, as Mr. Passameneck is not offering an opinion regarding the shooting or building of firearms. Plaintiffs fail to explain how Mr. Passameneck's personal experience qualifies him to offer an opinion on the Numerical Estimates, which is a question that necessitates empirical and statistical analysis of data that Mr. Passameneck is not qualified to conduct. *Ramos v. Banner Health*, 1 F.4th 769, 780 (10th Cir. 2021) (rejecting attempt by expert to "invoke vague allusions to his 'experience'" to support his opinion); *accord Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613-614 (7th Cir. 2022) (holding that an expert in one field, regardless of his credentials, is "not permitted to be the mouthpiece of a scientist in a different specialty").

*Second*, Plaintiffs' argument that experts are entitled to rely on industry publications and compilations is a red herring. As a general matter, Defendants do not dispute that experts may rely on standard industry publications and data in formulating their opinions.[1] But that does not help Mr. Passameneck here, as he lacks the expertise to evaluate the industry publications on which he purports to rely. The issue is not with the materials that Mr. Passameneck cites but

---

[1] For this reason, the cases that Plaintiffs cite for the proposition that experts may rely on standard industry publications and data (Opp. at 6-7) are not germane to Defendants' objection to Mr. Passameneck's lack of expertise.

3

rather whether he has the relevant expertise under Rule 702 to opine on it—and he does not. *See Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368 (11th Cir. 2014) ("Expertise in one field does not qualify a witness to testify about others."). Consequently, Plaintiffs' lengthy attempts to bolster the NSSF industry compilation—as well as their inapposite discussion regarding one of Defendants' unchallenged experts, Dr. Louis Klarevas—are beside the point. The problem with Mr. Passamaneck's proffered opinion is that it was not informed, in any way, by his experience as a "firearms instructor, engineer and manufacturer" or his role in the "management team for SHOT Show," a firearms tradeshow. Opp. at 5. Instead, he is offering an opinion on a subject—the Numerical Estimates—that has no relationship to his personal experience.

Mr. Passamaneck's testimony thus offers nothing beyond the sources he cites. For that reason, the *Oregon Firearms* decision is exactly on point. There, the court found that the proffered expert had "ha[d] practical experience in firearms that render[ed] him sufficiently knowledgeable about how LCMs might be useful in self-defense situations" but held that the witness could "not testify about quantifiable data on the frequency with which any particular number of rounds are fired in self-defense situations," because the witness did "not have relevant experience with statistical analyses *or data*." *Or. Firearms Fed'n v. Kotek*, 2023 WL 4698752, at *2 (D. Or. May 31, 2023) (emphasis added). The same is true here—Mr. Passamaneck has no expertise or independent basis to testify about "quantifiable data" regarding the Numerical Estimates. His testimony on that subject should therefore be excluded.

*Third*, Plaintiffs attempt to make much of the fact that one of Defendants' experts, Dr. Klarevas, also references the NSSF publication in his testimony. Opp. at 1-2, 5, 7-9, 14. But Plaintiffs' arguments regarding Dr. Klarevas's testimony are highly misleading. Dr. Klarevas

4

made only limited references to the NSSF publication, in the context of his detailed and unchallenged testimony covering a variety of relevant topics. Moreover, Dr. Klarevas was careful to note the potential shortcomings of relying on NSSF materials.[2] By contrast, Mr. Passamaneck recites the NSSF report without an awareness of its limitations, which is problematic given that the results of this publication are featured "most prominently" (Opp. at 5) in Mr. Passamaneck's challenged opinion regarding the Numerical Estimates.

In sum, Mr. Passamaneck is not qualified to offer an opinion on the Numerical Estimates, and his testimony on this subject should be excluded.

## II. Mr. Passamaneck Employs Neither a Reliable Methodology Nor Supports His Opinion with Sufficient Data or Facts When Making His Numerical Estimates

As Defendants showed in their opening brief, Mr. Passamaneck failed to rely on sufficient or reliable facts or data and failed to use reliable principles or methods. Mot. at 9-14. In their opposition, Plaintiffs make no serious effort to refute any of Defendants' points. As a result, Mr. Passamaneck's testimony should be excluded.

As an initial matter, Plaintiffs concede that "Mr. Passamaneck did not independently verify the NSSF report, the English report and the Washington Post survey." Opp. at 13. Instead, he merely recited the purported results of those sources without any validation or further analysis. Nor did Plaintiffs even attempt to identify the methodology that Mr. Passamaneck used to reach his opinion regarding the Numerical Estimates, because, as becomes evident when his

---

[2] With respect to Plaintiffs' claim that numerous courts have relied on the NSSF publication, a recent decision concluded that the "NSSF Magazine Chart is *entitled to little weight*." *Or. Firearms Fed'n v. Kotek Or. All. For Gun Safety*, 2023 WL 4541027, at *11 (D. Or. July 14, 2023) (emphasis added). There, the court found that the NSSF's Director of Research could not explain "how many industry representatives were consulted to obtain the 'industry insights' data that went into the magazine chart" and further admitted that the "NSSF report could have extrapolated the number of magazines in circulation from *as few as two industry representatives*." *Id.* (emphasis added).

reports and deposition testimony are scrutinized, there was no methodology. Plaintiffs offer no explanation as to whether or how Mr. Passamaneck analyzed, scrutinized, or incorporated the data using methods employed by other experts in his field.[3] Mr. Passamaneck's opinion is based on nothing more than his mere say-so, and when coupled with the many material errors in his report (Mot. at 13-14), his testimony should be excluded.

Plaintiffs' contention that *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646 (N.D. Ill. 2006), rejected the same type of argument misses the mark. There, the question was whether an expert could rely on "a widely used and highly respected industry journal" in formulating his opinion. *Id.* at 656. The court answered that affirmatively but expressly distinguished situations where an "expert did not bring to bear his own expertise on underlying data" and was instead "essentially repeating the expert opinions of others." *Id.* at 657. That is exactly what Mr. Passamaneck has done here. *See Loeffel Steel Prods., Inc. v. Delta Brands, Inc. (Loeffel Steel II)*, 387 F. Supp. 2d 794, 807-09 (N.D. Ill. 2005) (rules governing expert testimony are not designed to permit a witness "to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion"). Plaintiffs' attempt to distinguish *Fish v. Kobach*, 304 F. Supp. 3d 1027 (D. Kan. 2018), likewise fails. Plaintiffs argue that *Fish* is inapposite because "the NSSF compilation is not a 'survey' like the voter confusion survey in *Fish*." Opp. at 12. But nothing in *Fish* turned on the nature of the underlying source at issue. Instead, the issue there—as here—was that the proffered expert did not conduct the survey and lacked "any special skill or experience required to testify about the survey results; *indeed, all but one paragraph simply recites the survey's findings, rather than any opinion*." *Fish*, 304 F. Supp.

---

[3] Indeed, Plaintiffs concede that Mr. Passamaneck's apparent role was collecting other sources rather than conducting his own analysis. Opp. at 8 ("Mr. Passamaneck's method for reaching an opinion was *to obtain data from various sources*, most prominently the 2022 NSSF industry compilation." (emphasis added)).

6

3d at 1038 (emphasis added). The same criticism applies to Mr. Passamaneck.

Plaintiffs' reliance on *United States v. Gresham*, 118 F.3d 258, 266 (5th Cir. 1997), is also misplaced. In that case, the court rejected defendants' hearsay objection to the testimony of two Alcohol Tobacco Firearms specialists who based their opinion on, among other things, discussions with "manufacturers." *Id.* at 266-67. But Plaintiffs misconstrue Defendants' objection to Mr. Passamaneck's testimony, which is not a hearsay objection. Instead, Defendants have shown that Mr. Passamaneck did nothing to verify the scant information he received via a Facebook message from Magpul, nor did he utilize any recognized methodology in incorporating the Magpul estimate into his testimony. It is also notable that Plaintiffs make no effort to show that a two-sentence Facebook message—which on its face is limited to LCMs and expressly states that the estimate is "[s]uper hard" to make—is the type of standard industry information or data regularly relied upon by experts in this field. Mot. Ex. D.

Finally, Plaintiffs' fallback argument that these deficiencies and errors should go to the weight not the admissibility of Mr. Passamaneck's testimony (Opp. at 14) should be rejected, as the appropriate remedy here, based on settled precedent, is exclusion under Rule 702. *See, e.g., Beck's Off. Furniture & Supplies, Inc. v. Haworth, Inc.*, 94 F.3d 655 (table) at *7 (10th Cir. 1996) ("Experts . . . may not merely parrot the opinions of other experts whose conclusions are not themselves in the record."); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (rejecting proffered expert testimony where "there [was] no indication in the record that [the expert] had any familiarity with the methods or reasoning used by [the author of the survey report] in arriving at his projections"); *Fischer v. BMW of N. Am., LLC*, 2021 WL 5458444, at *4 (10th Cir. Nov. 23, 2021) (affirming district court's exclusion of expert opinion because although "testing is not always required to satisfy the reliability threshold of Rule 702 . . . testing of a

theory or calculation is particularly important *when the expert has provided no supporting evidence demonstrating the basis or reliability of his calculation*" (emphasis added)).[4]

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' opening brief, Defendants respectfully request that this Court grant the Motion to strike the Numerical Estimates portion of Mr. Passamaneck's Reports, and to exclude his testimony on that topic.

Dated: October 20, 2023

Respectfully submitted,

By: */s/  Christopher P. Lynch*

Antonio J. Perez-Marques
James H.R. Windels
Christopher P. Lynch
David B. Toscano
Hendrik van Hemmen
Jennifer Kim
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4515
antonio.perez@davispolk.com
james.windels@davispolk.com
christopher.lynch@davispolk.com
david.toscano@davispolk.com
hendrik.vanhemmen@davispolk.com
jennifer.kim@davispolk.com
*Counsel for All Defendants*

Carey R. Dunne
Kevin Trowel
Martha Reiser
FREE AND FAIR LITIGATION GROUP

---

[4] Plaintiffs further attempt to rehabilitate Mr. Passamaneck's testimony by arguing that his estimates are consistent with other court decisions and "are not genuinely disputable." Opp. at 10-11. Leaving aside that many of Mr. Passamaneck's estimates are disputable (and indeed challenged in Dr. Klarevas's rebuttal report), citing to other sources and estimates does nothing to establish whether Mr. Passamaneck was qualified to offer his testimony or whether his opinion was based on reliable principles and methods.

8

266 W. 37th Street, 20th Floor
New York, NY 10018
(917) 499-2279
carey@freeandfairlitigation.org
kevin@freeandfairlitigation.org
martha@freeandfairlitigation.org
*Counsel for All Defendants*

William Taylor
EVERYTOWN LAW
450 Lexington Avenue, #4184
New York, NY 10017
(646) 324-8215
wtaylor@everytown.org
*Counsel for All Defendants*

Gordon L. Vaughan
VAUGHAN & DEMURO
111 South Tejon Street
Suite 545
Colorado Springs, CO 80903
(719) 578-5500
gvaughan@vaughandemuro.com
*Counsel for Town of Superior and Town of Louisville*

Luis A. Toro
Teresa T. Tate
BOULDER CITY ATTORNEY'S OFFICE
P.O. Box 791
1777 Broadway
Boulder, CO 80306
(303) 441-3020
torol@bouldercolorado.gov
tatet@bouldercolorado.gov
*Counsel for the City of Boulder*

David Evan Hughes
Catherine R. Ruhland
BOULDER COUNTY ATTORNEY'S OFFICE
P.O. Box 471
Boulder, CO 80306
(303) 441-3190
dhughes@bouldercounty.org
truhland@bouldercounty.org

9

*Counsel for the Board of County Commissioners of Boulder County*

## CERTIFICATE OF SERVICE

   I hereby certify that on October 20, 2023, I served a true and complete copy of the foregoing **DEFENDANTS' REPLY MOTION TO PARTIALLY STRIKE EXPERT REPORT AND PARTIALLY EXCLUDE TESTIMONY OF MARK PASSAMANECK**, upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Barry Kevin Arrington
Arrington Law Firm
3801 East Florida Ave., Suite 830
Denver, CO 80210
barry@arringtonpc.com

*Attorneys for Plaintiffs*

Dated: October 20, 2023

                Respectfully submitted,

      By: */s/ Christopher P. Lynch*
          Christopher P. Lynch
          DAVIS POLK & WARDWELL LLP
          450 Lexington Avenue
          New York, NY 10017
          (212) 450-4515
          christopher.lynch@davispolk.com
          *Counsel for All Defendants*