# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 22-cv-2680-NYW-SKC**

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
GORDON MADONNA,
JAMES MICHAEL JONES, and
MARTIN CARTER KEHOE,

      Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE, COLORADO,
CITY OF BOULDER, COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

      Defendants.

---

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

Exhibits Referenced in Defendants' Summary Judgment Briefing ....................................v

Introduction ........................................................................................................................1

Argument ............................................................................................................................3

I.    Assault Weapons and LCMs Are Beyond the Scope of the Second Amendment and the Court Should Therefore Grant Summary Judgment in Favor of Defendants at *Bruen's* First Step ........................................................3

    A.   The "Common Use" Inquiry Is Part of *Bruen's* First Step ...............................3

    B.   Assault Weapons and LCMs Are Not in Common Use Today for Self-Defense ..............................................................................................................4

    C.   LCMs Are Not Arms and They Are Not Necessary to the Functioning of Any Firearm ...................................................................................................9

    D.   "Dangerous and Unusual Weapons" Are Beyond the Scope of the Second Amendment ..............................................................................................11

II.   The Ordinances Are Consistent with the Nation's Historical Tradition of Regulating Particularly Dangerous Weapons and the Court Should Therefore Grant Summary Judgment in Defendant's Favor at *Bruen's* Second Step ...................................................................................................12

    A.   Plaintiffs Have Not Rebutted Defendants' Historical Evidence ............13

    B.   The Court Should Apply the "More Nuanced" Approach to Analogical Reasoning Described in *Bruen* ........................................................14

    C.   Plaintiffs' Efforts to Distinguish the Historical Analogues Identified by Defendants All Fall Short ....................................................................16

        i.   *Defendants Are Not Required to Identify Founding or Reconstruction-Era Regulations of Multi-Shot Weapons*..............16

        ii.   *Historical Regulations Can Be Analogous Even If They Are Not Weapons "Bans"* ............................................................................18

        iii.   *Regulations From the 20TH Century Are Relevant* ...........................22

    D.   *Heller* and *Bruen* Do Not Compel a Different Result ..................................23

III.   Reply Concerning Defendants' Statement of Undisputed Material Facts…24

Conclusion ........................................................................................................................25

Certificate of Service ......................................................................................................26

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Antonyuk v. Chiumento*,
--- F.4th ----, 2023 WL 8518003 (2d Cir. Dec. 8, 2023) ................................................... 3, 21

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
910 F.3d 106 (3d Cir. 2018) ................................................................................................. 10

*Bevis v. City of Naperville, Ill.*,
85 F.4th 1175 (7th Cir. 2023) ........................................................................................ 4, 8, 22

*Breen v. Black*,
709 F. App'x 512 (10th Cir. 2017) ....................................................................................... 25

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
No. CV 22-951-RGA, 2023 WL 2655150 (D. Del. Mar. 27, 2023) .............................. *passim*

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ...................................................................................................... *passim*

*Duncan v. Bonta*,
83 F.4th 803 (9th Cir. 2023) .................................................................................................. 14

*Duncan v. Bonta*,
No. 17-CV-1017-BEN (JLB), 2023 WL 6180472 (S.D. Cal. Sept. 22, 2023) ...................... 14

*Friedman v. City of Highland Park, Ill.*,
784 F.3d 406 (7th Cir. 2015) ................................................................................................ 18

*Fyock v. City of Sunnyvale*,
779 F.3d 991 (9th Cir. 2015) ................................................................................................ 11

*Hanson v. District of Columbia*
No. 22-2256 (RC), 2023 WL 3019777 (D.D.C. Apr. 20, 2023) ................................. 10, 17, 22

*Kolbe v. Hogan*,
813 F.3d 160 (4th Cir. 2016) ........................................................................................... 10, 24

*Long v. Latzke*,
No. 5: 18-CV-3189-HLT, 2020 WL 7337717 (D. Kan. Dec. 14, 2020) ................................ 25

*Lopez v. Am. Baler Co.*,
No. CIV 11-0227 JB/GBW, 2014 WL 1285448 (D.N.M. Mar. 27, 2014) ............................ 24

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ....................................................... 17, 20

*Miller v. Bonta*,
    19-CV-01537-BEN (JLB), 2023 WL 6929336 (S.D. Cal. Oct. 19, 2023) ............................ 14

*Miller v. Bonta*,
    No. 23-2979 (9th Cir. Oct. 28, 2023) ..................................... 14

*Nat'l Ass'n for Gun Rts. v. Lamont*,
    No. CV 3:22-1118 (JBA), 2023 WL 4975979 (D. Conn. Aug. 3, 2023) ........................ *passim*

*New York State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022) ....................................................... *passim*

*Ocean State Tactical, LLC v. Rhode Island*,
    646 F. Supp. 3d 368 (D.R.I. 2022) ...................................... 4, 10

*Or. Firearms Fed'n v. Brown*,
    644 F. Supp. 3d 782 (D. Or. 2022) ...................................... 10

*Or. Firearms Fed'n v. Kotek Or. All. for Gun Safety*,
    No. 2:22-CV-01815-IM, 2023 WL 4541027 (D. Or. July 14, 2023) ............................ *passim*

*Staples v. United States*,
    511 U.S. 600 (1994) ..................................................... 8

*Trueforce Glob. Servs., Inc. v. TruEffect, Inc.*,
    No. 20-cv-01566, 2023 WL 4624902 (D. Colo. July 19, 2023) ....................................... 12, 14

*Univ. of Kan. v. Sinks*,
    565 F. Supp. 2d 1216 (D. Kan. 2008) ................................... 25

*U.S. v. Alaniz*,
    69 F.4th 1124 (9th Cir. 2023) .......................................... 3

*U.S. v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ......................................... 9

*White v. Deere & Co.*,
    No. 13-CV-02173, 2016 WL 346862 (D. Colo. Jan. 28, 2016) ............................ 24

<u>OTHER AUTHORITIES</u>

Mark W. Smith, *What Part of "In Common Use" Don't You Understand?: How Courts Have Defied Heller in Arms-Ban Cases—Again*, 2023 Harv. J.L. & Pub. Pol'y 41 (2023)..................14

## EXHIBITS REFERENCED IN DEFENDANTS' SUMMARY JUDGMENT BRIEFING

EXHIBIT                                                    CM/ECF DOCKET NO.

EXHIBIT A – TOWN OF SUPERIOR ORDINANCE ............................................................. DKT. NO. 78-1

EXHIBIT B – CITY OF BOULDER ORDINANCE .............................................................. DKT NO. 78-2

EXHIBIT C – CITY OF LOUISVILLE ORDINANCE ......................................................... DKT. NO. 78-3

EXHIBIT D – BOULDER COUNTY ORDINANCE ............................................................ DKT. NO. 78-4

EXHIBIT E – PLAINTIFFS' INITIAL DISCLOSURES ....................................................... DKT. NO. 78-5

EXHIBIT F – EXPERT REPORT OF LUCY ALLEN ........................................................... DKT. NO. 78-6

EXHIBIT G – EXPERT REPORT OF DENNIS BARON ....................................................... DKT. NO. 78-7

EXHIBIT H – EXPERT REPORT CHRISTOPHER COLWELL............................................... DKT. NO. 78-8

EXHIBIT I – EXPERT REPORT OF BRIAN DELAY[1] ....................................................... DKT. NO. 78-9

EXHIBIT I-2 – AMENDED EXPERT REPORT OF BRIAN DELAY ............................... ATTACHED HERETO

EXHIBIT I-3 – REDLINE SHOWING CHANGES IN EX. I-2......................................... ATTACHED HERETO

EXHIBIT J – EXPERT REPORT OF STEPHEN HARGARTEN ........................................... DKT. NO. 78-10

EXHIBIT K (PART I) – REVISED EXPERT REPORT OF LOUIS KLAREVAS[2] .................. .DKT. NO. 78-11

EXHIBIT K (PART II) – EXPERT REPORT OF LOUIS KLAREVAS .................................. DKT. NO. 78-12

EXHIBIT L – EXPERT REPORT OF RANDOLPH ROTH.................................................. DKT. NO. 78-13

EXHIBIT M – EXPERT REPORT OF MARTIN SCHREIBER.............................................. DKT. NO. 78-14

EXHIBIT N – EXPERT REPORT OF ROBERT SPITZER .................................................. DKT. NO. 78-15

EXHIBIT O – EXPERT REPORT OF JAMES YURGEALITIS ............................................ DKT. NO. 78-16

EXHIBIT P – TRANSCRIPT EXCERPT FROM RMGO 30(B)(6) DEPOSITION ................ DKT. NO. 78-17

EXHIBIT Q – TRANSCRIPT EXCERPT FROM NAGR 30(B)(6) DEPOSITION ................ DKT. NO. 78-18

EXHIBIT R – DEPOSITION TRANSCRIPT EXCERPT, PLAINTIFF JAMES MICHAEL
    JONES............................................................................................................... DKT. NO. 78-19

EXHIBIT S – DEPOSITION TRANSCRIPT EXCERPT, PLAINTIFF MARTIN CARTER
    KEHOE .............................................................................................................. DKT. NO. 78-20

---

[1] As explained *infra* note 10, the amended version of Professor DeLay's report (Ex. I-2) corrects a mathematical error found in paragraphs 56 and 57 of Exhibit I.  Exhibit I-2 should be considered the operative version of Professor DeLay's report.

[2] As explained in Defendants' Response to Plaintiffs' Motion to Exclude (Dkt. No. 80), Defendants agreed to withdraw the revised version of Professor Klarevas's report attached as Exhibit K (Part I).  Exhibit K (Part 2) should be considered the operative version of Professor Klarevas's report.

EXHIBIT T – DEPOSITION TRANSCRIPT EXCERPT, PLAINTIFF BRYAN LAFONTE......... DKT. NO. 78-21

EXHIBIT U – DEPOSITION TRANSCRIPT EXCERPT, PLAINTIFF GORDON
    MADONNA ........................................................................................... DKT. NO. 78-22

EXHIBIT V – DEPOSITION TRANSCRIPT EXCERPT, PLAINTIFF CRAIG WRIGHT .......... DKT. NO. 78-23

EXHIBIT W – DEPOSITION TRANSCRIPT EXCERPT, PLAINTIFF CHARLES
    BRADLEY WALKER ..........................................................................ATTACHED HERETO

OPPOSITION EXHIBIT A – REBUTTAL REPORT OF LOUIS KLAREVAS ..................... DKT. NO. 82 AT 46

OPPOSITION EXHIBIT B – REBUTTAL REPORT OF JAMES YURGEALITIS ................ DKT. NO. 82 AT 79

# INTRODUCTION

Plaintiffs' opposition to Defendants' motion for summary judgment relies on a misunderstanding of the Supreme Court's opinions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), dissenting and concurring opinions in other cases that are neither persuasive nor binding, information that is not in the record, and arguments that fail to engage with Defendants' actual motion.  Plaintiffs' assertions are unsupported by evidence, and none identifies any genuine dispute of material fact, precisely because Plaintiffs adduced no evidence in support of their claims.  Contrary to Plaintiffs' suggestion, (Pl. SJ Opp. 3, 4[3]), their failure to develop a factual record or to rebut the overwhelming factual record compiled by Defendants is no virtue.  As the Supreme Court made clear in *Bruen*, this Court is "entitled to decide a case based on the historical record compiled by the parties," 597 U.S. at 25 n.6, and only Defendants have compiled such a record.

Plaintiffs' assertions are not only bereft of factual support, they misunderstand *Bruen*'s instruction that a party asserting a Second Amendment right bears the burden of demonstrating that their conduct falls within the scope of the right, before the burden shifts to the regulating entity to defend the challenged regulation by reference to our nation's historical tradition.  The thrust of Plaintiffs' argument is that the Second Amendment presumptively protects the possession of *any* bearable arm, irrespective of an arm's actual uses or destructive or defensive capabilities.  (Pl. SJ Opp. 2–3, 9–11).  But that position is flatly refuted by the Supreme Court's

---

[3] References to "Def. SJ Mot.," "Pl. SJ Opp.," "Pl. SJ Mot.," and "Def. SJ Opp." are to Defendants' motion for summary judgment (CM/ECF Dkt. No. 78), Plaintiffs' opposition (CM/ECF Dkt. No. 81), Plaintiffs' motion for summary judgment (CM/ECF Dkt. No. 76), and Defendants' opposition (CM/ECF Dkt. No. 82), respectively.  Except where otherwise indicated, "Ex." refers to exhibits to Defendants' motion for summary judgment.  In all case quotations, internal quotation marks, citations, and alterations are omitted except where otherwise indicated.

admonition that the Second Amendment does *not* confer on Plaintiffs "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 554 U.S. at 626; *Bruen*, 597 U.S. at 21, and the contrary conclusion reached by the vast majority of courts to have considered this issue.  *See infra* note 2.  Plaintiffs' position as to the historical analysis described in *Bruen* is equally baseless, and again rebutted by *Bruen* itself.  If the Court reaches *Bruen*'s second step, Defendants must "identify a well-established and representative historical *analogue*, not a historical *twin*."  *Bruen*, 597 U.S. at 30.  Plaintiffs have failed to meet their burden at *Bruen*'s first step—they deny they have any such burden (Pl. SJ Opp. 7–8)—and they fail to rebut the overwhelming evidence Defendants have adduced at *Bruen*'s second step.

Against this backdrop, Plaintiffs' assertion that Defendants' arguments are merely appeals to "pathos" rings hollow.  (Pl. SJ Opp. 6).  Defendants have amassed an evidentiary record that addresses each of the issues this Court must decide, engaged in a rigorous and principled analysis of *Bruen*, and directed the Court to cases in the Tenth Circuit and elsewhere that bear directly on the Court's analysis.  Plaintiffs' argument, by contrast, relies principally on their assertion that the scope of the Second Amendment right is defined by their subjective *desire* to possess assault weapons and LCMs, and on their sophistic reduction of the *Bruen* analysis to the proposition that any firearm or magazine that is widely possessed must, by definition, be protected by the Constitution.  (Pl. SJ Opp. 10 (citing Pl. SJ Mot. 40–42)).  That is not the law, and Plaintiffs' desires provide no basis to deny Defendants' motion for summary judgment.

For the reasons stated in Defendants' motion and herein, the Court should reject Plaintiffs' assertion that the Constitution prevents Defendants from exercising lawmaking authority to protect their citizens and residents by restricting the possession of deadly weapons of

war.  Plaintiffs have failed to identify any issue of material fact necessitating a trial, and the

Court should therefore grant summary judgment in Defendants' favor.

**ARGUMENT**

**I.     Assault Weapons and LCMs Are Beyond the Scope of the Second Amendment and the Court Should Therefore Grant Summary Judgment in Favor of Defendants at *Bruen*'s First Step.**

Plaintiffs' arguments concerning the first step of the *Bruen* analysis are without merit.

Because Plaintiffs have no evidence to support their claims—and therefore no ground on which

to oppose Defendants' motion for summary judgment—they urge the Court to adopt a plainly

erroneous reading of *Bruen* and *Heller* and they respond to arguments Defendants have not

made.  Further, Plaintiffs tacitly acknowledge that their claims find no support in the law by

relying principally on dissenting and concurring opinions, rather than on binding authority.  The

Court should reject each of Plaintiffs' arguments.

**A.  The "Common Use" Inquiry Is Part of *Bruen*'s First Step.**

The "common use" inquiry—whether an item is in common use today for self-defense

(Def. SJ Mot. 10, 12–18)—is part of the first step of the *Bruen* analysis, and the Court should

reject Plaintiffs' contrary assertion (Pl. SJ Opp. 7).  The overwhelming majority of courts to have

addressed the issue have explained that the "common use" analysis is part of *Bruen*'s first step, at

which Plaintiffs bear the burden of demonstrating that their proposed course of conduct falls

within the scope of the right described in *Heller* and *Bruen*.[4]  Plaintiffs tacitly concede that their

---

[4] *See, e.g.*, *Antonyuk v. Chiumento*, --- F. 4th ----, 2023 WL 8518003, at *10, *22 (2d Cir. Dec. 8, 2023); *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023); *Nat'l Ass'n for Gun Rts. v. Lamont*, No. CV 3:22-1118 (JBA), 2023 WL 4975979, at *15 (D. Conn. Aug. 3, 2023) ("*NAGR*"); *Or. Firearms Fed'n v. Kotek Or. All. for Gun Safety*, No. 2:22-CV-01815-IM, 2023 WL 4541027, at *5 (D. Or. July 14, 2023); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, No. CV 22-951-RGA, 2023 WL 2655150, at *3–4 (D. Del. Mar. 27,

3

argument has no legal support by relying in their opposition brief principally on an out-of-circuit dissenting opinion.  (Pl. SJ Opp. 7 (relying on *Bevis v. City of Naperville, Ill.*, 85 F.4th 1175 (7th Cir. 2023) (Brennan, J., dissenting))).

To the contrary, evaluating "common use" at the first, textual step of the analysis is the only understanding consistent with *Heller* and *Bruen*.  In *Bruen*, the Court considered the "common use" point (which was undisputed in that case) at the *first* step of its analysis, *see* 597 U.S. at 32, and at the second step the Court focused exclusively on considering and analyzing the historical laws proffered by the defendants, *id.* at 33–70.  *Heller* similarly explained that the "common use" analysis serves as a limit on "the sorts of weapons protected"—that is, it defines the scope of the Second Amendment at the first step, *see* 554 U.S. at 627, not "the types of regulations that, despite burdening the right, are constitutionally permissible" at the second step, *NAGR*, 2023 WL 4975979, at *15; *see also* 554 U.S. at 623 (explaining that the Second Amendment right "extends only to certain types of weapons").

In light of *Heller* and *Bruen*, and the overwhelming weight of authority in the lower courts, the Court should reject Plaintiffs' assertion that the "common use" analysis is part of *Bruen*'s second step.  The burden to show that assault weapons and LCMs are in "common use today for self-defense" is Plaintiffs' and, as set forth in Defendants' opening brief and below, they have failed to meet it.

**B.  Assault Weapons and LCMs Are Not in Common Use Today for Self-Defense.**

In any case, the question of which party bears the burden is of little relevance where, as here, only Defendants have compiled an evidentiary record on the relevant question: whether the

---

2023) ("*DSSA*"); *Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 389–90 (D.R.I. 2022).

regulated items are "in common use today for self-defense." *Bruen*, 597 U.S. at 32. (*See* Def. SJ Mot. 9, 11–12; Def. SJ Opp. 9–10). As set forth at length in Defendants' moving brief, Plaintiffs have failed to identify any incident in which an assault weapon or LCM has been used in self-defense, and they do not dispute Defendants' expert testimony that, based on data compiled by the National Rifle Association, the average number of shots fired in self-defense is 2.2, more than 18% of self-defense incidents involve no shots fired, and only a miniscule number of self-defense incidents—0.3%—involve 10 or more shots fired. (Def. SJ Mot. 12–14). Moreover, neither assault weapons nor LCMs are designed for, or well-suited to, self-defense, but are instead "most useful in military service." *Heller*, 554 U.S. at 627. (Def. SJ Mot. 14–21). The evidence compiled by Defendants is overwhelming and undisputed: assault weapons and LCMs are not "in common use today for self-defense."[5] *See Bruen*, 597 U.S. at 32.

Because the evidence does not support Plaintiffs' claim, they urge the Court to conclude—contrary to *Bruen*—that common *possession*, rather than "common *use*," is the relevant measure. (Pl. SJ Opp. 10–11). As discussed at length in Defendants' opposition to Plaintiffs' motion for summary judgment, Plaintiffs' argument conflicts with binding Supreme Court precedent and the weight of authority across the lower courts, and it would produce absurd results. (Def. SJ Opp. 9–14). "[N]o other constitutional right waxes and wanes based solely on what manufacturers choose to sell and how Congress chooses to regulate what is sold, and the

---

[5] During depositions, no Plaintiff claimed to have fired or brandished an assault weapon or LCM in self-defense. (Def. SJ Mot. 13 (citing Exs. R–V)). Defendants did not include with their summary judgment motion the relevant excerpt from Plaintiff Walker's deposition transcript because counsel had designated certain information in the excerpt as "confidential" under the terms of the Court's protective order. The parties have resolved their dispute over those designations and the relevant excerpt from Walker's deposition is attached hereto as Exhibit W.

Second Amendment should be no exception."  *NAGR*, 2023 WL 4975979, at *25.  (*See also* Def. SJ Opp. 11 n.5 (collecting cases)).

Moreover, even if that were not so, Plaintiffs have failed to adduce *any* admissible evidence regarding possession of assault weapons and LCMs in support of their misguided argument.  (Def. SJ Opp. 12–14 (discussing, inter alia, Plaintiffs' purported expert, Mark Passamaneck[6])).  Instead, they mischaracterize the testimony of an expert disclosed by Defendants—Professor Louis Klarevas (Ex. K (Part 2)).  (Pl. SJ Opp. 2; *see also* Def. SJ Opp. 14).  Contrary to Plaintiffs' assertion, Professor Klarevas does not offer an "estimate[]" of the number of assault weapons in circulation in the United States.  (Pl. SJ Opp. 2).  Rather, Professor Klarevas relies on certain "publicly available data" from the National Sport Shooting Foundation ("NSSF") and the Bureau of Alcohol, Tobacco, Firearms and Explosives, and he "assumes" that data is accurate for the limited purpose of conducting his analysis, while acknowledging the data likely overestimates the number of assault weapons in the possession of civilians.  (Ex. K (Part 2) ¶ 14 (Klarevas)).  Moreover, that data says nothing about why those weapons are owned—let alone the number of such weapons owned by civilians "for lawful purposes" (*see* Pl. SJ Opp. 2)—and thus it does not even satisfy Plaintiffs' version of the inquiry.  Nothing in Professor Klarevas' testimony assists Plaintiffs in satisfying their burden of proof under step one of the *Bruen* analysis.

Additionally, Plaintiffs' assertion that Defendants' "common use" analysis amounts to "stealth interest balancing" is frivolous.  (Pl. SJ Opp. 29).  In *Bruen*, the Court explained that multitiered scrutiny does not apply in the Second Amendment context, and it instructed lower

---

[6] On December 6, 2023, the Hon. Gordon P. Gallagher granted the Governor of Colorado's motion to partially strike and exclude the testimony of Mr. Passamaneck under Rule 702 in *Gates v. Polis*, 22-CV-1866-GPG-SKC (D. Colo.) (CM/ECF Dkt. No. 109).

courts not to assess challenged firearms regulations by balancing any intrusion on a protected

Second Amendment interest against the government's asserted interest.  *See* 597 U.S. at 17–19.

Contrary to Plaintiffs' claim, that is not "exactly the sort" of analysis Defendants have

undertaken in support of their motion for summary judgment.  (Pl. SJ Opp. 29).  As set forth

above, the Second Amendment protects only firearms "in common use today for self-defense,"

*Bruen*, 597 at 32, and the evidence adduced by Defendants makes clear that assault weapons and

LCMs are not *used* for that purpose because they are not suited to it.  That evidence is central to

the analysis required by *Bruen*, Plaintiffs do not dispute any of it, and it bears no relation

whatsoever to the kind of means-ends scrutiny "forbidden by *Bruen*."  (Pl. SJ Opp. 29).

Plaintiffs' further suggestion that the scope of the Second Amendment is defined by their

subjective desire to possess a weapon for self-defense purposes is incompatible with *Heller*,

*Bruen*, and common sense.  (Pl. SJ Opp. 30 (asserting that "whatever the reason" a person

chooses a firearm is sufficient to bring it within the scope of the Second Amendment)).  If that

were so, the lawfulness of machine gun regulations and "ban[s]" on the possession of M-16s

would depend on the subjective desires of gun owners, rather than the scope of the Second

Amendment, contrary to *Heller*'s recognition that such prohibitions are valid.  *See* 554 U.S. at

624, 627.  To adopt Plaintiffs' rationale "would mean allowing the analysis to be driven by

nebulous subjective intentions . . . , a result that the Supreme Court does not indicate in the

slightest that it intended."  *NAGR*, 2023 WL 4975979, at *14; *Or. Firearms Fed'n*, 2023 WL

4541027, at *30 ("If the subjective intent of an individual were enough . . . then nearly every

firearm or firearm accessory purchased in this country would satisfy that test.").[7]

---

[7] Plaintiffs similarly mischaracterize Defendants' argument about the military origins of assault
weapons and LCMs.  (Pl. SJ Opp. 30).  Defendants do not assert that "any arm that could be used
in warfare" falls beyond the scope of the Second Amendment.  (*Id.*).  Rather, the Supreme Court

Finally, the Court should reject Plaintiffs' contention that it is irrelevant whether assault weapons are most useful in military service—and thus unsuitable for self-defense (*see* Def. SJ Mot. 14–18)—because the Supreme Court has already held that there is a "legally significant" distinction between AR-15s and M-16s, such that M-16s can be regulated and AR-15s cannot.  (Pl. SJ Opp. at 32–33).  Plaintiffs rely exclusively on *Staples v. United States*, 511 U.S. 600 (1994), for this proposition, but *Staples* held no such thing.  As the Seventh Circuit recently explained, *Staples* was decided in 1994 before the Federal Assault Weapons Ban was enacted, so its passing assertion that AR-15s are among the weapons "widely accepted as lawful possessions" simply reflected that it was lawful to own AR-15s at the time.  *See Bevis*, 85 F.4th 1175.  Further, *Staples* was not a Second Amendment case, and there is "nothing in *Staples* that decides whether the Second Amendment protects AR-15s."  *Id.*; *see also NAGR*, 2023 WL 4975979, at *17 (explaining that *Staples* is irrelevant to the question of whether the Second Amendment protects assault weapons because *Staples* was "written decades before *Bruen* in 1994, without exhaustive historical analysis, and to answer an entirely different question").

These arguments fail to identify a disputed material fact and they provide no basis to deny Defendants' motion for summary judgment.

---

has stated as self-evident that "weapons that are *most useful in military service*—M-16 rifles and the like—may be banned," *Heller*, 554 U.S. at 627 (emphasis added), and Defendants' argument proceeds from that settled premise (Def. SJ Mot. 14–21).  Moreover, the Court's reference in *Heller* to weapons that are "highly unusual in society" was a comment on the kind of "sophisticated arms" that a militia would require to do battle with "modern-day bombers and tanks," not, as Plaintiffs suggest, an explanation for why "M-16 rifles and the like . . . may be banned."  *Heller*, 554 U.S. at 627.

**C.  LCMs Are Not Arms and They Are Not Necessary to the Functioning of Any Firearm.**

Contrary to Plaintiffs' contention (*see* Pl. SJ Opp. 7), Defendants have not argued that *all* magazines may be prohibited under the Second Amendment.  Instead, the only issue presented by Plaintiffs' challenge is whether the Ordinances' restriction of magazines that hold *more than 10 rounds* is consistent with the Second Amendment.  Plaintiffs do not address that question at all, and their arguments do not undermine Defendants' motion for summary judgment on this issue.

Plaintiffs do not dispute the evidentiary record compiled by Defendants on this point.  As explained in Defendants' motion, as a matter of modern and historical usage, a magazine is not a "[w]eapon[] of offence, or armour of defence," or "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another," *Heller*, 554 U.S. at 581.  (Def. SJ Mot. 21–22).  A magazine is therefore not an "arm" as *Heller* defined that term in the Second Amendment context.  (*Id.*).  *See United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) (holding that a silencer is a "firearm accessory" not protected by the Second Amendment).

It is true that some courts have held that the Second Amendment extends a corollary right to certain firearm components and accessories that are "necessary" to the functioning of firearms, but—assuming such a corollary right exists—those cases do not support Plaintiffs' claims concerning *large capacity* magazines.  *See NAGR*, 2023 WL 4975979, at *19 (collecting cases). As Defendants previously explained (Def. SJ Opp. 14–15), the undisputed factual record establishes that "any firearm designed and manufactured to accept a detachable magazine will function regardless of the maximum capacity of the magazine itself" (Ex. O ¶ 120 (Yurgealitis); *see id.* ¶ 12), and therefore "any firearm designed to accept [an LCM] will also accept a magazine with a maximum capacity of 10 rounds or fewer," i.e., a magazine that is lawful under

the Ordinances (*id.* ¶ 120; *see* Def. SJ Opp. (Ex. B ¶ 14 (Yurgealitis Rebuttal))). Thus, to the extent the Ordinances cover a subset of magazines, there is no firearm rendered inoperable by their enactment or enforcement. Because it is undisputed that LCMs are *not* necessary to the functioning of any firearm, any corollary right to possess firearm accessories does not extend to them. (Def. SJ Opp. 16–17). *See Ocean State*, 646 F. Supp. 3d at 386; *Or. Firearms Fed'n*, 2023 WL 4541027, at *9, *26; *Or. Firearms Fed'n v. Brown*, 644 F. Supp. 3d 782, 799 (D. Or. 2022).

In urging the Court to conclude otherwise, Plaintiffs conflate restrictions on *all* magazines with the Ordinances' restrictions of only *large capacity* magazines. And, as Defendants have explained, the cases Plaintiffs attempt to rely on here are no longer good law or do not support their arguments. (Def. SJ Opp. 16). For example, although the challenged law in *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney General New Jersey* restricted only magazines capable of holding more than 10 rounds, the Third Circuit's analysis appears to erroneously treat the law as if it covered *all* magazines. *See* 910 F.3d 106, 110, 116 (3d Cir. 2018), *vacated*, 142 S. Ct. 2894 (2022). This conflation is even more apparent in *Hanson*, in which the district court concluded that LCMs are bearable "arms" under the Second Amendment (rather than accessories) largely because the prohibition of *all* magazines would be unconstitutional—even though the law at issue did not prohibit all magazines. *See* 2023 WL 3019777, at *7.[8] The initial, subsequently rejected, panel opinion in *Kolbe v. Hogan* made a similar error by failing to recognize that a semiautomatic weapon will function as "effectively" with a lawful magazine containing 10 or fewer rounds as it does with a magazine containing

---

[8] The district court in *Hanson* nevertheless concluded that "LCMs fall outside of the Second Amendment's scope because they are most useful in military service and because they are not in fact commonly used for self-defense." *Id.* at *12.

more than 10 rounds, *see* 813 F.3d 160, 175 (4th Cir. 2016), *rev'd en banc*, 849 F.3d 114 (4th Cir. 2017)—a point supported in this case by record evidence that Plaintiffs do not dispute.[9]  The only question before the Court is whether the Ordinances' restrictions on *LCMs* are constitutional, and the undisputed evidence in the record makes clear that they are.

### D.  "Dangerous and Unusual Weapons" Are Beyond the Scope of the Second Amendment.

As set forth in Defendants' motion for summary judgment, assault weapons and LCMs are "dangerous and unusual" and therefore beyond the scope of the Second Amendment.  (Def. SJ Mot. 18–21).  Plaintiffs do not dispute any of the evidence adduced by Defendants on this issue and they fail to identify any dispute of material fact that would support the denial of Defendants' motion for summary judgment.

Plaintiffs' only argument with respect to this issue is yet another non sequitur.  Both *Bruen* and *Heller* make clear that the Second Amendment has always permitted lawmakers to regulate "dangerous and unusual weapons."  *Bruen*, 597 U.S. at 47; *Heller*, 554 U.S. at 627.  Against that backdrop, Plaintiffs' claim that "practically identical" arguments about the "dangerous and unusual" nature of assault weapons and LCMs were made in *Heller* is demonstrably false.  (Pl. SJ Opp. 27–29).  The parties in *Heller* had no occasion to discuss the issues raised in *this* case because the law challenged in *Heller* did not concern the regulation of assault weapons or LCMs.  554 U.S. at 575–76 (explaining that the plaintiff in *Heller* sought "to enjoin [D.C.] from enforcing the bar on the registration of handguns, the licensing requirement

---

[9] Contrary to Plaintiffs' assertion (Pl. SJ Opp. 7 (referencing Pl. SJ Mot. 29)), in *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015), the court suggested, consistent with Defendants' argument, that the right to possess magazines is "not unfettered" and extends only to those "magazines necessary to render [protected] firearms operable."  *Id.* at 998.  In *NAGR*, the court merely determined that "whether an LCM . . . is necessary for self-defense is better addressed in the section of the inquiry focused on the 'common use' of LCMs."  2023 WL 4975979, at *19.

insofar as it prohibits the carrying of a firearm in the home without a license, and the trigger-lock requirement insofar as it prohibits the use of functional firearms within the home).

The irrelevance of Plaintiffs' argument is made clearer still by the excerpts from the *Heller* briefs on which Plaintiffs rely, none of which concerns the properties or capabilities of assault weapons or LCMs, and all of which relate to the use of handguns in criminal activity. (Pl. SJ Opp. 28). Here, by contrast, Defendants' summary judgment motion focuses on the mechanics and capabilities of assault weapons and LCMs that make them "dangerous and unusual," including their extraordinary destructive power as compared to the handguns at issue in *Heller* (among other weapons). (Def. SJ Mot. 18–21). Moreover, Plaintiffs' argument relies entirely on a law review article—which is inadmissible hearsay and not part of the record— written by an individual whom Plaintiffs did not attempt to notice as an expert and who is therefore not available to testify at trial. *See Trueforce Glob. Servs., Inc. v. TruEffect, Inc.*, No. 20-cv-01566, 2023 WL 4624902, at *2 (D. Colo. July 19, 2023) (noting that "the Court may consider only admissible evidence" at the summary judgment stage).

Here again, Plaintiffs fail to challenge any of the relevant evidence in the record, much less identify a disputed issue of material fact warranting denial of Defendants' motion for summary judgment.

## II. The Ordinances Are Consistent with the Nation's Historical Tradition of Regulating Particularly Dangerous Weapons and the Court Should Therefore Grant Summary Judgment in Defendants' Favor at *Bruen*'s Second Step.

As set forth in Defendants' motion for summary judgment, our nation has a long tradition of regulating particularly dangerous weapons that circulate in society and then pose a threat to public safety. (Def. SJ Mot. 28–34). This tradition dates to the Founding and Reconstruction eras, when weapons restrictions proliferated concerning particularly dangerous weapons and accessories, such as trap guns, blunt weapons, Bowie knives, and certain types of firearms. (*Id.*

29–34).  Plaintiffs have failed to introduce any rebuttal evidence on this point.  Their efforts to distinguish Defendants' numerous historical analogues all fall short because Plaintiffs, rather than engage in the analogical reasoning required by *Bruen*, focus instead on differences that are irrelevant under the approach to analogical reasoning described in *Bruen*.  Plaintiffs have failed to identify any genuine dispute of material fact concerning this tradition, and the Court should therefore grant summary judgment in Defendants' favor at *Bruen*'s second step.

### A.  Plaintiffs Have Not Rebutted Defendants' Historical Evidence.

Defendants, in support of their motion for summary judgment, complied a detailed evidentiary record concerning our nation's historical tradition of regulating firearms.  (*See* Exs. I-2[10] (DeLay), L (Roth), N (Spitzer)).  Plaintiffs, by contrast, have failed to rebut any of this evidence, much less have they identified any disputed fact that would necessitate a trial.  Plaintiffs did not depose any of Defendants' experts, challenge their expertise or methodology, or offer their own affirmative or rebuttal historical experts.  The undisputed evidence compiled by Defendants makes clear that our nation has a long historical tradition of restricting particularly dangerous weapons for the public safety and that the Ordinances are consistent with that tradition.  (Def. SJ Mot. 23–39).

Because Plaintiffs have failed to compile any evidentiary record in this case, they instead urge the Court to ignore *Bruen*'s instruction to decide Second Amendment cases "based on the historical record compiled by the parties."  597 U.S. at 25 n.6.  Instead, Plaintiffs urge the Court to consider three law review articles in lieu of record evidence, but those articles are inadmissible

---

[10] Professor DeLay amended his expert report to address a mathematical error in paragraphs 56 and 57.  His amended report, disclosed to Plaintiffs' counsel on September 29, 2023, is attached hereto as Exhibit I-2.  A redline version showing the changes to those two paragraphs is attached as Exhibit I-3.  All references to Prof. DeLay's expert report herein and in docket entries 78 and 82 are to the amended version of his report attached as Exhibit I-2.

hearsay and not part of the record.  (Pl. SJ Opp. 14, 18, 21–22 (citing articles by David Kopel

and Joseph Greenlee)).  Further, Plaintiffs did not attempt to notice the authors as experts in this

case and they cannot testify at trial.  *See Trueforce Glob. Servs.*, 2023 WL 4624902, at *2; *see

also* 597 U.S. at 25 n.6 (explaining need to rely on "various evidentiary principles and default

rules" when conducting historical analysis).  Likewise, the Court should not follow the analysis

of a single district court judge in two opinions enjoining California's assault weapons and LCM

laws.  (Pl. SJ Opp. 13–17 (citing *Duncan v. Bonta*, No. 17-CV-1017-BEN (JLB), 2023 WL

6180472 (S.D. Cal. Sept. 22, 2023), and *Miller v. Bonta*, 19-CV-01537-BEN (JLB), 2023 WL

6929336 (S.D. Cal. Oct. 19, 2023))).  Both of those rulings have since been stayed because, in

the judgment of the Ninth Circuit, California is "likely to succeed on the merits" of their appeals.

*Duncan v. Bonta*, 83 F.4th 803, 805 (9th Cir. 2023) (en banc); *see Miller v. Bonta*, No. 23-2979,

Dkt. 13 (9th Cir. Oct. 28, 2023).  Because Plaintiffs have failed to identify a genuine dispute of

material fact at *Bruen*'s second step, the Court should grant summary judgment in Defendants'

favor.

### B.   The Court Should Apply the "More Nuanced" Approach to Analogical Reasoning Described in *Bruen*.

If the Court proceeds to *Bruen*'s second step, it should reject Plaintiffs' contention that

the "more nuanced" analogical approach described in *Bruen* does not apply in this case.  (Def. SJ

Mot. 24–28 (discussing this approach); Pl. SJ Opp. 12).  Plaintiffs' assertion that the "more

nuanced" approach does not apply in cases concerning laws that "ban weapons in common use"

(Pl. SJ Opp. 12) finds no support in *Bruen*, or any of the cases that have interpreted and applied

*Bruen*'s reasoning.  Plaintiffs effectively concede as much, and instead rely on a single law

review article in which the author asserts that this purported limitation on the "more nuanced"

approach can be inferred from *Heller*.  (*Id.* (citing Mark W. Smith, *What Part of "In Common*

*Use" Don't You Understand?: How Courts Have Defied Heller in Arms-Ban Cases—Again*, 2023 Harv. J.L. & Pub. Pol'y 41, 2–3 (2023))).

But *Heller* could not have addressed the application of the "more nuanced" analogical approach because the Supreme Court first described that approach in *Bruen*, some 15 years after *Heller* was decided. *See* 597 U.S. at 27. And when the Court first discussed the need to apply a "more nuanced approach" in cases like this one, it did not exempt cases concerning laws that prohibit the possession of certain weapons. *See id.* To the contrary, the Supreme Court explained in *Bruen* that the only factors relevant to the application of a "more nuanced" approach are the presence of "unprecedented societal concerns or dramatic technological changes." *Id.* It defies logic to assert, as Plaintiffs do, that *Heller* dramatically limited the availability of the "more nuanced" approach—an approach the Supreme Court had not even articulated at that time—in ways that went unmentioned when the Court later articulated that approach in *Bruen*.

Putting aside Plaintiffs' illogical and unsupported argument, what remains is the undisputed evidentiary record compiled by Defendants. (*See* Def. SJ Mot. 24–28). Plaintiffs make no effort to dispute the detailed factual record compiled by Defendants that assault weapons and LCMs reflect a dramatic change in firearms technology.[11] (*See id.* 24–27). Nor do Plaintiffs provide any facts to dispute Defendants' showing that the Ordinances address a societal concern unprecedented in the nation's history: mass shootings. (*See id.* 27–28). Instead, Plaintiffs suggest that the number of deaths caused by mass shootings do not justify the

---

[11] Plaintiffs' assertion that assault weapons and LCMs are not the result of "dramatic technological changes" because "multi-shot firearms have existed for centuries" is without merit. (Pl. SJ Opp. 21). A small number of multi-shot firearms existed in the 18th century, but they were curiosities that were unreliable, slow to load, and bore no resemblance to modern assault weapons. (Def. SJ Mot. 24–27). It is undisputed that the technology underlying assault weapons and LCMs is of recent vintage. (*Id.* 14–18, 24–27).

Ordinances, (*see* Pl. SJ Opp. 25–26), but that interest-balancing argument is unrelated to whether a nuanced approach is warranted here.  In light of the undisputed record, the Court should conclude that the "more nuanced" analogical approach applies here, as many post-*Bruen* courts have concluded in cases challenging assault weapon and LCM regulations.  (Def. SJ Mot. 24 n.19 (collecting cases)).

### C.  Plaintiffs' Efforts to Distinguish the Historical Analogues Identified by Defendants All Fall Short.

The Court should reject Plaintiffs' assertion that the historical analogues identified by Defendants—including laws restricting particularly dangerous weapons and accessories, such as trap guns, blunt weapons, Bowie knives, and certain types of firearms (*see* Def. SJ Mot. 28–34)—are insufficiently similar to the Ordinances to be "analogous" under *Bruen* (Pl. SJ Opp. 13–27).  Plaintiffs misread *Bruen* and misunderstand the historical record in urging the Court to reject the detailed historical record compiled by Defendants because the laws do not involve multi-shot weapons (*id.* at 21–22), weapons "bans" (*id.* at 14–21), or because they occurred too late in history to be relevant (*id.* at 23).  But, as the Supreme Court has made clear, Defendants need only identify a "representative historical *analogue*, not a historical *twin*," and the Court should therefore reject Plaintiffs' efforts to impose the very "regulatory straightjacket" the Court cautioned against in *Bruen*.  597 U.S. at 30.

#### i.  Defendants Are Not Required to Identify Founding or Reconstruction-Era Regulations of Multi-Shot Weapons.

Plaintiffs' assertion that Defendants can only prevail at *Bruen*'s second step if they identify regulations from the Founding or Reconstruction eras banning the possession of multi-shot firearms is without merit.  (Pl. SJ Opp. 21–22).  Plaintiffs do not dispute the factual record compiled by Defendants that, at the time of the Founding, multi-shot firearms were little more than "exotic curios" and "[f]ew alive at the time ever laid eyes on one."  (Ex. I-2 ¶ 27 (DeLay)).

*See Or. Firearms Fed'n*, 2023 WL 4541027, at *16 (explaining that repeating firearms "were exceedingly rare, particular[ly] within the general populace" prior to the ratification of the Second Amendment).  Accordingly, there was "no incentive to craft legislative solutions to these technologies because these technologies had created no social problems."  (Ex. I-2 ¶ 41 (DeLay)).  Multi-shot firearms were similarly rare during the Reconstruction era.  Although the first reliable firearm capable of firing more than 10 rounds was developed by Oliver Winchester in 1860, such firearms likely amounted for no more than 0.2% of all firearms in the country as of 1872 (*id.* ¶ 56), and they were almost exclusively in the possession of the military (*id.* ¶ 55).[12]  Because these weapons did not jeopardize the public safety, lawmakers did not single them out and they were regulated to the same extent as the era's other firearms.  (*Id.* ¶ 60).  It therefore "make[s] no sense to divine constitutional significance" from the absence of laws regulating multi-shot weapons in the Founding or Reconstruction eras because lawmakers regulate "problems that confront them" and not "problems that do not exist."  *Hanson*, 2023 WL 3019777, at *16; *see also McCullen v. Coakley*, 573 U.S. 464, 481 (2014) ("States adopt laws to address the problems that confront them.  The [Constitution] does not require States to regulate for problems that do not exist.").

---

[12] Plaintiffs rely on an article by David Kopel to contend that there were over 170,000 Winchester Model 1866 rifles produced, though they do not specify the period during which that production occurred, how many of those weapons were sent abroad, or how many were purchased for personal, rather than military, use.  (Pl. SJ Opp. 22).  Moreover, Plaintiffs did not attempt to notice Kopel as an expert and his assertion is not part of the evidentiary record.  Further, Plaintiffs' imprecise assertion conflicts with the admissible testimony of Defendants' expert, Professor DeLay, whom Plaintiffs declined to depose.  As Professor DeLay explains, some 74,000 repeating rifles were manufactured in the United States between 1861–71, but the overwhelming majority of those were sold to militaries abroad, and fewer than 1,000 were in the hands of individuals in the United States as late as 1872.  (Ex. I-2 ¶ 55 (DeLay)).

*Heller* itself is fatal to Plaintiffs' argument. As the evidence cited in Defendants' motion for summary judgment makes clear, a very small number of experimental multi-shot firearms existed in the early days of our nation's history. (Def. SJ Mot. 25). Nevertheless, "*Heller* deemed a ban on private possession of machine guns to be obviously valid," even though "states didn't begin to regulate private use of machine guns until 1927." *Friedman v. City of Highland Park, Ill.*, 784 F.3d 406, 408 (7th Cir. 2015). *Heller*, in other words, makes clear that Defendants are not required to identify Founding- or Reconstruction-era regulations of multi-shot firearms to satisfy their burden at *Bruen*'s second step. And the regulations Defendants have identified involving other types of particularly dangerous weapons and accessories are not disanalogous simply because they do not involve multi-shot firearms. [13]

> ii.  *Historical Regulations Can Be Analogous Even if They Are Not Weapons "Bans."*

Plaintiffs' contention that only regulations "banning" the possession of weapons can be analogous to the Ordinances is wrong on the facts and the law. (Pl. SJ Opp. 14–21). As an initial matter, referring to the Ordinances as "bans" on the possession of assault weapons and LCMs is misleading. The Boulder County Ordinance does not restrict the possession of assault weapons or LCMs, and instead restricts their "manufacture, import, purchase, [sale], or transfer." (Def. SJ Mot. 6 (citing Ex. D § 2(a))). And the Ordinances enacted by the cities of Superior, Louisville

---

[13] Plaintiffs' contention that Defendants cannot prevail at *Bruen*'s second step because of the existence of Founding-era militia laws is baseless. (Pl. SJ Opp. 22–23). Putting aside Plaintiffs' failure to cite any legal authority to support their argument that the Founders could not have conceived of laws that restrict firearms ownership, the argument ignores the undisputed evidence in the record that early lawmakers in fact enacted a range of weapons restrictions, including laws restricting the use of trap guns and the carry of certain types of firearms. (Def. SJ Mot. 29–30). This argument also ignores *Heller*'s recognition that the Second Amendment is "unconnected" to military service, 554 U.S. at 605, 616, and that lawmakers "may . . . ban[]" types of weapons, including those "most useful in military service," *id.* at 627.

and Boulder permit individuals who were in possession of assault weapons prior to July 1, 2022, to continue to possess them on their property and to use them at duly licensed firing ranges provided that the individual applies for a certificate from an authorized local authority.  (Ex. A § 10-9-240 (Superior); Ex. B § 5-8-28 (Boulder); Ex. C § 9.86.010 (Louisville); *see also* Pl. SJ Mot. 9 (noting that Plaintiffs elected not to apply for certificates)).  The Ordinances also do not target all rifles or all magazines; they instead address only a particular subcategory of rifles and magazines that have features or characteristics that place them beyond the scope of the Second Amendment and the regulation of which is consistent with our nation's history and tradition. The Ordinances do not regulate ownership of AR-15s with fixed magazines, for example.  (*See* Def. SJ Opp. 2, 14–15).

In any event, the Court rejected this argument in *Bruen* when it explained that "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*" or a "dead ringer."  597 U.S. at 30.  *Bruen* makes clear that the test for determining whether a modern regulation is sufficiently analogous to a historical regulation depends not at all on whether lawmakers of different eras used the same regulatory tool.  Instead, the Court said the "central" consideration is whether the regulations "impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified."  *Id.*  (Def. SJ Mot. 11, 34–39).

When considered against the standard announced in *Bruen*, it is immediately apparent that the Ordinances place a comparable or lesser burden on self-defense than many earlier laws described in Defendants' motion, and are comparably justified.  (*See* Def. SJ Mot. 30–32).  For example, 19th-century lawmakers enacted firearms regulations that, like the Ordinances, restricted certain weapons and accessories while leaving other alternatives available, and were

justified by a desire to protect the public from violence associated with particularly dangerous weapons, weapons features, and accessories. (*Id.* at 37–38). Those regulations imposed, if anything, a greater burden on the right to armed self-defense than the Ordinances because those regulations restricted even the carry of some weapons that, in contrast to assault weapons and LCMs, were in fact used for self-defense. *See DSSA*, 2023 WL 2655150, at *12 (finding "nineteenth-century laws regulating melee weapons" imposed greater burden on armed self-defense than assault weapon regulation); *NAGR*, 2023 WL 4975979, at *33 (finding 19th-century carry regulations analogous to modern assault weapon and LCM regulations because both targeted particularly dangerous weapons and accessories and left open "sufficient avenues" of carrying firearms that are useful for self-defense). Plaintiffs' failure to assess properly these comparative burdens and justifications, as required by *Bruen*, results in Plaintiffs improperly dismissing swaths of historical analogues to the Ordinances.[14] (*See* Def. SJ Mot. 35–39).

The historical record also demonstrates why Plaintiffs' exclusive focus on weapons "bans" is misplaced. As Defendants explained in their motion for summary judgment, lawmakers do not regulate new technologies when they are invented or conceived, but only at such time as those technologies "circulate sufficiently in society to spill over into criminal or other harmful use." (Def. SJ Mot. 28 (citing Exs. N ¶¶ 44, 66 (Spitzer), I-2 ¶ 42 (DeLay)). *See also McCullen*, 573 U.S. at 481 (discussing this principle). And, as the record in this case makes clear, the social problems created by firearms today simply were not present at the Founding

---

[14] Plaintiffs' similarly reductive argument that firearms regulations can only be analogous to other firearms regulations—but not regulations concerning knives or blunt weapons—fails for similar reasons. (Pl. SJ Opp. 21). Just because the Court in *Bruen* did not consider whether regulations concerning knives or blunt weapons were analogous to the firearms regulation at issue in that case in no way suggests that a knife or blunt weapon regulation can *never* be analogous to a firearm regulation. There is simply no support for the proposition in *Bruen*.

because the muzzle-loading single-shot firearms that predominated at the time were impractical for criminal use and were rarely used to commit homicides.  (Def. SJ Mot. 29–30).  *See Or. Firearms Fed'n*, 2023 WL 4541027, at *18 ("Interpersonal gun violence was not a general societal concern in 1791.").  During the 19th century, however, criminal activity involving concealable weapons—including Bowie knives, pocket pistols, and revolvers—increased, and legislatures responded accordingly:  "[b]y the end of the 1800s, nearly every state in the country" had laws restricting the concealed carry of revolvers and other concealable pistols, "and, by the early 1900s, at least six states barred possession of these weapons outright."  (Def. SJ Mot. 32 (quoting *DSSA*, 2023 WL 2655150, at *11)).  Nineteenth-century legislators' focus on *carry*, rather than possession, restrictions makes sense because those historical restrictions, like the assault weapon and LCM laws of today, "target[ed] specific dangers posed by the characteristics and unlawful use of particular weapons" and "left available sufficient avenues for carrying firearms for self-defense," *NAGR*, 2023 WL 4975979, at *33, and, in any event, governments of the time had a limited ability to enforce broader regulation.  (Ex. N ¶ 90 (Spitzer)).  *See also Antonyuk*, 2023 WL 8518003, at *30 (discussing growth of "governance institutions" in the 19th century).  By contrast, in the 20th century, states promptly enacted laws prohibiting the possession of particularly dangerous weapons that had little to no utility for self-defense—specifically, automatic and semiautomatic weapons—once they entered the civilian market. (Def. Mot. SJ 33–34).  *See Or. Firearms Fed'n*, 2023 WL 4541027, at *25 (explaining that "prohibitions on the possession" of automatic and semiautomatic weapons were common after the weapons were introduced in the early 20th century).

In sum, Plaintiffs' assertion that a regulation on possession can only be analogous to another regulation on possession finds no support in *Bruen* or the factual record in this case. The Court should reject the argument.

### iii. Regulations from the 20th Century Are Relevant.

The Court should also reject Plaintiffs' contention that dangerous weapon regulations from the 20th century "come far too late to shed any light on the meaning of the Second Amendment." (Pl. SJ Opp. 23). *Bruen* said no such thing. In *Bruen*, the Court explained that regulations from a variety of eras in our nation's history can be probative of whether there is a historical tradition of regulation. 597 U.S. at 33–37. And where, as here, a regulation responds to a societal concern that did not "preoccup[y] the Founders in 1791 or the Reconstruction generation in 1868," a "more nuanced" analogical approach is necessary. *Id.* at 27. In such cases—like this one—as long as the relevant post-ratification history does not "contradict" the text of the Second Amendment, that history is probative of the historical tradition. *Id.* at 36. That is the case here. (Def. SJ Mot. 32–34).

The fact that the Court in *Bruen* did not consider 20th-century history to support the lawfulness of the regulation at issue in that particular case says nothing about the probative value of the 20th-century history in *this* case. (*See* Pl. SJ Opp. 23; Def. SJ Mot. 24–27, 32–34). As discussed above, this case involves technologies that simply did not exist prior to the 20th century, and the 20th-century regulatory history at issue here does not contradict any earlier historical evidence. Indeed, numerous post-*Bruen* courts have concluded that laws from the 20th century regulating automatic and semiautomatic weapons are relevant historical analogues for modern restrictions on assault weapons and LCMs. *See, e.g.*, *Bevis*, 85 F.4th 1175 (considering 20th-century laws in its historical inquiry to uphold assault weapon and LCM prohibitions); *Hanson*, 2023 WL 3019777, at *16 ("The historical tradition of high-capacity regulations in the

1920s and 1930s—over a hundred years ago—does not contradict any earlier evidence, and it supports the constitutionality of the District's LCM ban."); *Or. Firearms Fed'n*, 2023 WL 4541027, at *44-46 (reaching same conclusion regarding historical analogues to Oregon's LCM law); *DSSA*, 2023 WL 2655150, at *12 (reaching same conclusion regarding historical analogues to Delaware's assault weapon and LCM law).  Plaintiffs' argument relies on a misreading of *Bruen* and provides no basis to deny Defendants' motion for summary judgment.

### D. *Heller* and *Bruen* Do Not Compel a Different Result.

Finally, the Court should reject Plaintiffs' contention that Defendants' historical analysis is "directly contrary to *Heller* and *Bruen*."  (Pl. SJ Opp. 23–27).  This assertion mischaracterizes both Defendants' position and the holdings of *Heller* and *Bruen*.

Here again, Plaintiffs attack an argument that bears no resemblance to Defendants' actual argument.  Defendants do not argue that lawmakers can regulate any weapon in the name of "protect[ing] the public from preventable acts of violence" or because the weapon is the "product of new technology."  (Pl. SJ Opp. 24).  Defendants assert merely that lawmakers can restrict the possession, sale, and transfer of certain weapons that fall outside the scope of the Second Amendment, and weapons that are within the scope of the Second Amendment where doing so is consistent with our nation's history of firearms regulation.  (*See, e.g.*, Def. SJ Mot. 3). Defendants' assertion of that authority is entirely consistent with *Bruen*, 597 U.S. at 21, 32, 47, which instructs the Court to assess Defendants' exercise of that authority in light of the *evidence* compiled in the case, *id.* at 25 n.6.  Plaintiffs have failed to offer any evidence relevant to the issues the Court must decide, or to rebut the overwhelming evidence adduced by Defendants.

It is Plaintiffs' position, not Defendants', that "lacks any limiting principle."  (Pl. SJ Opp. 24).  Defendants' arguments rely on the limiting principles established by the Supreme Court in *Bruen* (Def. SJ Mot. 9–11), and the Court's instruction that whether a particular regulation is

consistent with those limiting principles (and therefore the Second Amendment) must be determined by reference to the *evidence* adduced by the parties. 597 U.S. at 25 n.6. By contrast, Plaintiffs' urge an understanding of *Bruen* that reduces to a simple "popularity test," *Kolbe*, 849 F.3d at 141–42, divorced entirely from the "central component" of the Second Amendment, i.e., "common use today for self-defense," *DSSA*, 2023 WL 2655150, at \*4 (citing *Heller* and *Bruen*), or from the "technological changes" and "societal concerns" that properly animate lawmakers' efforts to protect the citizenry, *Bruen*, 597 U.S. at 27, including efforts to regulate military-style weapons, features, and accessories that are materially similar to those regulated by the Ordinances, *Heller*, 554 U.S. at 624, 627. *Heller* and *Bruen*, in other words, undermine Plaintiffs' position, not Defendants'. This Court should reject any conclusion to the contrary.

### III.    Reply Concerning Defendants' Statement of Undisputed Material Facts.

Many of Plaintiffs' Responses to Defendants' Statement of Undisputed Facts (*see* Pl. SJ Opp. 35–41) do not comply with this Court's Practice Standards for civil cases. Those standards provide that a response to a summary judgment motion "must contain a Response to Statement of Undisputed Material Facts section that must [(1)] admit or deny each identified fact [(2)] with citations to evidence in the record." (Standard IV.D.3). Plaintiffs' responses fail in both respects.

The following facts should be deemed admitted because Plaintiffs' sole objection relates to the relevance of the facts, which is not a proper basis for disputing a fact: 5–29, 31, 36–38, 47, 48, 54–58, 62–66. *See White v. Deere & Co.*, No. 13-CV-02173, 2016 WL 346862, at \*1–2 nn.8, 9 (D. Colo. Jan. 28, 2016) (deeming facts admitted where plaintiffs' sole basis for denying facts was relevance); *Lopez v. Am. Baler Co.*, No. CIV 11-0227 JB/GBW, 2014 WL 1285448, at \*2 n.6 (D.N.M. Mar. 27, 2014) ("Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record."). The following facts should also be deemed admitted because Plaintiffs' Responses improperly

attempt to create a factual dispute with material that is outside of the record: 1–4, 30, 33–35, 40, 43, 44, 50, 61.  *See Long v. Latzke*, No. 5:18-CV-3189-HLT, 2020 WL 7337717, at *1 n.1 (D. Kan. Dec. 14, 2020) (rejecting plaintiffs' "attempts to dispute facts by relying on hearsay, speculation, and non-record evidence"); *Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1228–29 (D. Kan. 2008) (striking testimony first presented during summary judgment briefing).

There are only two facts Plaintiffs attempt to affirmatively dispute with citations to the record: 39 and 49.  With respect to Statement of Fact 39, there is no material dispute because Fact 39 addresses the incidences of mass *shootings* prior to 1948 while paragraph 48 of Professor Roth's report addresses incidences of mass killings committed by groups of people armed with a variety of weapons.  (Ex. L ¶ 48 (Roth)).  With respect to Statement of Fact 49, Plaintiffs admit the fact that the six listed states prohibited the possession and/or concealed carry of various weapons beginning in 1813, and they dispute it only to the extent the word "six" can mean "several."  (Pl. SJ Opp. 39).  That is not a material dispute.

Because Plaintiffs' purported disputes with Defendants' Statement of Undisputed Material Facts are neither based on admissible evidence nor material, the Court should grant summary judgment in Defendants' favor.  *See, e.g., Breen v. Black*, 709 F. App'x 512, 514 (10th Cir. 2017) (affirming grant of summary judgment where plaintiff failed to "provide[] sufficient admissible evidence to support any claim or to create a genuine dispute of material fact").

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' motion for summary judgment, Defendants respectfully request that the Court grant their motion and enter summary judgment in their favor.

Dated:    December 12, 2023

Respectively submitted,

By:    /s/ Antonio J. Perez-Marques
Antonio J. Perez-Marques
James H.R. Windels
Christopher P. Lynch
David B. Toscano
Hendrik van Hemmen
James C. Butler
Jennifer Kim
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4515
antonio.perez@davispolk.com
james.windels@davispolk.com
christopher.lynch@davispolk.com
david.toscano@davispolk.com
hendrik.vanhemmen@davispolk.com
james.butler@davispolk.com
jennifer.kim@davispolk.com
*Counsel for All Defendants*

Carey R. Dunne
Kevin Trowel
Martha Reiser
FREE AND FAIR LITIGATION GROUP
266 W. 37th Street, 20th Floor
New York, NY 10018
(917) 499-2279
carey@freeandfairlitigation.org
kevin@freeandfairlitigation.org
martha@freeandfairlitigation.org
*Counsel for All Defendants*

William Taylor
EVERYTOWN LAW
450 Lexington Avenue, #4184
New York, NY 10017
(646) 324-8215
wtaylor@everytown.org
*Counsel for All Defendants*

Gordon L. Vaughan
VAUGHAN & DEMURO
111 South Tejon Street
Suite 545
Colorado Springs, CO 80903
(719) 578-5500
gvaughan@vaughandemuro.com
*Counsel for Town of Superior and Town of Louisville*

Luis A. Toro
Teresa T. Tate
BOULDER CITY ATTORNEY'S OFFICE
P.O. Box 791
1777 Broadway
Boulder, CO 80306
(303) 441-3020
torol@bouldercolorado.gov
tatet@bouldercolorado.gov
*Counsel for the City of Boulder*

David Evan Hughes
Catherine R. Ruhland
BOULDER COUNTY ATTORNEY'S OFFICE
P.O. Box 471
Boulder, CO 80306
(303) 441-3190
dhughes@bouldercounty.org
truhland@bouldercounty.org
*Counsel for the Board of County Commissioners of Boulder County*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I served a true and complete copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Barry Kevin Arrington
Arrington Law Firm
3801 East Florida Ave., Suite 830
Denver, CO 80210
barry@arringtonpc.com

*Attorneys for Plaintiffs*

Dated:    December 12, 2023

Respectively submitted,

By:    /s/ Antonio J. Perez-Marques
Antonio J. Perez-Marques
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4515
antonio.perez@davispolk.com
*Counsel for All Defendants*