# EXHIBIT W

```
                                              Page 1

 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2

      Civil Action No. 22-cv-2680
 3    _____
 4    ROCKY MOUNTAIN GUN OWNERS, NATIONAL ASSOCIATION FOR GUN

      RIGHTS, CHARLES BRADLEY WALKER, BRYAN LAFONTE, CRAIG WRIGHT,
 5    and GORDON MADONNA, JAMES MICHAEL JONES, and MARTIN CARTER

      KEHOE,
 6
              Plaintiffs,
 7
      v.
 8
      THE TOWN OF SUPERIOR, THE CITY OF LOUISVILLE, COLORADO,
 9    THE CITY OF BOULDER, COLORADO, and THE BOARD OF COUNTY

      COMMISSIONERS OF BOULDER COUNTY,
10
              Defendants.
11    _____
12              REMOTE VIDEO DEPOSITION OF
13                 CHARLES BRADLEY WALKER
14               APPEARING REMOTELY FROM
15              STERLING HEIGHTS, MICHIGAN
16                   July 13, 2023
17    _____
18            (CONFIDENTIAL DESIGNATIONS PENDING)
19
20
21
22
23
24
25
```

```
                                                    Page 2
 1     REMOTE APPEARANCES:
 2     ON BEHALF OF THE PLAINTIFFS:
               BARRY ARRINGTON, ESQ.
 3             Arrington Law Firm
               3801 East Florida Avenue, Suite 830
 4             Denver, Colorado  80210
               Phone:  303-205-7870
 5             Email:  barry@arringtonpc.com
 6
       ON BEHALF OF THE DEFENDANTS:
 7             MARTHA REISER, ESQ.
               CAREY R. DUNNE, ESQ.
 8             Free & Fair Litigation Group
               266 W. 37th Street, 20th Floor
 9             New York, New York  10018
               Phone:  646-434-8604
10             Email:  martha@freeandfairlitigation.org
               Email:  carey@freeandfairlitigation.org
11
               and
12
               JENNIFER KIM, ESQ.
13             Davis Polk & Wardwell, LLP
               1600 El Camino Real
14             Menlo Park, California  94025
               Phone:  650-752-2000
15             Email:  jennifer.kim@davispolk.com
16
       ON BEHALF OF THE DEFENDANTS, THE CITY OF LOUISVILLE and the
17     TOWN OF SUPERIOR:
               GORDON VAUGHAN, ESQ.
18             Vaughan & DeMuro
               111 S. Tejon Street
19             Colorado Springs, Colorado  80903
               Phone:  719-578-5500
20             Email:  gvaughan@vaughandemuro.com
21
       Also Present:  James Jones
22                     Martin Kehoe
                       Neal P. Billig
23                     Nicole Kozlak
                       Jerry DeBoer, videographer
24
25
```

```
                                                        Page 36

 1              A.    That's correct.

 2              Q.    Okay.  And then do you have any more

 3     information about, kind of, the make or model of the

 4     firearm other than Swedish Army rifle?

 5              A.    That's the best I can tell you.  I'm

 6     sorry.

 7              Q.    Okay.  That's fine.

 8                    Okay.  So let's go to the fourth firearm

 9     that you had mentioned.  What's that one?

10              A.    That's the handgun that I -- that I

11     inherited.

12              Q.    Oh, sorry.  I may have misunderstood.

13                    So I thought it was four plus one you had

14     inherited, but is it three plus one you had inherited?

15              A.    That's correct.

16              Q.    Got it.

17                    Okay.  One moment, please.

18                    Have you ever fired a firearm in

19     self-defense?

20              A.    No, ma'am.

21              Q.    Have you ever brandished a firearm in

22     self-defense?

23              A.    Yeah.  Yes.

24              Q.    When was that?

25              A.    15, 20 years ago.
```

1          Q.   And where was that?

2          A.   North Carolina.

3          Q.   Okay.  And can you describe the

4     circumstances?

5          A.   I was faced with an individual who

6     threatened me.

7          Q.   Was that in your home?

8          A.   No, it was outside my home.

9          Q.   Where was it?

10         A.   On the east side of Charlotte.  It's a --

11         Q.   Was it --

12         A.   I'm sorry.

13         Q.   Sorry.  I was just going to say, was it on

14    the street or in a restaurant or what?

15         A.   I own some property in -- outside of

16    Charlotte, and I was confronted with an individual late

17    at night.

18         Q.   And was that individual armed?

19         A.   I assumed he was.

20         Q.   And so which -- which firearm did you have

21    with you at that time that you brandished?

22         A.   My Glock 9-millimeter.

23         Q.   Was it loaded at the time?

24         A.   Yes, ma'am.

25         Q.   And what -- what happened when you

```
                                                   Page 38
 1    brandished the weapon?

 2              A.   The gentleman went away.

 3              Q.   What made you feel under threat by this

 4    individual?

 5              A.   I'm in a country area by myself,

 6    nighttime, on my private property where no one should

 7    probably have been on other than me.

 8              Q.   Was this individual someone that you knew?

 9              A.   No, ma'am.

10              Q.   So, is it right, then, that you were on

11    your private property at night and you saw someone that

12    you didn't know on your property?  Is that what happened?

13              A.   That's correct.

14              Q.   What were they doing on your property?

15    Could you tell?

16              A.   No, ma'am.

17              Q.   And were you inside a building when you saw

18    this or outside?

19              A.   Outside.

20              Q.   Okay.  So you were outside and you saw this

21    individual outside and were they -- what were they doing?

22    Were they doing anything?

23              A.   Were they damaging property?  No.  But

24    they clearly should not have been on the property.

25              Q.   And what else was on this property?  Was
```

```
                                                      Page 39
```

1    there a home on the property?

2              A.   No, ma'am.  I owned an airport.

3              Q.   An airport?  Is that what you said?

4              A.   That's correct.

5              Q.   Okay.  So you -- so you actually have a

6    plane that you fly out of there?

7              A.   No, I owned an actual airport.

8              Q.   Okay.  I see.  Yeah.  Okay.  Sorry, if I'm

9    being unclear about that.

10             So you are at the airport, you are outside

11   at the airport, and you see an individual who shouldn't

12   be there; correct?

13             A.   That's correct.

14             Q.   So you take out your Glock and the

15   individual, do they walk away?  Run away?

16             A.   They quickly walked away.

17             Q.   Okay.  And did you speak to this person?

18             A.   If I did, it was just telling them it's

19   time to leave.

20             Q.   Okay.  And did you call the police?

21             A.   No.

22             Q.   So is there any sort of documentation

23   related to this incident?

24             A.   No, ma'am.

25             Q.   All right.  One moment.