IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-2680-NYW-SKC

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
CRAIG WRIGHT,
GORDON MADONNA,
JAMES MICHAEL JONES, and
MARTIN CARTER KEHOE,

      Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE, COLORADO,
CITY OF BOULDER, COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

      Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs submit the following reply in support of their motion for summary judgment.

**A.    This is a Simple Case**

If one believes Justices Kavanaugh, Thomas, and Alito, this is an exceedingly simple case.[1] The AR-15 is the quintessential semi-automatic rifle that Defendants

---

[1] This is not to suggest that other justices have a different view. But these justices have articulated their views in various opinions.

1

seek to ban. The AR-15 is in common use for lawful purposes and therefore citizens have a Second Amendment right to possess it. No further analysis is necessary. Then-Judge Kavanaugh put it this way:

> What is more, in its 1994 decision in *Staples* [*v. United States*, 511 U.S. 600 (1994)], the Supreme Court already stated that semi-automatic weapons 'traditionally have been widely accepted as lawful possessions.' 511 U.S. at 612, 114 S .Ct. 1793. Indeed, the precise weapon at issue in *Staples* was the AR-15. The AR-15 is the quintessential semi-automatic rifle that D.C. seeks to ban here. *Yet as the Supreme Court noted in Staples, the AR-15 is in common use by law-abiding citizens and has traditionally been lawful to possess.*

*Heller v. D.C.* ("*Heller II*") 670 F.3d 1244, 1288 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (emphasis added). The AR-15 – "the most popular semi-automatic rifle" – is protected by the Second Amendment. *Id.*, at 1287, 1288.

One might justifiably ask why the *dissenting* opinion in *Heller II* is relevant to the Court's analysis in this case. To which Plaintiffs reply that in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court cited the *Heller II* dissent multiple times. *See Id.*, 597 U.S. at 23, n. 5; 597 U.S. at 31; and 597 U.S. at 36. Plaintiffs respectfully suggest that if the Supreme Court found Justice Kavanaugh's *Heller II* dissent to be highly persuasive, this Court should as well. Indeed, while then-Judge Kavanaugh was writing in dissent in *Heller II*, the views he announced in that dissent would ultimately prevail when the "text, history and tradition" analysis he advanced[2] was expressly articulated in *Bruen*. It should be kept in mind that then-Judge Kavanaugh was not arguing for a novel test. Rather, his *Heller II* argument was that in *D.C. v. Heller*, 554 U.S. 570 (2008), the Supreme

---

[2] *Heller II*, 670 F.3d at 1276 ("the proper Second Amendment test focuses on text, history, and tradition")

Court had *already* adopted the text, history and tradition test. *Heller II*, 670 F.3d at 1271. *Bruen* held that he was right. In other words, *Bruen* insisted that it was not adopting a new Second Amendment test but its purpose was merely to "reiterate" the text, history and tradition test set forth in *Heller*. *Bruen*, 597 U.S. at 24.

As noted, Justice Thomas and Justice Alito have expressed similar views. *See Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J., dissenting from denial of certiorari) (AR-15 in common use and therefore protected). And in *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring), Justice Alito noted that a categorial ban of a weapon owned by hundreds of thousands of citizens violates the Second Amendment. A fortiori, a ban of a semi-automatic rifle like the AR-15, which Defendants admit is owned by millions of citizens, is unconstitutional.

## B.  Nose Counting is Not the Proper Mode of Analysis in Second Amendment Cases

In *Heller II*, then-Judge Kavanaugh wrote that it "would strain logic and common sense to conclude" that there is a constitutional distinction between commonly possessed semi-automatic handguns, which are protected by *Heller*, and commonly possessed semi-automatic rifles like the AR-15. *Id.*, 670 F.3d at 1286. After all, the government admitted that from a policy perspective its interest in banning handguns, which *Heller* held are protected, is "just as compelling, *if not more compelling* than the government interest in banning semi-automatic rifles." *Id.* (internal quotation marks omitted; emphasis added).

3

Since a principled constitutional line cannot be drawn, why would a court nevertheless draw it? Judge Kavanaugh had an opinion on that matter as well. In a not-thinly-veiled chastisement of his colleagues in the majority he wrote: "Such a line might be drawn out of a bare desire to restrict *Heller* as much as possible or to limit it to its facts, but that is not a sensible or principled constitutional line for a lower court to draw or a fair reading of the *Heller* opinion, in my view." *Id.*, 670 F.3d at 1286, n. 14.

Obviously, Justice Kavanaugh's views did not prevail in *Heller II*. Nor did they prevail in any of the other circuit courts that reviewed bans of so-called "assault weapons" and so-called "large capacity magazines" in the years that followed.[3] Every single circuit court that reviewed such a ban upheld it. *See, e.g.*, *Association of N. J. Rifle & Pistol Clubs, Inc. v. Attorney General N. J.*, 910 F.3d 106 (3rd Cir. 2018); *Worman v. Healey*, 922 F.3d 26 (1st Cir. 2019); and *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017). All three of these cases were expressly abrogated by *Bruen*. 591 U.S. at 19 and n. 4. To be sure, the Court abrogated the methodology by which these lower courts reached their holding rather than their specific holdings. But the point is that just as Justice Kavanaugh noted in *Heller II*, all of the circuit courts found a way to cabin *Heller* to its specific facts.

---

[3] Plaintiffs request the Court to keep in mind that "assault weapon" and "large capacity magazine" are terms of political derision that have been incorporated into the challenged Ordinances. They are not accurate firearms terms. *See, e.g., Friedman, supra*, where Justice Thomas noted that the ordinance banned many of the "most commonly owned semiautomatic firearms, which the City branded 'Assault Weapons.'"

4

The general tendency of the lower courts to defer to the government in Second Amendment cases did not go unnoticed. In *Bruen,* the Court wrote:

> If the last decade of Second Amendment litigation has taught this Court anything, it is that federal courts tasked with making such difficult empirical judgments regarding firearm regulations under the banner of 'intermediate scrutiny' often defer to the determinations of legislatures. But while that judicial deference to legislative interest balancing is understandable – and, elsewhere, appropriate – it is not deference that the Constitution demands here. The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense. *Heller*, 554 U.S. at 635, 128 S.Ct. 2783. It is this balance – struck by the traditions of the American people – that demands our unqualified deference.

*Id.*, 597 U.S. at 26.

After this admonition from the Supreme Court, one might conclude that the lower courts would be less deferential in arms ban cases. But one would be wrong. As Defendants point out in their brief (Opp. 8), nothing has changed. Defendants cite the Seventh Circuit's recent decision in *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175 (7th Cir. 2023), in particular. And it is true that *Bevis* joined the post-*Bruen* trend of continuing to find various ways of ignoring *Heller's* plain holding that arms in common use may not be categorically banned. But it is also true that dissenting judges have taken up the role Justice Kavanaugh played in *Heller II*. For example, in *Bevis,* Judge Brennan dissented and chided his colleagues. He reminded them that they are "not free to ignore the [Supreme] Court's instruction as to the role of 'in common use' in the Second Amendment analysis." *Id.*, 85 F.4th at 1179 (Brennan, J., dissenting). In *Duncan v. Bonta,* 83 F.4th 803 (9th Cir. 2023), Judge Bumatay used even more forceful language:

5

> If the protection of the people's fundamental rights wasn't such a serious matter, our court's attitude toward the Second Amendment would be laughably absurd. For years, this court has shot down every Second Amendment challenge to a state regulation of firearms – effectively granting a blank check for governments to restrict firearms in any way they pleased. . . . Last year, the Supreme Court had enough of lower courts' disregard for the Second Amendment. It decisively commanded that we must no longer interest-balance a fundamental right and that we must look to the Second Amendment's text, history, and tradition to assess modern firearm regulations. . . . Despite this clear direction, our court once again swats down another Second Amendment challenge. On what grounds? Well, the majority largely doesn't think it worthy of explanation. . . . The Constitution and Californians deserve better.

*Id.*, 83 F.4th at 808-09 (Bumatay, dissenting).

Which brings us to the Defendants' argument. Defendants make much of the fact that the courts that have considered arms bans post-*Bruen* are practically unanimous in deferring to the government, and they urge the Court to count noses as it were and follow that trend. But here is the thing about nose counting in the Second Amendment context – it has a tendency to lead courts astray. For example, if the Court were rendering its decision the day before *Bruen* was announced, it would have surveyed the circuit court decisions and found that they were *unanimous* in imposing the *Heller*-limiting interest balancing test. And if the Court had followed those precedents, it would have found out the next day that it was wrong for having done so.  After *Bruen*, the lower courts have been practically unanimous in employing other *Heller*-limiting strategies to defer to the government in arms ban cases. Judge Brennan and Judge Bumatay would tell the Court that they were wrong to do this. Plaintiffs urge the Court to follow these judges' example. Instead of counting noses (as the *Duncan* majority almost literally did), the Court should apply *Heller's* simple

6

rule – arms possessed by millions of Americans for lawful purposes cannot be banned – to the facts of this case.

## C.  Defendants Misunderstand Plaintiffs' "Legislative Facts" Point

Defendants assert that Plaintiffs have relied exclusively on "legislative facts" and therefore they have failed to develop a sufficient record for summary judgment. Opp. 5. Defendants misunderstand Plaintiffs' reference to legislative facts. As the Ninth Circuit held in *Teter v. Lopez*, 76 F.4th 938, 946 (9th Cir. 2023), "the *historical* research required under *Bruen* involves issues of so-called 'legislative facts.'" This should be obvious from *Heller* and *Bruen*. There was no trial court factual record at all in those cases because they were both decided on a motion to dismiss record. This did not stop the Court from engaging in a robust historical investigation in both cases by relying on legislative facts in the historical record.

## D.  The Historical Principle Relevant to this Case is "Locked In"

In an arms ban case, there is no need to adduce further historical evidence regarding the issue of whether arms in common use may be banned. *Heller* has already informed us that the historical evidence reveals that banning arms in common use for lawful purposes is not consistent with the Nation's history and tradition of firearms regulation. 554 U.S at 629. And as Solicitor General Elizabeth Prelogar noted in her oral argument last month in *United States v. Rahimi*, once a Second Amendment principle is "locked in," it is not "necessary to effectively repeat that same historical analogical analysis for purposes of determining whether a modern-day legislature's disarmament provision fits within the category." Trans.,

7

55:18 – 56:1 (available at https://bit.ly/3QwPm3c). As Justice Kavanaugh argued in *Heller II*, the "in common use" principle was "locked in" by *Heller*. And General Prelogar was correct. There is no need to repeat that analysis in this case. Thus, the only fact that Plaintiffs need establish is that the arms banned by Defendants are possessed by literally millions of Americans for lawful purposes. They submitted evidence establishing this fact, and that evidence is not genuinely disputed.

This is the reason Plaintiffs elected not to depose any of Defendants' host of experts. None of those declarations contains any evidence that Defendants' bans of arms in common use are consistent with the Nation's history and tradition of firearms regulation. This is not surprising because *Heller* held there is no such evidence, and the Court did not need expert testimony to find that all of the historical analogues proposed by D.C. were facially insufficient for the city to meet its burden.

**E.      The Common Use Issue Arises Under *Bruen*'s Step Two**

Defendants continue to insist that the word "arms" should not be construed according to its plain meaning. They insist that it has an esoteric meaning that can be sussed out in a particular case only through intensive empirical research. Consider two rifles lying on a table. Under Defendants' theory, one could be standing in front of that table and literally have no idea whether one, both or neither of the rifles is an "arm." According to Defendants, the only way to know is to hire a research firm to conduct a study to determine how many times rifles of each type have been fired in self-defense situations and then have that or another research firm render an opinion on whether that number exceeds a threshold (that

8

Defendants have not identified) such that it has been "commonly" fired in self-defense.[4] Interestingly, Defendants never explain how *Heller* was able to determine that the firearms at issue in that case were "arms" without the benefit of any of this empirical data. Of course, *Heller* was able to determine that the firearms were "arms" because under the plain meaning of the word "arm," it is obvious that all firearms are arms. *Id.*, 544 U.S. at 581. And that is how the Court should determine the issue in this case.

Defendants' argument with respect to magazines is even more tenuous. Defendants never assert that a magazine of some size is not necessary for a semi-automatic firearm to function. Rather, they argue that a firearm that can accept an 11-round magazine can also accept a 10-round magazine and therefore the 11-round magazine is not strictly necessary for the firearm to function and is therefore not an "arm." Let's follow Defendants' logic a little further. A firearm that can accept a 10-round magazine can also accept a 9-round magazine and therefore the 10-round magazine is not strictly necessary. And we can go on and on until we get to a firearm that can accept a two-round magazine can also accept a 1-round magazine and therefore the 2-round magazine is not strictly necessary. Thus, Defendants' argument leads to the conclusion that all magazines with a capacity in excess of one round are not "arms" because even a two-round magazine is not strictly "necessary" for a semi-automatic firearm to operate. An argument that leads to such an absurd conclusion cannot be correct.

---

[4] Apparently brandishing the firearm to scare off attackers does not count.

The Court should reject Defendants' argument and follow *Bruen* instead. Under *Bruen*, all magazines are instruments that facilitate self-defense and are thus *presumptively* protected at step one. Can that presumption be rebutted at step two with respect to a magazine of a particular capacity, say a Glock magazine with a capacity of 17 rounds? In principle, yes, but only if the government is able to demonstrate that banning the Glock magazine is consistent with the Nation's history and tradition of firearms regulation. Defendants know they cannot do this. And that is why they are trying so hard to avoid being required to follow *Bruen*.

**F.     Defendants' "Shifting Status" Argument Fails**

Defendants cite *Bevis* for the proposition that the common use test is not workable, because that would mean that a weapon could change status from unprotected to protected over time as its use becomes more common. Opp. 11. That argument runs headlong into *Bruen*, however, which held precisely that can happen. "Whatever the likelihood that handguns were considered 'dangerous and unusual' during the colonial period, they are today 'the quintessential self-defense weapon.'" *Id.*, 597 U.S. at 47. Thus, even assuming[5] for the sake of argument AR-15s were unprotected at some time in the past, they are protected now because they are "in common use today." *Id.*

---

[5] This assumption is suspect because it conflicts with *Staples*, which stated that guns like the AR-15 were "widely accepted as lawful possessions" as early as 1994. *Staples v. United States*, 511 U.S. 600 (1994).

10

**G.    There is No Genuine Dispute as to the Number of Arms in Circulation**

Defendants are in full spin-mode when it comes to their own expert's testimony. Dr. Klarevas' declaration fully supports Plaintiffs' other evidence that tens of millions of "assault weapons" are owned by Americans. Indeed, one federal court has made an express finding that 24.4 million assault weapons are in circulation based on his identical declaration in that case. *Miller v. Bonta*, 2023 WL 6929336, at *33 (S.D. Cal. Oct. 19, 2023). Defendants assert (or seem to assert) that there continues to be a genuine factual issue because Dr. Klarevas stated that this was an overestimate. But Plaintiffs have always acknowledged that Dr. Klarevas said 24.4 million was likely an overestimate because it included rifles possessed by law enforcement officers. Pl. Resp. 2. But even if one subtracts one rifle for every law enforcement officer in the country, there is still no dispute among the parties that tens of millions are in circulation among the civilian population. There is no genuine dispute on this issue.

**H.    Mr. Passamaneck's Declaration**

In addition, to Dr. Klarevas, Mr. Passamaneck rendered an opinion that tens of millions of these arms are in circulation. Recently, another division of this Court granted the State's Rule 702 motion with respect to parts of Mr. Passamanceck's declaration. Plaintiff's believe that the Rule 702 issue is distinguishable in this case, and Mr. Passamanceck's declaration should not be struck. Nevertheless, if the Court is inclined to grant Defendants' motion, Plaintiffs urge the Court to follow Judge

11

Gallagher's example and allow them to supplement their expert testimony. *See Gates v. Polis*, Case No. 2022-cv-1866, ECF 109, p. 9.

Even if Mr. Passamanceck's opinion regarding common use is precluded, there is sufficient evidence in the record to establish that the banned weapons are in common use. Indeed, as demonstrated in Plaintiffs' response to Defendants' motion, Defendants own evidence establishes common use. At the very least, there is sufficient evidence in the record to preclude a holding that there is no genuine factual issue that the banned weapons are not in common use, and Defendants are not entitled to summary judgment.

## I. Plaintiffs Have Adduced Evidence Relevant to *Bruen*'s Step Two

Defendants assert that Plaintiffs have not adduced any evidence regarding *Bruen's* history and tradition step. Opp. 20. This is not accurate. Judge Brennan addressed this issue in his *Bevis* dissent. He noted that even if a plaintiff demonstrates that a weapon falls under the plain text in *Bruen*'s step one, it is "only *prima facie* protected by the Second Amendment." *Id.,* at *22, *citing Bruen*, 142 S. Ct. at 2132. Plaintiff has demonstrated that the banned weapons are arms. Thus, they are *prima facie* protected. Judge Brennan went on to explain that whether an arm is actually protected as opposed to *prima facie* protected is determined in the second step. Plaintiffs have no burden at the second step. But a plaintiff will nevertheless want to introduce evidence of common use, because "in common use" is a sufficient condition for finding arms protected under the history and tradition test in *Bruen*.

12

*Id.*[6] Thus, contrary to Defendants' argument, all of the evidence going to common use is directed at the history and tradition step. And that evidence is sufficient for finding that the banned arms are protected.

## J.     Defendants' Standing Argument is Astonishing

Defendants assert that the individual Plaintiffs' declarations do not establish standing because they are not capable of determining whether their arms fall within the categories of arms banned by the Ordinances. Opp. 20. This is truly astonishing. The ordinances are criminal statutes. And "[t]o comport with the Due Process Clause of the U.S. Constitution, a law must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States v. Vernon*, 814 F.3d 1091, 1102 (10th Cir. 2016) (internal citation and quotation marks omitted). If Defendants are correct that Plaintiffs cannot make the determination regarding whether their weapons fall within the bans, then the Ordinances would fail on Due Process grounds. One suspects Defendants did not intend to imply their Ordinances are unconstitutionally vague. Plaintiffs won't push the Due Process issue because it really is the case that a person of ordinary intelligence can know whether, for example, he owns an AR-15 (a weapon banned by name) or a magazine with a capacity greater than ten rounds.

## K.     Conclusion

---

[6] But as discussed above, it is "not a necessary condition to find them 'Arms.' The nature of an object does not change based on its popularity, but the regulation of that object can." *Id.* (internal citation and quotation marks omitted).

13

For the reasons set forth in their motion, their response to Defendants' motion and this Reply, Plaintiffs respectfully request the Court to deny Defendants' motion for summary judgment and grant theirs.

Respectfully submitted this 12th day of December 2023.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033
(303) 205-7870
barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033
Phone Number:  (303) 991-7600
Fax Number:  (303) 991-7601
E-mail:  shaun@pearmanlawfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email to parties of record.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington