IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-02680-NYW-JPO

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
GORDON MADONNA,
JAMES MICHAEL JONES, and
MARTIN CARTER KEHOE,

    Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE, COLORADO,
CITY OF BOULDER, COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

    Defendants.

## ORDER ON MOTIONS TO EXCLUDE

Pending before the Court are (1) Defendants' Motion to Partially Strike Expert Reports and Partially Exclude Testimony of Mark Passamaneck ("Defendants' Motion to Exclude"), [Doc. 68, filed September 15, 2023]; and (2) the Motion to Exclude Klarevas Declaration Repudiating His Prior Declaration ("Plaintiffs' Motion to Exclude" and, collectively, "Motions to Exclude" or "Motions"), [Doc. 79, filed October 29, 2023]. For the reasons that follow, Defendants' Motion to Exclude is respectfully **GRANTED**[1] and Plaintiffs' Motion to Exclude is respectfully **DENIED as moot**.

---

[1] Another court within the District of Colorado recently ruled on a motion to exclude in a case involving similar claims, the same expert witness (Mark Passamaneck), and an

## BACKGROUND

Plaintiffs Rocky Mountain Gun Owners, National Association for Gun Rights, Charles Bradley Walker, Bryan LaFonte, Gordon Madonna, James Michael Jones, and Martin Carter Kehoe (collectively, "Plaintiffs") filed this suit to challenge the constitutionality of various county and municipal ordinances[2] (the "Ordinances") enacted by Defendants The Town of Superior, City of Louisville, City of Boulder, and Board of County Commissioners of Boulder County ("Defendants"), which ban "assault weapons" and "large capacity magazines" ("LCMs").[3]  Plaintiffs assert a single claim under the Second and Fourteenth Amendments of the United States Constitution.  *See* [Doc. 1 at 15].

Plaintiffs engaged mechanical engineer Mark Passamaneck ("Mr. Passamaneck") to render an expert opinion in this matter.  In his initial report dated April 12, 2023, [Doc. 68-1 at 4–7], and his "supplemental" report dated July 20, 2023, [Doc. 68-2 at 2–4] (together, the "Passamaneck Report"), Mr. Passamaneck opined on two topics:  (1) the

---

identical report.  *See Gates v. Polis*, No. 22-cv-01866-GPG-JPO, ECF No. 109 (D. Colo. Dec. 6, 2023).  The Court notes substantial overlap in the arguments contained in the Parties' briefing of the motions to exclude in *Gates* and the instant case.  *Compare* [Doc. 68; Doc. 75; Doc. 77], *with Gates*, ECF No. 56; ECF No. 60; ECF No. 71.  While this Court is not bound by that decision, *see United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) ("district courts in this circuit are bound by [Tenth Circuit] decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts"), this Court notes that the *Gates* court granted the defendant's motion to exclude Mr. Passamaneck's report and testimony, and this Court finds its analysis persuasive.

[2] The Ordinances at issue include Town of Superior, Colorado, Code Ch. 10, art. IX; City of Boulder, Colorado, Rev. Code Title 5, Ch. 8; City of Louisville, Colorado, Code Title 9, Ch. VIII; and Boulder County, Colorado, Ord. No. 2022-5.

[3] The two terms are defined uniformly throughout the Ordinances; for example, LCMs are defined as "any ammunition feeding device with the capacity to accept more than ten (10) rounds," with three limited exceptions not relevant to the instant Motions.

number of AR-15 style semi-automatic rifles and LCMs in the United States (the "Numerical Estimates"), and (2) the operation and durability of firearm magazines. [Doc. 68-1 at 4–7; Doc. 68-2 at 2–4]. Defendants ask this Court to exclude Mr. Passamaneck's opinion and testimony with respect to the first topic, Numerical Estimates, arguing that Mr. Passamaneck is not qualified by knowledge, skill, experience, training, or education to opine on the numbers of AR-15 style semi-automatic rifles and/or LCMs in circulation. *See generally* [Doc. 68].

Defendants also engaged an expert, Louis Klarevas, Ph.D ("Dr. Klarevas"), to render an opinion in this matter on "recent trends in mass shootings in the United States, the use of assault weapons and large-capacity magazines (LCMs) in mass shootings and the impact on fatalities and harm caused, and how restrictions on assault weapons and LCMs have affected mass shooting violence." [Doc. 78-11 at 6 ¶ 1]. Plaintiffs seek to exclude the Declaration of Louis Klarevas dated October 20, 2023, [*id.* at 2–3], and the Revised Expert Report of Louis Klarevas, [*id.* at 4–396], which purportedly constitutes a revised version of the original Expert Report of Louis Klarevas dated May 5, 2023, [Doc. 78-12 at 2–36]. *See generally* [Doc. 79].

The Motions to Exclude are fully briefed and ripe for this Court's review. *See* [Doc. 68; Doc. 75; Doc. 77]; *see also* [Doc. 79; Doc. 80].[4] Furthermore, the Court determines, in its discretion, that an evidentiary hearing will not materially assist in resolving the Motions. *See Adamscheck v. Am. Fam. Mut. Ins. Co.*, 818 F.3d 576, 586 (10th Cir. 2016) (observing that the trial court has discretion in how to conduct a *Daubert* analysis); *A.R. ex rel. Pacetti v. Corp. of President of Church of Jesus Christ of Latter-*

---

[4] Plaintiffs did not file a Reply in support of their Motion to Exclude.

*Day Saints*, No. 12-cv-02197-RM-KLM, 2013 WL 5463518, at *10 (D. Colo. Sept. 30, 2013) ("While a party may request a *Daubert* hearing, it is within the Court's discretion to determine whether a hearing is necessary."); *see also* Fed. R. Evid. 104(c)(3) (requiring a hearing on preliminary questions of admissibility in civil cases when "justice so requires"). No Party has requested such a hearing, *see* [Doc. 68; Doc. 75; Doc. 77]; *see also* [Doc. 79; Doc. 80], and upon review of the Parties' submissions and the applicable case law, this Court finds that it can appropriately discharge its gatekeeping functions and make the requisite findings based upon the written record before the Court.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party offering the expert opinion bears the burden of establishing its admissibility, including the foundational requirements, by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *see also* Fed. R. Evid. 702 (requiring the proponent of expert testimony to "demonstrate[] to the court that it is more likely than not that" the expert's testimony and opinions meet the requirements of Rule 702).

Trial courts are charged with the responsibility of acting as gatekeepers of expert testimony to ensure that any such testimony or evidence admitted is not only relevant, but also reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that gatekeeping function, trial courts within the Tenth Circuit conduct a two-part inquiry. First, courts consider whether "the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline" by conducting a preliminary inquiry into the expert's qualifications and the admissibility of the proffered evidence, i.e., whether the reasoning or methodology underlying the testimony is valid. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (cleaned up) (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232–33 (10th Cir. 2005)). Second, courts look to whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder. *See id.* The trial court has "broad discretion both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Id.* (cleaned up). In ruling on a Rule 702 motion, however, the trial court must make specific factual findings on the record to enable an appellate court to review its conclusions. *Id.* (quotation omitted).

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quotation omitted). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

5

## ANALYSIS

**I.     Defendants' Motion to Exclude**

Defendants assert that Mr. Passamaneck lacks sufficient statistical analysis or surveying experience to qualify as an expert on the Numerical Estimates topic, and that Mr. Passamaneck's opinions on the topic are otherwise inadmissible under Rule 702. [Doc. 68 at 4–6]. The Court agrees that Mr. Passamaneck is not qualified and, therefore, does not reach Defendants' other bases for exclusion.

Mr. Passamaneck opines that "there certainly [are] close to 100 million handgun magazines in the US that are over 15 rounds," that there are approximately "250 million rifle magazines over 15 rounds," and that "[f]rom one third to one half of all US gun owners surely own a magazine that is over 15 rounds." [Doc. 68-1 at 5]. In so doing, however, Mr. Passamaneck merely parrots the impressions, research, and views of others. Indeed, he recites a variety of third-party sources, ranging from industry surveys to estimates contained in a Facebook message from the executive of a magazine manufacturer. *See generally* [*id.*]; *see also, e.g.*, [Doc. 68-4]. But nothing in the record suggests that *Mr. Passamaneck* has the requisite "knowledge, skill, experience, training, or education" to analyze and apply the information he regurgitates in the Passamaneck Report. *See LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) ("Whether a witness can parrot the *results* of a model does not mean that he is qualified to explain how the model works or to opine on the statistical validity or interpretation of the results.").

The Passamaneck Report includes the following summary of his qualifications:

> Mr. Passamaneck has extensive knowledge of firearms desing [sic], manufacture and use.  He has designed magazines, barrels, muzzle devices, gas blocks and complete firearms for manufacturers.  Mr. Passamaneck has extensively tested firearms, ammunition and accessories.  He has conducted shooting reconstructions related to both

> intentional and unintentional firing of firearms. Mr. Passamaneck has been admitted in courts as a firearms expert and as a ballistics expert. He holds several training certifications and has trained and coached shooting in a wide array of disciplines.

[Doc. 68-1 at 6]. Mr. Passamaneck has also served as an expert witness in more than 150 cases. [Doc. 68-6 at 15:2–21]; *see also* [Doc. 68-3 at 24:1–18]. With just one exception,[5] his expert testimony has always related to mechanical engineering and/or forensic reconstruction of shooting incidents. [Doc. 68-6 at 15:2–16:5; Doc. 68-3 at 27:8–25, 26:23–25].

In support of their arguments, Defendants cite Mr. Passamaneck's resume, which provides his general (i.e., non-firearm related) experience, [Doc. 68-5], and an addendum that sets out his firearm-related experience, [Doc. 68-2 at 7]; *see also* [Doc. 68 at 5 n.5; Doc. 68-3 at 42:16]. Mr. Passamaneck's resume lists three engineering practice areas: "Mechanical," "Plumbing," and "Automotive." [Doc. 68-5 at 2]; *see also* [Doc. 68-6 at 12:4–7]. The firearm addendum to his resume and his resume also list extensive firearms experience that does not bear on the Numerical Estimates at issue here, including "extensive knowledge related to firearms, cartridge reloading, and shooting incidents," limited to "training, shooting, testing and reconstruction"; firearm magazine, base pad, and accessory manufacturing for shooting competitions; competing in firearm competitions; and visiting firearms tradeshows. [Doc. 68-2 at 7].

But Mr. Passamaneck lacks any formal training, education, or professional experience related to statistical analysis or survey methodology. [Doc. 68-6 at 33:12–17]. In his own words, he is "not a statistician, and [does not] conduct surveys." [Doc. 68-3 at

---

[5] The sole exception is *Gates v. Polis*, No. 22-cv-01866-GPG-JPO (D. Colo.).

7

34:2–3]. Still, Mr. Passamaneck claims to "review data" based on his "education and experience in the firearms industry." [*Id.* at 33:4–5, 34:3].

Insofar as Mr. Passamaneck's opinion relies on this "firearms industry" experience, he "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Nacchio*, 555 F.3d at 1258 (quotation omitted). When asked to elaborate on his professional experience, Mr. Passamaneck testified: "I mean, I have been a sponsored shooter, I've worked for manufacturers, I manufacture a barrel, you know, there's a lot of – there's a lot of little piecemeal portions that are professional experience in that – in that area." [Doc. 68-3 at 33:8–16]. But he fails to connect his "experience in the industry" with the topic on which he opines—i.e., "assess[ing] . . . numbers of firearms and magazines of certain capacities that are in possession of American citizens." [*Id.* at 32:1–3]. In other words, "[n]othing in the record provides the necessary connection" between Mr. Passamaneck's firearms experience and his ability to evaluate or opine on the Numerical Estimates. *See United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014). And without more, Mr. Passamaneck's "practical experience with firearms," such as his firearms manufacturing, training, and shooting experience, is plainly not "relevant experience with statistical analyses or data." *See Ore. Firearms Fed'n v. Kotek*, No. 2:22-cv-01815-IM, 2023 WL 4698752, at *2 (D. Ore. May 31, 2023) (holding that expert with experience in firearms industry but no relevant statistical experience was not qualified to testify about data relating to frequency with which rounds are fired).

Courts within the Tenth Circuit have excluded expert opinions resting on similarly (and identically) deficient foundations. In a case cited by Defendants, *Fish v. Kobach*, for

8

example, the court concluded that the defendant's expert was "not qualified to testify as an expert" about certain survey data because the defendant failed to demonstrate that the expert "possese[d] any special skill or experience required to testify about the survey results." 304 F. Supp. 3d 1027, 1038 (D. Kan. 2018). In so holding, the court considered the expert's admissions that he was neither a social scientist nor a historian and had taken just one undergraduate class on statistics. *Id.* It also observed that the expert did not participate in designing or conducting the survey forming the basis of his report, and that the report—other than one paragraph—simply regurgitated the survey's findings. *Id.*

The *Gates* court recently considered *Fish* when deciding a motion to exclude an identical report by Mr. Passamaneck. *Compare Gates*, ECF No. 56-1 at 2–5, *with* [Doc. 68-1 at 4–7]. That court applied *Fish* to the Passamaneck Report and concluded that "Mr. Passamaneck is not qualified to opine as an expert for essentially the same reasons as the expert in *Fish*." *Gates*, ECF No. 109 at 8. Here, too, Mr. Passamaneck has disclaimed any expertise in the explanation or application of survey data. And as in *Gates*, the challenged portions of the Passamaneck Report consist exclusively of findings by third parties.[6] The Court finds that Mr. Passamaneck is therefore not qualified to opine on the Numerical Estimates. *See Ramos v. Banner Health*, 1 F.4th 769, 780 (10th Cir. 2021) (rejecting attempt by expert to "invoke vague allusions to his 'experience'" to support his opinion); *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2022) (holding that an expert in one field, regardless of his credentials, is "not permitted to be the mouthpiece of a scientist in a different specialty").

---

[6] This conclusion excludes the potentially incorrect calculations derived from survey and third-party data with which Defendants take issue in their Motion to Exclude. *See, e.g.*, [Doc. 68 at 13–14].

Plaintiffs have thus failed to establish that Mr. Passamaneck is qualified by his knowledge, skill, experience, training, or education to opine on the number of AR-15 style assault weapons or LCMs in circulation, and the Court declines to consider Mr. Passamaneck's opinions on this topic in ruling on the Parties' pending cross-motions for summary judgment. [Doc. 76; Doc. 78]. Accordingly, Defendants' Motion to Exclude is respectfully **GRANTED**. The Court hereby **STRIKES** the Numerical Estimates portion of the Passamaneck Report and **EXCLUDES** Mr. Passamaneck's testimony on the topic.

II.  **Plaintiffs' Motion to Exclude**

In their Motion to Exclude, Plaintiffs seek to exclude the Declaration of Louis Klarevas dated October 20, 2023, [Doc. 78-11 at 2–3], and the Revised Expert Report of Louis Klarevas attached thereto, [*id.* at 4–396] (together, "Dr. Klarevas's Revised Report"), which purportedly constitutes a revised version of the original Expert Report of Louis Klarevas dated May 5, 2023, [Doc. 78-12 at 2–36]. *See generally* [Doc. 79]. In response, Defendants assert that Plaintiffs' Motion mischaracterizes Dr. Klarevas's Revised Report, which contains only non-material changes and "does not alter any of Dr. Klarevas's opinions from his original report." [Doc. 80 at 1–2]. Nevertheless, "to avoid burdening the Court with needless disputes, Defendants . . . agree to withdraw Dr. Klarevas's revised report," and ask the Court to consider only the original version of Dr. Klarevas's report, which Defendants also attached to their Motion for Summary Judgment. [*Id.* at 2]. Accordingly, the Court hereby deems Dr. Klarevas's Revised Report, [Doc. 78-11 at 2–396], **WITHDRAWN** and **DENIES as moot** Plaintiffs' Motion to Exclude.

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that:

(1)  Defendants' Motion to Partially Strike Expert Reports and Partially Exclude Testimony of Mark Passamaneck [Doc. 68] is **GRANTED**;

(2)  The Declaration of Louis Klarevas dated October 23, 2023, [Doc. 78-11 at 2–3], and the Revised Expert Report of Louis Klarevas, [Doc. 78-11 at 4–396], are deemed **WITHDRAWN**; and

(3)  Plaintiffs' Motion to Exclude Klarevas Declaration Repudiating His Prior Declaration [Doc. 79] is **DENIED as moot**.

DATED:  July 22, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge