# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 22-cv-2680-NYW-SKC**

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
GORDON MADONNA,
JAMES MICHAEL JONES, and
MARTIN CARTER KEHOE,

      Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE, COLORADO,
CITY OF BOULDER, COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

      Defendants.

## DEFENDANTS' STATEMENT OF SUPPLEMENTAL AUTHORITY

Defendants respectfully submit this Statement of Supplemental Authority discussing the U.S. Supreme Court's recent decision in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), and other federal court decisions rendered since the parties completed briefing of their cross-motions for summary judgment on December 12, 2023. These decisions strongly support the constitutionality of Defendants' ordinances ("Ordinances") restricting assault weapons and large capacity magazines ("LCMs"), and therefore their motion for summary judgment.

**A.    *United States v. Rahimi***

In *Rahimi*, a criminal defendant challenged the federal statutory provision prohibiting individuals subject to a domestic violence restraining order from possessing a firearm, arguing that it violated the Second Amendment. *See* 144 S. Ct. at 1896. Interpreting the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Fifth Circuit held that the provision "does not fit within our tradition of firearm regulation" and was therefore unconstitutional. *See* 144 S. Ct. at 1896. The Supreme Court reversed and upheld the federal statutory provision in an opinion joined by eight Justices. *Id.* at 1896–97. In so doing, it relied on two historical analogues from the 18th and 19th centuries: surety laws (which required "individuals suspected of future misbehavior" to post a bond or else be incarcerated) and affray laws (which prohibited "going armed, with dangerous or unusual weapons" to terrify the public). *Id*. at 1899–1901. Although neither of those analogues perfectly mirrored the modern prohibition on firearm possession by domestic abusers, together they established a tradition of disarming "individual[s] [who] pose[] a clear threat of physical violence to another," a tradition also reflected in the challenged modern law. *Id*. at 1901–02.

*Rahimi* provides guidance to courts applying *Bruen*'s historical analysis. It notes that "some courts have misunderstood the methodology of [the Supreme Court's] recent Second Amendment cases" to require overly specific historical analogues to challenged statutes. *Id.* at

1897; *see also id.* at 1925 (Barrett, J., concurring) (explaining that "a challenged regulation need not be an updated model of a historical counterpart" to withstand constitutional scrutiny and that "a test that demands overly specific analogues has serious problems"). The Court stressed that the Second Amendment "was never thought to sweep indiscriminately," *id.* at 1897, and that its precedents "were not meant to suggest a law trapped in amber," *id.*; *see also id.* at 1897–98 ("[T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791."). And the Court again reiterated that the Second Amendment does not confer "'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Id.* at 1897 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).

Against that backdrop, the Court clarified that, at *Bruen*'s second step, "the appropriate analysis" is not to look for a "dead ringer" or "historical twin." *Id.* at 1898. Rather, courts should "consider[] whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Id.* (emphasis added); *see also id.* at 1912 (Kavanaugh, J., concurring) (explaining that courts' task is to ascertain "the principles embodied in [the Second Amendment's] text"); *id.* at 1925 (Barrett, J., concurring) ("'Analogical reasoning' under *Bruen* demands a wider lens: Historical regulations reveal a principle, not a mold.").[1]

Moreover, *Rahimi* confirms that different historical laws should be "[t]aken together" to identify the principles against which modern laws should be judged. *See id.* at 1901 ("Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be

---

[1] Although the *Rahimi* Court declined to settle the "ongoing scholarly debate on whether courts should *primarily* rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope," 144 S. Ct. at 1898 n.1 (emphasis added) (quoting *Bruen*, 597 U.S. at 37), its analysis makes clear that 19th-century (and later) history cannot be ignored.

disarmed. Section 922(g)(8) is by no means identical to these founding era regimes, but it does not need to be."). Courts should consider post-ratification history as part of this analysis. *See, e.g.*, *id.* at 1900–01 (relying on 19th-century statutes and a case as recent as 2010); *see also id.* at 1917 (Kavanaugh, J., concurring) (explaining that "the Framers[] expect[ed] and inten[ded] that post-ratification history would be a proper and important tool to help constitutional interpreters determine the meaning of vague constitutional text"); *id.* at 1924 (Barrett, J., concurring) (confirming that "postenactment history can be an important tool"). And an absence of closely analogous laws in one era should not be read as evidence of a law's unconstitutionality. *See id.* at 1925 (Barrett, J., concurring) (dismissing "flawed" assumption that "founding-era legislatures maximally exercised their power to regulate, thereby adopting a 'use it or lose it' view of legislative authority"); *see also id.* at 1905 (Sotomayor, J., concurring) (rejecting dissent's approach, under which "the legislatures of today would be limited not by a distant generation's determination that such a law was unconstitutional, but by a distant generation's failure to consider that such a law might be necessary").

Additionally, *Rahimi* emphasized the very high bar that applies to facial Second Amendment challenges like the one brought by Plaintiffs in this case. The Court explained that a facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a [challenger] to 'establish that no set of circumstances exists under which the [law] would be valid.'" *Id*. at 1898 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In other words, if a law "is constitutional in *some* of its applications," a facial challenge must fail. *Id*. (emphasis added).

3

### B.     *Rahimi* Supports Defendants' Motion for Summary Judgment

*Rahimi* strongly supports granting Defendants' motion for summary judgment in this case. First, with respect to *Bruen*'s first step—the "plain text" inquiry (Def. SJ Mot. at 11)[2]—the Court acknowledged that, "[a]t the founding, . . . [s]ome jurisdictions banned the carrying of 'dangerous and unusual weapons.'" *Id.* at 1897 (quoting *Heller*, 554 U.S. at 627); *see also id.* at 1923 (Kavanaugh, J., concurring) (reiterating *Heller*'s recognition that "the Second Amendment attaches only to weapons 'in common use' because 'that limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons'").[3] *Rahimi* further confirmed that self-defense, and not simply any lawful purpose, is the purpose protected by the Second Amendment. *See id.* at 1897 (noting that "the [Second Amendment] right secures for Americans a means of self-defense"). The Court's observations are consistent with Defendants' arguments that assault weapons and LCMs are "dangerous and unusual," not commonly used for self-defense, and thus beyond the scope of the Second Amendment. (*See* Def. SJ Mot. at 18–22.) Plaintiffs made no effort to rebut the overwhelming evidence Defendants adduced in support of their argument that assault weapons and LCMs are beyond the scope of the Second Amendment, and the Court should therefore grant summary judgment in Defendants' favor at *Bruen*'s first step. (*See id.*)[4]

---

[2] References to "Def. SJ Mot.," "Pl. SJ Opp.," "Def. SJ Opp.," and "Def. SJ Reply" are to Defendants' motion for summary judgment (CM/ECF Dkt. No. 78), Plaintiffs' opposition (CM/ECF Dkt. No. 81), Defendants' opposition (CM/ECF Dkt. No. 82), and Defendants' reply (CM/ECF Dkt. No. 83), respectively.

[3] The Court in *Rahimi* also used the "dangerous *or* unusual" language. *Id.* at 1901 (quoting 4 W. Blackstone, *Commentaries on the Laws of England* 149 (10th ed. 1787)). (*See* Def. SJ Mot. at 18 n.16).

[4] The majority opinion in *Rahimi* did not conduct a threshold, plain-text analysis because it was not a disputed issue in that case. *See Rahimi*, 144 S. Ct. at 1907 (Gorsuch, J., concurring) (noting that no party questioned whether the challenged law "addresse[d] individual conduct covered by the text of the Second Amendment"). Nevertheless, the government bears the burden

If the Court reaches *Bruen*'s second step—the historical inquiry (*see* Def. SJ Mot. at 22)—there, too, *Rahimi* supports Defendants' motion for summary judgment. *Rahimi*'s focus on "principles" and "analogues" rather than "historical twin[s]" aligns with Defendants' analysis of the historical record. (*See id.* at 23–39.) That record, as Defendants have explained, is uncontroverted, and it demonstrates that the Ordinances are fully consistent with a long historical tradition, dating back to the Founding era, of restricting certain especially dangerous weapons, weapon features, and accessories, so long as other weapons and accessories are available for self-defense. (*See id.*) Plaintiffs, for their part, presented no evidence regarding the history of firearm regulation, failed to depose any of Defendants' ten expert witnesses, and entirely failed to rebut the overwhelming record evidence adduced by Defendants. (*See* Def. SJ Opp. at 20.)

*Rahimi* also refutes Plaintiffs' contention (*see, e.g.*, Pl. SJ Opp. 13–23) that laws restricting the carrying of particularly dangerous weapons cannot serve as analogues for laws restricting possession. It is wrong as a matter of record evidence and, even more so after *Rahimi*, wrong in its understanding of the Second Amendment. As discussed, *see supra* Point A, *Rahimi* instructs courts and litigants to focus on the principles underpinning our nation's tradition of weapons laws—and not to take a myopic approach that asks whether such laws specifically restrict possession, manufacture, sale, or carry. Indeed, in *Rahimi*, the Court credited "going armed" laws that prohibited the carrying of "dangerous or unusual weapons" in upholding the challenged federal law's ban on the *possession* of firearms. *See* 144 S. Ct. at 1901.[5]

---

of justifying a law based on historical tradition only "*where* that 'text covers an individual's conduct,'" *id.* (quoting *Bruen*, 597 U.S. at 17) (emphasis added); *see id.* at 1928 (Jackson, J., concurring) (explaining that courts must, "*first*, determine whether 'the Second Amendment's plain text covers an individual's conduct'" (quoting *Bruen*, 597 U.S. at 24) (emphasis added)).

[5] In addition, despite Plaintiffs' prior suggestions to the contrary (*see* Pl. SJ Opp. at 15–17), *Rahimi* confirmed that particular historical laws can be salient precursors for one modern law even if they are not for another. *See* 144 S. Ct. at 1902 (concluding that surety laws were

5

*Rahimi* likewise rebuffs Plaintiffs' argument that local and territorial laws "are not useful in analyzing the historical tradition" (Pl. SJ Opp. at 17 n.7), as the Court relied on surety laws from three territories and the District of Columbia. *See* 144 S. Ct. at 1900 (citing *Bruen*, 597 U.S. at 56 & n.23, which included an 1838 Wisconsin territorial law, 1851 Minnesota territorial law, 1854 Oregon territorial law, and 1857 District of Columbia law). And it rejects Plaintiffs' puzzling assertion that only firearm-specific laws can serve as proper historical analogues in this case. *See id.* at 1899–1901 (relying on non-firearm laws as part of the "regulatory tradition" upholding the challenged federal gun law); (Def. SJ Reply at 20 n.14).

In sum, on all relevant fronts, *Rahimi* provides further support for Defendants' position.[6] Summary judgment for Defendants thus remains fully warranted.

**C.   Other Recent Decisions in Cases Involving Assault Weapons and LCMs Support Defendants' Motion for Summary Judgment**

Defendants previously noted several decisions from other jurisdictions where courts upheld restrictions on assault weapons and LCMs similar to the Ordinances. (*See, e.g.*, Def. SJ Mot. at 2 n.2; Def. SJ Opp. at 1, 8–9, 16–17.) That trend has continued. Since the parties completed their summary judgment briefing in December 2023, a number of other federal trial and appellate courts have issued rulings supporting Defendants' position on this motion. The Supreme Court also has twice in the past three months denied petitions for certiorari in challenges to assault weapon and/or LCM laws, even while it issued grant, vacate, and remand ("GVR") orders in light of *Rahimi* for nearly all other pending Second Amendment petitions.

---

proper analogues for the federal possession restriction even though *Bruen* had found them disanalogous to New York's licensing regime).

[6] *See United States v. Herriott*, No. 2:23-cr-00037, 2024 WL 3103275, at *2 n.1 (N.D. Ind. June 24, 2024) ("If anything, *Rahimi* can be seen as a softening of the approach to the Second Amendment taken in *Bruen*.").

6

*1. Recent Decisions From Federal District Courts and Courts of Appeals*

In the eight months since summary judgment briefing closed, nine federal courts have addressed Second Amendment challenges to assault weapon or LCM laws. All but one—including all three federal courts of appeals to consider the issue—rejected these challenges.

Most recently, on August 6, 2024, the en banc Fourth Circuit, in a 10-5 vote, upheld Maryland's assault weapon law against a Second Amendment challenge. *Bianchi v. Brown*, --- F.4th ----, 2024 WL 3666180 (4th Cir. Aug. 6, 2024) (en banc). Relying on largely the same arguments and authorities as Defendants here, the court, in a nine-judge majority opinion, held that the Maryland law is constitutional at both the text and history steps of the *Bruen* analysis.[7] At the text step, the court found that "[t]he assault weapons at issue fall outside the ambit of protection offered by the Second Amendment because, in essence, they are military-style weapons designed for sustained combat operations that are ill-suited and disproportionate to the need for self-defense." *Id.* at *1. The court also determined that the challenged law "fits comfortably within our nation's tradition of firearms regulation" as "another example of a state regulating excessively dangerous weapons once their incompatibility with a lawful and safe society becomes apparent, while nonetheless preserving avenues for armed self-defense." *Id.*[8] This same reasoning supports the constitutionality of the Ordinances.

Two other federal appellate courts have recently rejected similar challenges. In *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 52 (1st Cir. 2024), the First Circuit affirmed the denial of a preliminary injunction against Rhode Island's LCM law, holding that the law "is

---

[7] One judge concurred in the judgment, relying only on history. *See id.* at *29 (Gregory, J., concurring in the judgment).

[8] In addition, the Fourth Circuit noted that because plaintiffs "failed to show that each firearm regulated by the Maryland statute is within the ambit of the Second Amendment," their facial challenge could not succeed. *Id.* at *11 (citing *Rahimi*, 144 S. Ct. at 1898).

7

likely both consistent with our relevant tradition of gun regulation and permissible under the Second Amendment."[9]  The Third Circuit also affirmed the denial of a preliminary injunction against Delaware's assault weapons and LCM laws, though it did not reach the merits of the Second Amendment issue.  *See Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.* (*DSSA*), 108 F.4th 194, 206 (3d Cir. 2024).[10]  In a separate concurrence, Judge Roth explained that plaintiffs' case additionally failed under both the text and history steps of the Second Amendment inquiry.  *Id.* at 217 (Roth, J., concurring).

At the district-court level, there have been six decisions since last December addressing Second Amendment challenges to assault weapon and/or LCM laws.  In five of these decisions, courts rejected these challenges and upheld the laws in their entirety, for reasons similar to those offered by Defendants in this case.  *See Vt. Fed'n of Sportsmen's Clubs v. Birmingham* (*VFSC*), No. 2:23-cv-710, 2024 WL 3466482 (D. Vt. July 18, 2024) (denying plaintiffs' motion for preliminary injunction in Second Amendment challenge to Vermont's LCM law, on text and history grounds); *Rupp v. Bonta*, No. 8:17-cv-00746, 2024 WL 1142061 (C.D. Cal. Mar. 15, 2024) (granting government's motion for summary judgment, and denying plaintiffs' motion, in Second Amendment challenge to California's assault weapon law, on text and history grounds); *Viramontes v. Cnty. of Cook*, No. 1:21-cv-04595, 2024 WL 897455 (N.D. Ill. Mar. 1, 2024) (same, in challenge to local assault weapon law); *Goldman v. City of Highland Park*, No. 1:22-cv-04774, 2024 WL 98429 (N.D. Ill. Jan. 9, 2024) (denying plaintiffs' motion for preliminary

---

[9] Defendants cited the *Ocean State* district court opinion in their summary judgment papers.  (*See* Def. SJ Mot. at 2, 13, 15, 21–22; Def. SJ Opp. at 7, 16–17; Def. SJ Reply at 4, 10.)  The plaintiffs in *Ocean State* filed a petition for certiorari earlier this month.  *See* No. 24-131 (U.S. Aug. 2, 2024).

[10] Defendants cited the *DSSA* district court opinion their summary judgment papers.  (*See* Def. SJ Mot. at 2, 24, 28, 31–32, 35, 37–38; Def. SJ Opp. at 7–8; Def. SJ Reply at 3–4, 20–24.)

8

injunction in Second Amendment challenge to local assault weapon and LCM laws, on text and history grounds)[11]; *Capen v. Campbell*, No. 22-cv-11431, 2023 WL 8851005 (D. Mass. Dec. 21, 2023) (denying plaintiffs' motion for preliminary injunction in Second Amendment challenge to Massachusetts's assault weapon and LCM laws, on history grounds).[12] The one exception is a New Jersey district court decision that recently held a part of that state's assault weapon law (*i.e.*, a single provision specifically prohibiting the "Colt AR-15") unconstitutional while, at the same time, upholding its LCM law under the Second Amendment. *See Ass'n of N.J. Rifle & Pistol Clubs v. Platkin*, No. 3:18-cv-10507, 2024 WL 3585580 (D.N.J. July 30, 2024). This outlier ruling is not consistent with the overwhelming consensus of authority. Both sides have appealed. *See* Nos. 24-2415, 24-2450 (3d Cir.).[13]

    2. *Supreme Court Denials of Certiorari*

On two occasions since summary judgment briefing closed, the Supreme Court has denied petitions for certiorari in Second Amendment challenges to assault weapon and/or LCM laws. On May 20, 2024, the Court denied plaintiffs' petition for certiorari before judgment in *Bianchi*. *See Bianchi v. Brown*, --- S. Ct. ----, 2024 WL 2262406, at *1 (May 20, 2024). And, more recently, on July 2, 2024, the Court denied plaintiffs' petition for certiorari from the

---

[11] The district court in *Goldman* also dismissed the National Association for Gun Rights ("NAGR") as a plaintiff for lack of standing. *Id.* at *5; (*see* Def. SJ Opp. at 22-23).

[12] On August 12, 2024, the National Foundation for Gun Rights ("NFGR"), an entity affiliated with Plaintiffs Rocky Mountain Gun Owners ("RMGO") and NAGR, voluntarily dismissed with prejudice its challenge to Colorado's LCM law. *Gates v. Polis*, No. 1:22-cv-1866 (D. Colo.) (ECF Nos. 119, 120). In a press release that same day, posted on NAGR's website, Dudley Brown, President of NFGR, RMGO, and NAGR, conceded that the absence of expert evidence supporting the plaintiffs' "common use" argument "kills our case." *See* Press Release, National Association for Gun Rights, NSSF Refuses to Defend Study, Killing Colorado Magazine Ban Lawsuit (Aug. 12, 2024), https://perma.cc/9BJN-DJ9W. Plaintiffs' claims in this case are similarly bereft of evidence.

[13] Appeals are also pending in *VFSC*, No. 24-206 (2d Cir.); *Rupp*, No. 24-2583 (9th Cir.); *Viramontes*, No. 24-1437 (7th Cir.); and *Capen*, No. 24-1061 (1st Cir.).

9

Seventh Circuit's decision in *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023), which upheld state and local laws in Illinois prohibiting assault weapons and LCMs.  *See Harrel v. Raoul*, 144 S. Ct. 2491 (2024).

The Court's denial of certiorari in *Harrel* is particularly notable.  Shortly after it decided *Rahimi*, the Court issued GVR orders in essentially all pending Second Amendment challenges, involving all manner of gun laws at all stages of litigation, sending these cases back to the lower courts for further consideration "in light of *United States v. Rahimi*."  *E.g.*, *Vincent v. Garland*, --- S. Ct. ----, 2024 WL 3259668, at *1 (July 2, 2024); *Antonyuk v. James*, --- S. Ct. ----, 2024 WL 3259671, at *1 (July 2, 2024).  But the Court did not issue a GVR order in *Harrel*, instead denying certiorari and leaving the Seventh Circuit's holding and analysis in *Bevis* undisturbed. As Defendants have explained, *Bevis* strongly supports their position on this motion.  (*See* Def. SJ Opp. at 1, 8, 11, 16; Def. SJ Reply at 8, 22.)

Accordingly, Defendants respectfully submit that the Court should grant their motion for summary judgment and deny Plaintiffs' motion for summary judgment.

Dated: August 16, 2024

Respectfully submitted,

By:   s/ Gordon L. Vaughan_____
Gordon L. Vaughan
VAUGHAN & DEMURO
111 South Tejon Street
Suite 545
Colorado Springs, CO 80903
(719) 578-5500
gvaughan@vaughandemuro.com
*Counsel for Town of Superior and City of Louisville*

Antonio J. Perez-Marques
James H.R. Windels
Christopher P. Lynch
David B. Toscano
Hendrik van Hemmen
James C. Butler
Jennifer Kim
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4515
antonio.perez@davispolk.com
james.windels@davispolk.com
christopher.lynch@davispolk.com
david.toscano@davispolk.com
hendrik.vanhemmen@davispolk.com
james.butler@davispolk.com
jennifer.kim@davispolk.com
*Counsel for All Defendants*

Carey R. Dunne
Kevin Trowel
Martha Reiser
FREE AND FAIR LITIGATION GROUP
266 W. 37th Street, 20th Floor
New York, NY 10018
(917) 499-2279
carey@freeandfairlitigation.org
kevin@freeandfairlitigation.org
martha@freeandfairlitigation.org
*Counsel for All Defendants*

11

William Taylor
EVERYTOWN LAW
450 Lexington Avenue, P.O. Box 4184
New York, NY 10163
(646) 324-8215
wtaylor@everytown.org
*Counsel for All Defendants*

Luis A. Toro
Teresa T. Tate
BOULDER CITY ATTORNEY'S OFFICE
P.O. Box 791
1777 Broadway
Boulder, CO 80306
(303) 441-3020
torol@bouldercolorado.gov
tatet@bouldercolorado.gov
*Counsel for the City of Boulder*

David Evan Hughes
Catherine R. Ruhland
BOULDER COUNTY ATTORNEY'S OFFICE
P.O. Box 471
Boulder, CO 80306
(303) 441-3190
dhughes@bouldercounty.org
truhland@bouldercounty.org
*Counsel for the Board of County Commissioners of Boulder County*

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the parties of record.

s/ Gordon L. Vaughan
Gordon L. Vaughan