IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-02680-NYW-JPO

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
GORDON MADONNA,
JAMES MICHAEL JONES, and
MARTIN CARTER KEHOE,[1]

    Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE, COLORADO,
CITY OF BOULDER, COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion"), [Doc. 76],[2] and Defendants' Motion for Summary Judgment ("Defendants' Motion," and together with Plaintiffs' Motion, the "Cross-Motions"), [Doc. 78], both filed October 20, 2023; and Plaintiffs' Motion for Additional Discovery, [Doc. 92],

---

[1] While Plaintiffs continue to identify Craig Wright ("Mr. Wright") as a plaintiff in the case caption, the Parties stipulated to dismiss Mr. Wright from this action prior to the filing of the cross-Motions for Summary Judgment. [Doc. 71].

[2] When referring to documents filed in this action, this Court uses the convention [Doc. __], referring to the docket and page number assigned by the Court's Electronic Court Files ("ECF") System. When referring to documents filed in another matter, this court uses the convention [ECF No. __], still referring to the docket and page number assigned by the ECF System.

filed August 16, 2024 (together, the "Motions"). The Court has reviewed the Motions and related briefing and concludes that oral argument would not materially assist in the resolution of the Motions. For the reasons set forth in this Order, Plaintiffs' Motion is **DENIED without prejudice**, Defendants' Motion is **DENIED without prejudice**, and Plaintiffs' Motion for Additional Discovery is **DENIED without prejudice**.

## BACKGROUND

Plaintiffs Rocky Mountain Gun Owners ("RMGO"), National Association for Gun Rights ("NARG"), Charles Bradley Walker ("Plaintiff Walker" or "Mr. Walker"), Bryan LaFonte ("Plaintiff LaFonte" or "Mr. LaFonte"), Gordon Madonna ("Plaintiff Madonna" or "Mr. Madonna"), James Michael Jones ("Plaintiff Jones" or "Mr. Jones"), and Martin Carter Kehoe ("Plaintiff Kehoe" or "Mr. Kehoe") (collectively, "Plaintiffs," and excluding RMGO and NARG, the "Individual Plaintiffs") filed this suit to challenge the constitutionality of various county and municipal ordinances enacted by Defendants the Town of Superior, City of Louisville, City of Boulder, and Board of County Commissioners of Boulder County ("Defendants"), which ban "assault weapons" and "large capacity magazines" ("LCMs").[3] Plaintiffs assert a single claim under the Second and Fourteenth Amendments of the United States Constitution.[4]  *See* [Doc. 1 at 15].

---

[3] While Plaintiffs take issue with the terminology of "large-capacity magazine," [Doc. 1 at ¶ 18], this Court uses the terminology used in the Ordinances at issue. "Assault weapon" and "LCMs" are defined uniformly throughout the Ordinances; for example, LCMs are defined as "any ammunition feeding device with the capacity to accept more than ten (10) rounds," with three limited exceptions not relevant to the instant Motions. *See, e.g.*, [Doc. 20-1 at 9].

[4] "[T]he Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). The right is codified in the Second Amendment and made applicable to the states and municipalities through the Fourteenth Amendment. *Id.* at 34.

2

***The Ordinances.***  The Ordinances at issue include Town of Superior, Colorado, Code Ch. 10, art. IX (the "Superior Ordinance"), [Doc. 96-1];[5] City of Boulder, Colorado, Rev. Code Title 5, Ch. 8 (the "Boulder Ordinance"), [Doc. 96-2]; City of Louisville, Colorado, Code Title 9, Ch. VIII (the "Louisville Ordinance," and together with the Superior and Boulder Ordinances, the "Municipal Ordinances"), [Doc. 96-3]; and Boulder County, Colorado, Ord. No. 2022-5 (the "Boulder County Ordinance," and collectively with the Municipal Ordinances, "the Ordinances"), [Doc. 96-4].  Boulder County is one of 64 counties in the State of Colorado.

The Town of Superior and the cities of Louisville and Boulder are incorporated municipalities within Boulder County ("collectively, "Municipalities"), and the Municipal Ordinances each apply within the boundaries of the respective incorporated municipalities, whereas the Boulder County Ordinance applies to "unincorporated Boulder County."  [Doc. 1 at ¶¶ 19, 23, 27, 30].  The Municipal Ordinances share a similar structure and provide, in relevant part, that "[n]o person shall knowingly possess or sell or otherwise transfer an illegal weapon," and "illegal weapon" is defined to include "an assault weapon [or] large-capacity magazine."  [Doc. 96-1 at 8, 10; Doc. 96-2 at 13–14; Doc. 96-3 at 6, 9].  The Boulder County Ordinance provides, in relevant part, that "[n]o person . . . in unincorporated Boulder County may manufacture, import, purchase, sell or transfer any assault weapon [or] large capacity magazine."  [Doc. 96-4 at 6].  Plaintiffs concede that the Boulder County Ordinance does not necessarily prohibit the possession of assault weapons or LCMs.  [*Id.*; Doc. 1 at ¶¶ 27–29].

---

[5] For ease of use, the Court attaches and refers to the clean versions of all of the Ordinances because the ECF markings and pagination on the versions filed by Plaintiffs and Defendants are often obscured.  *See* [Doc. 76-2; Doc. 76-4; Doc. 78-1; Doc. 78-2; Doc. 78-3].

3

All four Ordinances define the term "assault weapon" to include semi-automatic center-fire rifles, pistols, and shotguns with certain characteristics. *See* [Doc. 96-1 at 6–7; Doc. 96-2 at 12–13; Doc. 96-3 at 5–6; Doc. 96-4 at 4–6]. These definitions have various exceptions. The Ordinances do not prohibit or restrict firearms that are not semi-automatic, nor do the Ordinances prohibit or restrict semi-automatic firearms lacking certain features (e.g., pistol grips, flash suppressors, barrel shrouds). [Doc. 96-1 at 6–7; Doc. 96-2 at 12–13; Doc. 96-3 at 5–6; Doc. 96-4 at 4–6]. The Ordinances consistently define the term "large-capacity magazines" to encompass "ammunition feeding device[s] with the capacity to accept more than 10 rounds." [Doc. 96-1 at 8; Doc. 96-2 at 13; Doc. 96-3 at 6; Doc. 96-4 at 6]. The Ordinances do not prohibit or restrict any magazines with a maximum capacity of 10 rounds or less. [Doc. 96-1 at 8; Doc. 96-2 at 13; Doc. 96-3 at 6; Doc. 96-4 at 6].

***The Plaintiffs.*** Each of the Individual Plaintiffs challenges the Ordinance governing the municipality or unincorporated Boulder County in which he resides: Plaintiffs Walker and Jones and reside in Superior and Boulder, respectively. [Doc. 76-12 at ¶ 3; Doc. 76-7 at ¶ 3]. Plaintiffs LaFonte and Madonna reside in Louisville. [Doc. 76-9 at ¶ 3; Doc. 76-10 at ¶ 3]. Plaintiff Kehoe resides in unincorporated Boulder County. [Doc. 76-8 at ¶ 3]. Plaintiffs RMGO and NAGR are nonprofit membership- and donor-supported organizations that "seek to defend the right of all law-abiding individuals to keep and bear arms." [Doc. 76-6 at ¶ 3]. The Individual Plaintiffs all are members of at least one of the organizations. [Doc. 76-7 at ¶ 2; Doc. 76-8 at ¶ 2; Doc. 76-9 at ¶ 2; Doc. 76-10 at ¶ 2; Doc. 76-12 at ¶ 2].

4

***Procedural History.***  Plaintiffs initiated this action on October 12, 2022.  [Doc. 1]. On November 3, 2022, and pursuant to the Parties' stipulation, the Court entered an Order approving a stay of enforcement of the Ordinances during the pendency of this litigation, insofar as they prohibit the possession, sale, or transfer of assault weapons and LCMs. [Doc. 38].  Pursuant to the Scheduling Order entered on January 19, 2023, discovery in this case closed on July 28, 2023.  [Doc. 49 at 10–11].

The Parties subsequently filed motions under Rule 56 of the Federal Rules of Civil Procedure, which are fully briefed.  *See* [Doc. 76; Doc. 82; Doc. 84]; *see also* [Doc. 78; Doc. 81; Doc. 83].[6]  Both sides move for summary judgment in their favor on Plaintiffs' claim brought pursuant to the Second and Fourteenth Amendments.  [Doc. 76; Doc. 78]. Defendants challenge Plaintiffs' claim on the merits, asserting that they are entitled to summary judgment because Plaintiffs' claim for a violation of the Second and Fourteenth Amendments fails as a matter of law.  *See generally* [Doc. 78].  Plaintiffs move for summary judgment as to their standing to bring their claim, [Doc. 76 at 15–26], and on the merits, [*id.* at 26–45].  With respect to standing, Plaintiffs request that the Court find that "there is no genuine dispute concerning the material facts supporting Plaintiffs' standing, and those facts are sufficient to establish their standing to bring their constitutional challenge to the Ordinances."  [*Id.* at 26].  Because it respectfully disagrees,

---

[6] On August 16, 2024, and with leave of Court, both Parties filed supplemental statements of authority regarding the issues briefed in their respective Motions for Summary Judgment.  [Doc. 91; Doc. 93].  That same day, Plaintiffs also filed the instant Motion for Additional Discovery.  [Doc. 92].  Defendants responded to the Motion for Additional Discovery on August 23, 2024.  [Doc. 95].  The supplemental authority does not pertain to the issue of standing.

5

this Court's analysis focuses on the issue of standing and does not reach the substantive constitutional question presented by the Parties at this time.

## LEGAL STANDARDS

### I. Standing

Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). A court may not simply presume jurisdiction to reach the substantive issues before it. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016). Rather, a federal court must resolve jurisdictional issues before reaching the merits. *United States v. Springer*, 875 F.3d 968, 973 (10th Cir. 2017).

The doctrine of standing serves as "[o]ne of those landmarks" in identifying "the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014) (standing is jurisdictional). Under Article III, standing requires three elements: injury in fact, causation, and redressability. *Colo. Outfitters*, 823 F.3d at 544. These three elements of standing are "an indispensable part of the plaintiff's case,"

and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561 (quotation omitted). At the summary judgment stage, a plaintiff's standing must be supported by specific evidentiary facts and not by mere allegations. *Id.*

## II.     Rule 56 of the Federal Rules of Civil Procedure

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted). When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views each Motion in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

"[T]he proof required to establish standing increases as the suit proceeds." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1162 (10th Cir. 2023) (quotation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, while on summary judgment, the plaintiff must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id.* (cleaned up).

## ANALYSIS

### I. Individual Plaintiffs

With respect to all four Ordinances, Plaintiffs assert that they have standing to challenge them because the Ordinances make it illegal to acquire or transfer assault weapons or LCMs within the Municipalities and unincorporated Boulder County, each of them owns and wishes to acquire and transfer assault weapons and LCMs in the future, and a prohibition on assault weapons and LCMs that are protected by the Second Amendment causes an injury in fact. [Doc. 76 at 18–19]. In their Response, Defendants argue that Plaintiffs lack standing because each Individual Plaintiff has failed to proffer sufficient factual evidence that he currently possesses firearms falling within the Ordinances or has definite plans to engage in Ordinance-violating conduct in the future.[7] [Doc. 82 at 25–27]. Specifically, Defendants challenge the sufficiency of Plaintiffs' Declarations on the basis that they do not state facts, arguing that Plaintiffs have not "specified model numbers, brand names, features or specifications, or purchase dates regarding firearms and LCMs that they allegedly own," and only express a "vague "desire" to acquire more firearms and LCMs, or transfer them to others, at some undefined point in the future. [*Id.* at 26]. The Municipalities and unincorporated Boulder County further argue that RMGO and NAGR cannot establish organizational standing because they have not established that any of their members are permitted to sue in his or her own right. [*Id.* at 27].

In reply, Plaintiffs contend that because the Ordinances are criminal statutes, the Individual Plaintiffs are capable of determining, should be permitted to determine, whether

---

[7] Defendants did not raise lack of standing as a basis for their affirmative Motion for Summary Judgment. [Doc. 78].

8

their firearms and magazines fall within the bans; otherwise, due process concerns would abound. [Doc. 84 at 13].

### A. Injury in Fact

The injury in fact element requires that a plaintiff "offer something more than the hypothetical possibility of injury. The alleged injury must be concrete, particularized, and actual or imminent." *Colo. Outfitters*, 823 F.3d at 544. "[I]mminence is . . . a somewhat elastic concept, [but] it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted).

In *Colorado Outfitters,* the plaintiffs brought a Second Amendment pre-enforcement challenge to a Colorado criminal statute. 823 F.3d at 542, 545 & n.7. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") observed that to satisfy the requirements of standing, "a plaintiff must typically demonstrate (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the challenged statute, and (2) that there exists a credible threat of prosecution thereunder." *Id.* at 545 (cleaned up). Most recently, in *DeWilde v. Attorney General of United States*, the Tenth Circuit again considered whether a plaintiff sufficiently demonstrated standing to bring a pre-enforcement challenge to a firearm regulation based on the Second Amendment. *See* No. 23-8054, 2024 WL 1550708, at *1–2 (10th Cir. Apr. 10, 2024). Though not entirely clear, to the extent that Plaintiffs suggest that a different or more relaxed standard for standing applies in this action based on *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022), [Doc. 76 at 21–22], this Court respectfully

disagrees.  The *DeWilde* court did not deviate from, but rather followed, the test set out in *Colorado Outfitters*.  *See DeWilde*, 2024 WL 1550708, at *2.  This Court follows suit.

### 2. Application

The Court now turns to whether Plaintiffs have presented sufficient evidence to establish that their conduct or contemplated conduct is proscribed by the Ordinances. The Ordinances at issue in this case criminalize, inter alia, the sale or transfer of assault weapons and LCMs as defined under the Ordinances.  The Municipal Ordinances also criminalize the possession of assault weapons and LCMs.

***Existing Conduct.***  The Court first considers whether Plaintiffs are currently engaged in conduct proscribed by the Ordinances.  In support of their argument with respect to standing, Plaintiffs submit Declarations of the following Individual Plaintiffs: (1) Mr. Jones, [Doc. 76-7]; (2) Mr. Kehoe, [Doc. 76-8]; (3) Mr. LaFonte, [Doc. 76-9]; (4) Mr. Madonna, [Doc. 76-10]; and (5) Mr. Walker, [Doc. 76-12].

Each Individual Plaintiff declares, in substantially the same language:

I currently own and possess within the Municipality a number of firearms and firearm magazines which I possess and use for a variety of lawful purposes, including target shooting and self-defense.

I currently own and possess within the Municipality firearms that are considered AW Firearms under the Ordinance.  I desire to continue to own and possess these AW Firearms within the Municipality and my home in particular.  I also desire to be able to freely transfer these AW Firearms to others, including members of my family.

I own and possess within the Municipality a number of LCMs.

I have acquired AW Firearms in the past.  I would like to continue to be able to do so in the future and own and possess such AW Firearms in the Municipality.

I have acquired LCMs in the past.  I would like to continue to be able to do so in the future and own and possess such LCMs in the Municipality.

[Doc. 76-7 at ¶¶ 7–8, 10–12; Doc. 76-8 at ¶¶ 7–11; Doc. 76-9 at ¶¶ 7–8, 10–12; Doc. 76-10 at ¶¶ 7–8, 10–12; Doc. 76-12 at ¶¶ 7–8, 10–12]. Each Individual Plaintiff defines the terms "AW Firearms" and "LCM" as used in each of their Declarations to have the same meaning as the terms are used in the respective Ordinances, with no other specifications. [Doc. 76-7 at ¶¶ 5–6; Doc. 76-8 at ¶¶ 5–6; Doc. 76-9 at ¶¶ 5–6; Doc. 76-10 at ¶¶ 5–6; Doc. 76-12 at ¶¶ 5–6].

While Plaintiffs insist that they have satisfied the requirements for injury in fact because "a person of ordinary intelligence can know whether . . . he owns an AR-15 (a weapon banned by name) or a magazine with a capacity greater than ten rounds," [Doc. 84 at 13], the operative question is not whether *Plaintiffs* are capable of determining whether their respective firearms and magazines fall within the categories of arms proscribed by the Ordinances. Rather, the *Court* must be able to discern, based on factual evidence in the record at the summary judgment stage, that Plaintiffs have established an injury in fact as a matter of law. In this respect, Plaintiffs' conclusory assertions are insufficient. None of the Declarations includes any specific <u>factual</u> averments to allow the Court to satisfy itself that the Individual Plaintiffs are currently engaged in a course of conduct that is proscribed by the Ordinances.

For instance, there are no factual allegations regarding what types of firearms and/or magazines each of the Individual Plaintiffs possesses; or what features the firearms and/or magazines have; or how long the Individual Plaintiffs have possessed them; or when each of the Individual Plaintiffs came into possession of them. *See generally* [Doc. 76-7; Doc. 76-8; Doc. 76-9; Doc. 76-10; Doc. 76-12]. With respect to Mr. Kehoe, his mere possession of "assault weapons" and "LCMs" as defined by the Boulder

County Ordinance would not necessarily establish that he is currently engaged in a course of conduct that is proscribed by it, as it does not criminalize the possession of assault weapons or LCMs possessed prior to August 2, 2022.  *Compare* [Doc. 76-8 at ¶¶ 7–8] *with* [Doc. 96-4 at 6–7]; *see also Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) (observing that "[e]ach plaintiff must have standing to seek each form of relief in each claim").

And to the extent that each Individual Plaintiff declares and seeks to rely on the factual averment that "[m]any firearms, even those not considered [assault weapon] [f]irearms under the Ordinances, come standard with an LCM," [Doc. 76 at 8 ¶ 38, 20; Doc. 76-7 at ¶ 13; Doc. 76-8 at ¶ 12; Doc. 76-9 at ¶ 13; Doc. 76-10 at ¶ 13; Doc. 76-12 at ¶ 13], to suggest that the Individual Plaintiffs necessarily possess proscribed LCMs, this statement alone provides the Court no facts as to whether they still possess LCMs associated with those firearms.  This alleged fact is also disputed by Defendants, citing an expert report that is provided under penalty of perjury, [Doc. 82 at 34–35 ¶ 38 (citing [Doc. 78-16 at 45–46 ¶ 128])], creating a genuine issue of material fact precluding summary judgment, *see Fabian v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-03031-WJM-SKC, 2023 WL 5179113, at *4 (D. Colo. Aug. 11, 2023) (holding that even an unsworn expert report can create a genuine issue of material fact at the summary judgment stage). And consistent with the well-understood principles of summary judgment, this Court must resolve all evidence, and reasonable inferences derived from the evidence presented, in favor of Defendants as the non-moving party at this stage.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Indeed, in Second Amendment cases where courts have found standing, plaintiffs have provided more factual evidence.  *See, e.g.*, *Rocky Mountain Gun Owners v. Polis*, 685 F. Supp. 3d 1033, 1046 n.8 (D. Colo. 2023) (finding that the plaintiffs' declarations that they were under 21, when challenging a Colorado law that criminalized the purchase of firearms by anyone under the age of 21, were sufficient for demonstrating that their proposed course of conduct was proscribed by the statute); *Lane v. Rocah*, No. 7:22-cv-10989-KMK, 2024 WL 54237, at *9 (S.D.N.Y. Jan. 4, 2024) ("[T]he weapons Plaintiffs seek to purchase are 'squarely proscribed' by the Assault Weapons Ban.  The statute defines 'assault weapons' as, among other things, semiautomatic rifles, with detachable magazines and certain military-style features, including 'a flash suppressor, muzzle break, or muzzle compressor.'  And the Complaint contains allegations that Plaintiffs would like to acquire rifle models with those exact characteristics." (alterations and citations omitted)); *Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 774 n.3 (D. Md. 2014) ("Exercising its independent duty to ensure that jurisdiction is proper, the court is satisfied that individual plaintiffs Kolbe and Turner face a credible threat of prosecution under the Firearm Safety Act.  Kolbe currently owns a semi-automatic handgun that comes with detachable magazines holding more than ten rounds. . . .  Turner currently owns three long guns classified as assault weapons, all of which come with detachable magazines holding in excess of ten rounds." (citations omitted)).

***Future Conduct.***  Similarly, the Individual Plaintiffs' statements regarding future conduct fail to establish, as a matter of law, plans that would violate the Ordinances.  Each Plaintiff declares that he has acquired assault weapons and LCMs in the past, and he "would like to continue to be able to do so in the future."  [Doc. 76-7 at ¶¶ 11–12; Doc.

76-8 at ¶¶ 10–11; Doc. 76-9 at ¶¶ 11–12; Doc. 76-10 at ¶¶ 11–12; Doc. 76-12 at ¶¶ 11–12]. But the vague possibility that an Individual Plaintiff would like to acquire more unidentified firearms and magazines "[p]roscribed by the Ordinances," [Doc. 76 at 23],[8] sometime in the undefined future, fails to demonstrate an imminent injury for purposes of mounting a pre-enforcement challenge to the Ordinances, *see DeWilde*, 2024 WL 1550708, at *3 (holding that a "vague desire" to engage in some potentially violative conduct was not enough to establish standing because "a plaintiff must describe concrete plans" (quoting *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 875 (10th Cir. 2020))). Indeed, there is no guarantee that the Ordinances will still be in effect as written at the time of any future purchase, *see, e.g.*, [Doc. 96-1 at 4 (discussing the sunset of the federal ban on the manufacture, transfer, and possession of assault weapons and the transfer and possession of LCMs in 2004)], or that any of the Individual Plaintiffs will reside in one of the Municipalities or unincorporated Boulder County at that time, *see* [Doc. 71 at ¶¶ 1–2 (stipulating to the dismissal of plaintiff who moved from Boulder County)], or that a particular Plaintiff will not be exempt from the applicable Ordinance at the time of possession or transfer.

Each Individual Plaintiff also states that he "desire[s] to be able to freely transfer these AW Firearms to others, including members of [his] family." [Doc. 76-7 at ¶ 8; Doc. 76-8 at ¶ 8; Doc. 76-9 at ¶ 8; Doc. 76-10 at ¶ 8; Doc. 76-12 at ¶ 8]. For the same reasons as set forth above, without specific facts about the time frame for such transfers; what specific firearms and/or LCMs each Individual Plaintiff wishes to transfer; and specific

---

[8] Indeed, Plaintiffs' failure to provide the Court specific facts about any future firearm and/or LCM purchase suffers from the same fatal flaws as discussed above with respect to their current possession.

traits of the individuals to whom Individual Plaintiffs seek to transfer firearms and/or LCMs, this Court has insufficient evidence to conclude, as a matter of law, whether such transfers may be proscribed by the Ordinances and not subject to any exemption. *See, e.g.*, [Doc. 96-1 at 10]. As observed by the Supreme Court in *Clapper*, a party may not "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." 568 U.S. at 416.[9]

Based on the record before it, this Court respectfully concludes that the Individual Plaintiffs have failed to adduce sufficient evidence to establish their respective standing, as a matter of law.

## II.    Organizational Standing

An organization may bring claims on behalf of its members so long as (a) its members would otherwise have standing to sue in their own right; (b) the interests the organization seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *N. N.M. Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*, 30 F.4th 1210, 1219 (10th Cir. 2022). Organizations may also have standing for injuries they directly sustain, "but organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 369 (2024).

---

[9] Defendants also cite *Clapper* for the proposition that the Individual Plaintiffs cannot manufacture standing by voluntarily refusing to avail themselves of certificates of ownership or possession from the Boulder County Sheriff's Office. [Doc. 82 at 26 n.8]. Presumably, the certificates of ownership and possession would only apply to Plaintiffs Jones, LaFonte, Madonna, and Walker due to the Municipal Ordinances. Plaintiffs do not address this argument in their Reply. *See generally* [Doc. 84]. The Court **DIRECTS** Plaintiffs to address this argument in response to the Order to Show Cause, *see infra*, in the context of not only injury in fact, but also traceability.

***Members' Standing in their Own Right.*** Plaintiffs have submitted the Declaration of Dudley Brown ("Mr. Brown"), President of RMGO and NAGR, in support of their assertion of associational standing. [Doc. 76-6]. While each of the Individual Plaintiffs is a member of at least one of the two organizations, [Doc. 76-7 at ¶ 2; Doc. 76-8 at ¶ 2; Doc. 76-9 at ¶ 2; Doc. 76-10 at ¶ 2; Doc. 76-12 at ¶ 2], RMGO and NAGR cannot base organizational standing on the Individual Plaintiffs because the Court has found their evidence insufficient. *Nat'l Ass'n for Gun Rights v. Polis*, No. 24-cv-00001-GPG-STV, 2024 WL 3085865, at *9 (D. Colo. May 2, 2024) (finding no organizational standing when members do not have standing in their own right). Nor are Mr. Brown's other statements sufficient. Mr. Brown's statements suffer from the same lack of factual basis. For example, Mr. Brown declares that he has

> communicated with RMGO and NAGR members who reside in the Defendant Municipalities who have informed me that (a) they currently own and possess within the municipality in which they reside firearms that are considered "assault weapons" under the Ordinances and they would like to continue to possess these firearms; (b) they have not obtained certificates of possession and do not intend to do so; and (c) they own and possess within the municipality in which they reside one or more "large capacity magazines" (as that term is used in the Ordinance[s]). All of these activities would be illegal if the Ordinances were effective.

[Doc. 76-6 at ¶ 6].  There is no identification of these "RMGO and NAGR members"[10] and where they live specifically;[11] the specific firearms and LCMs the respective members own or possess within the Municipalities; the features of such firearms and/or magazines; or how long the respective members have possessed such firearms and/or magazines. [*Id.*]; *see also Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."); *Speech First, Inc. v. Shrum*, 92 F.4th 947, 950 & n.1 (10th Cir. 2024) (observing that at the summary judgment stage, a district court may verify the existence and status of anonymous plaintiffs for purposes of standing).

And Mr. Brown's statement that "RMGO and NAGR represent the interests of those of their members whose Second Amendment rights have been infringed by the Ordinances challenged in this action," [Doc. 76-6 at ¶ 5], is also insufficient even if there is a statistical probability that some of their members are threatened with running afoul of the Ordinances, *see Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (rejecting "novel approach to the law of organizational standing," based on statistical probability that some of an organization's members were threatened with concrete injury, because it

---

[10] This Court is not suggesting that the failure to identify these members by name is fatal to establishing standing.  Under binding Tenth Circuit authority, "organizational standing is proper even when the qualifying member of the plaintiff organization is anonymous." *Speech First, Inc. v. Shrum*, 92 F.4th 947, 951 (10th Cir. 2024) (citing *Am. Humanist Ass'n, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 859 F.3d 1243, 1254 n.4 (10th Cir. 2017)). Here, RMGO and NAGR have not adequately described any individual members proceeding anonymously or by pseudonym who may have standing in their own right.

[11] As discussed above, the possession of an assault weapon or LCM in unincorporated Boulder County does not necessarily violate the Boulder County Ordinance. *See supra* p. 11.

"would make a mockery of [Supreme Court's] prior cases, which have required plaintiff-organizations to make *specific allegations* establishing that at least one identified member had suffered or would suffer harm" (emphasis added)).  Indeed, Mr. Brown's statement undermines any conclusion that all members of the organizations are affected by the challenged Ordinances—which, if true, might dispense of the requirement to identify specific, affected members.  See *id.* at 499.

**Direct Injury.**  Mr. Brown further declares that "RMGO and NAGR are nonprofit membership and donor-supported organizations that seek to defend the right of all law-abiding individuals to keep and bear arms."  [Doc. 76-6 at ¶ 3].  Neither RMGO nor NAGR provides any evidence that permits this Court to conclude that the Ordinances make it difficult or impossible for the organizations to fulfill any of their essential goals or purposes.  Thus, this Court concludes that RMGO and NAGR have failed to establish as a matter of law that either organization has suffered an injury in fact in its own right.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

Finally, it is also not enough for Mr. Brown to conclude that the organizations' members' activities would be illegal if the Ordinances were effective.  *See* [Doc. 76-6 at ¶ 6].  RMGO and NAGR must present this Court with sufficient factual evidence so as to allow the Court to independently draw such a conclusion as a matter of law.  *See Summers*, 555 U.S. at 499.

For these reasons, Plaintiffs' Motion for Summary Judgment is **DENIED** with respect to standing.

18

### III. Order to Show Cause

This Court has determined that Plaintiffs have failed to establish that they have standing to bring this action on the record before it.  However, Defendants did not move for summary judgment on the basis of standing.  *See generally* [Doc. 78].  After giving notice and a reasonable time to respond, a court may grant summary judgment for a nonmovant or on grounds not raised by a party.  Fed. R. Civ. P. 56(f)(1)–(2).  Accordingly, Plaintiffs are **ORDERED to SHOW CAUSE** as to why summary judgment should not enter in favor of Defendants and against Plaintiffs based on lack of subject matter jurisdiction by no later than **October 15, 2024**.  To the extent that Plaintiffs discharge the Order to Show Cause by that date, the Court will sua sponte reinstate the Cross-Motions and Plaintiffs' Motion for Discovery, [Doc. 76; Doc. 78; Doc. 92], and their related briefing, as appropriate and proceed expeditiously to their merits without any further briefing.

### CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1) Plaintiffs' Motion for Summary Judgment [Doc. 76] is **DENIED without prejudice**;

(2) Defendants' Motion for Summary Judgment [Doc. 78] is **DENIED without prejudice**;

(3) Plaintiffs' Motion for Additional Discovery [Doc. 92] is **DENIED without prejudice**; and

(4) Plaintiffs are **ORDERED to SHOW CAUSE** as to why summary judgment should not enter in favor of Defendants for lack of subject matter jurisdiction by no later than **October 15, 2024**.  Defendants may then **RESPOND** to

any filing by Plaintiffs by no later than **October 29, 2024**.  To the extent that Plaintiffs discharge the Order to Show Cause, Plaintiffs' Motion for Summary Judgment, [Doc. 76]; Defendants' Motion for Summary Judgment, [Doc. 78]; and Plaintiffs' Motion for Additional Discovery, [Doc. 92], shall be reinstated by the Court, sua sponte, for disposition on the merits, without any further briefing.  **<u>Failure to show cause may lead to entry of summary judgment in favor of Defendants and against Plaintiffs pursuant to Rule 56(f) of the Federal Rules of Civil Procedure without any further notice from the Court.</u>**

DATED:  September 30, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge