**TOWN OF SUPERIOR
ORDINANCE NO. O-9
SERIES 2022**

**AN ORDINANCE OF THE BOARD OF TRUSTEES OF THE TOWN OF SUPERIOR REPEALING AND REENACTING ARTICLE IX OF CHAPTER 10 OF THE SUPERIOR MUNICIPAL CODE, REGARDING THE POSSESSION AND USE OF WEAPONS IN THE TOWN**

**WHEREAS,** gun violence poses a grave public safety threat in the Town. Statewide in Colorado, guns are the leading cause of death for children under 18 and cause the deaths of nearly two-thirds of women who are killed by intimate partners;

**WHEREAS,** Colorado has the 18th-highest gun death rate among the 50 states and saw elevated levels of mass shootings in 2020 and early 2021, when a mass shooter killed 10 people at King Soopers in Boulder using an assault weapon and large-capacity magazines;

**WHEREAS,** assault weapons are semiautomatic firearms with large ammunition capacities and specific features that are useful in military and criminal applications yet are unnecessary in shooting sports or self-defense. These weapons include semiautomatic assault rifles that can accept large-capacity magazines holding up to 100 rounds, and with features that enhance concealability, control, and the ability to fire many dozens of rounds without pause. They also include assault pistols and high-capacity "combat" shotguns;

**WHEREAS,** the Town has a higher population density than more rural parts of Colorado and is characterized by the presence of traffic and commuters, and business districts, and these areas have a greater number of potential targets for large-scale school and workplace violence, mass shootings, and interpersonal gun violence, and therefore, these demographic attributes create a special need to restrict weapons that facilitate mass shootings, including assault weapons, trigger activators, and large-capacity magazines;

**WHEREAS,** assault weapons are semiautomatic versions of firearms, and although these semiautomatic versions of military firearms are marketed to civilians, they are military-grade weapons: the U.S. military calls semiautomatic rifle fire the "most important firing technique during fast-moving, modern combat" and the "most accurate technique of placing a large volume of fire.";

**WHEREAS**, assault weapons fire bullets with a velocity three times greater than 9 mm handguns, leaving softball-sized exit wounds that are much more likely to kill than to incapacitate victims;

**WHEREAS**, perpetrators of the five deadliest shootings in modern U.S. history (Las Vegas, Orlando, Sandy Hook, Sutherland Springs, and El Paso) used assault rifles with military-style features, and Colorado's deadliest mass shooters have also used assault rifles or pistols, including the Aurora movie theater shooter, who used an assault rifle and a 100-round drum magazine; and the King Soopers shooter, who used an AR-style pistol that an ATF expert described as "made for the military and designed for short-range combat";

**WHEREAS**, researchers have found that firearm purchasers with criminal histories are more likely to buy assault weapons, and that probability was even higher if purchasers have more serious criminal histories;

**WHEREAS**, assault weapons are regularly used in violent crime beyond mass shootings, including violence against police officers;

**WHEREAS**, assault weapons are inappropriate for civilian use due to their unique features that allow shooters to rapidly fire a large number of rounds—more than are ever needed for lawful self-defense—while maintaining control of the firearm in order to accurately target and kill more victims;

**WHEREAS**, in addition to military-style assault rifles, gun manufacturers have also begun marketing AK-style and AR-style pistols with the same features that enable a shooter to continue shooting the weapon numerous times without losing control over the weapon, and these pistols are also designed to fire rifle rounds capable of penetrating body armor, but that are concealable like handguns;

**WHEREAS**, AK-style and AR-style pistols pose a similar if not identical threat to public safety as do short-barreled rifles, because of their short length and ability to fire rifle rounds that can penetrate ballistic resistant vests worn by patrol officers, and because their lethality is on par with highly restricted short-barreled rifles, yet they have almost entirely evaded regulation. Armor-piercing, concealable firearms have been used in murders across the country, including at the 2021 King Soopers shooting and at the 2019 mass shooting in Dayton, Ohio;

2

**WHEREAS,** high-capacity "tactical" or "combat" shotguns are assault weapons modeled after firearms originally used for riot control by foreign law enforcement, and after the Armsel Striker, popular in South Africa and marketed in the U.S. as the Street Sweeper and designated as a "destructive device" under the National Firearms Act such that gun makers designed workaround weapons as powerful as the Street Sweeper that inflict catastrophic injuries by rapidly firing a dozen or more shotgun slugs, and these weapons are unfit for lawful sporting or self-defense uses;

**WHEREAS,** at the 2017 Mandalay Bay shooting in Las Vegas, Nevada, the shooter modified semiautomatic assault rifles with bump stocks so they could fire at speeds approaching fully automatic machine guns. Bump stocks, as well as binary triggers, burst triggers, rotating trigger cranks, and other after-market rapid-fire trigger activators enable firing many rounds per second and serve no lawful self-defense function;

**WHEREAS,** several years after the Las Vegas shooting drew attention to the dangers of bump stocks that give shooters automatic firepower, the ATF adopted a federal rule effectively banning their possession. However, state and local action is needed to restrict other rapid-fire trigger activators, and legal challenges to the federal bump stock rule are still pending;

**WHEREAS,** large-capacity magazines are ammunition feeding devices that hold more than 10 rounds and may hold as many as 100 rounds of ammunition. Mass shootings that involve large-capacity magazines result in nearly five times as many people shot compared to mass shootings that do not involve high-capacity magazines. These magazines increase the number of victims injured and killed by enabling shooters to fire more rounds before reloading—a critical moment when many criminal shooters are stopped before they can further increase their death tolls;

**WHEREAS,** large-capacity magazines also make gun violence far more lethal in situations other than mass shootings, including interpersonal gun violence and shootings by organized crime or street groups, and firearms equipped with large-capacity magazines account for 22 to 36% of crime guns in most places, and research shows upwards of 40% of crime guns used in serious violent crimes, including murders of police officers, are equipped with large-capacity magazines;

**WHEREAS,** the Board of Trustees is unaware of any reported incidents where someone engaged in self-defense fired more than 10 rounds of a large-capacity magazine to fend off an attack. Despite

3

analyzing several decades of evidence about defensive shootings, gun-rights groups raising legal challenges to magazine restrictions in other jurisdictions have been unable to identify a single incident anywhere in the nation in which someone needed to fire more than 10 rounds at once in lawful self-defense, and conversely, numerous high-profile mass shootings nationally and in Colorado have been carried out with large-capacity magazines, including the King Soopers shooting and the Aurora movie theater shooting.  Nationally, the five deadliest mass shootings of the last decade all involved the use of large-capacity magazines holding more than 10 rounds of ammunition;

**WHEREAS,** in 1994, a federal ban on the manufacture, transfer, and possession of assault weapons and the transfer and possession of large-capacity magazines was enacted, but the law included a 10-year sunset provision and in 2004, Congress allowed the law to expire;

**WHEREAS,** studies show that the federal assault weapon ban resulted in a marked decrease in the use of assault weapons and large-capacity magazines in crime;

**WHEREAS,** one study found that in several major cities, the share of recovered crime guns that were assault weapons declined by 32% to 40% after the federal ban was adopted, and another study in Virginia found a clear decline in the percentage of crime guns that were equipped with large-capacity magazines after the federal ban was enacted;

**WHEREAS,** federal law restricting assault weapon and large-capacity magazines also had a significant protective effect in lowering mass shooting fatalities, and during the 10-year period the law was in effect, mass shooting fatalities were 70% less likely to occur compared to when the ban was not in effect, and the number of high-fatality mass shootings fell by 37%, and the number of people dying in such shootings fell by 43% after the ban lapsed, there was a 183% increase in high-fatality mass shootings and a 239% increase in deaths from such shootings;

**WHEREAS,** state-level prohibitions on large-capacity magazines have been shown to reduce the frequency and lethality of the deadliest mass shootings—strong evidence that regional and local legislation can be effective even absent a federal ban, and a peer-reviewed study published in the American Journal of Public Health found that "states without an LCM ban experienced significantly more high-fatality mass shootings and a higher death rate from such incidents," seeing more than double the number of such

4

shootings and three times the number of deaths from high-fatality mass shootings, as compared to states that ban large-capacity magazines;

**WHEREAS**, survey data and gun-industry supplied statistics suggest that, at most, only a small fraction of U.S. gun owners possess semiautomatic assault rifles and private ownership of these weapons is concentrated in the hands of super-owners who have 10 or more firearms, and similar claims about the ubiquity of large-capacity magazines are contradicted by the fact that most magazines for handguns hold 10 rounds or fewer;

**WHEREAS**, because assault weapons, trigger activators, and large-capacity magazines are designed for and have repeatedly been used to inflict mass casualties and enable other violent crimes, and the fact that these weapons and accessories are ill-suited to and unnecessary for responsible self-defense, and are not chosen or used by most law-abiding gun owners for this purpose, the Board of Trustees finds that it is in the best interests of the public health, safety and welfare to prohibit the possession, sale, manufacture, and transfer of assault weapons, rapid-fire trigger activators, and large-capacity magazines;

**WHEREAS**, there are certain areas where firearms pose an acute risk to the health and well-being of children, office workers and members of the public;

**WHEREAS**, the presence of firearms in government buildings and offices, polling places, ballot counting facilities and public demonstrations poses a serious threat to First Amendment rights, voting rights and the functioning of our democracy;

**WHEREAS**, firearms pose a substantial danger in the vicinity of intoxicated people at facilities that serve alcohol, as research demonstrates a strong link between alcohol use and domestic violence, gun crimes and self-inflicted firearm injuries;

**WHEREAS**, waiting periods are consistent with the Second Amendment and fit squarely within the American tradition of ensuring responsible gun ownership through reasonable firearm regulations, and the U.S. Court of Appeals for the Ninth Circuit upheld California's 10-day waiting period law against a constitutional challenge in *Silvester v. Harris*, 843 F.3d 816, 819, 828 (9th Cir. 2016), pointing out that there is "nothing new in having to wait for the delivery of a weapon. Before the age of superstores and superhighways, most folks could not expect to take

5

possession of a firearm immediately upon deciding to purchase one. As a purely practical matter, delivery took time." *Id.* at 828;

**WHEREAS,** there are gaps in current laws that make it easy for people with dangerous histories to purchase widely available firearms parts without a background check and easily convert them into firearms without a serial number; and

**WHEREAS,** this Ordinance recognizes the enactment of Senate Bill 21-256 and is intended to be consistent with that law.

**NOW BE IT ORDAINED BY THE BOARD OF TRUSTEES OF THE TOWN OF SUPERIOR, COLORADO, as follows:**

**Section 1.**    Article IX of Chapter 10 of the Superior Municipal Code is hereby repealed in its entirety and reenacted as follows:

## ARTICLE IX – Weapons

### Sec. 10-9-10. – Purpose and applicability.

The purpose of this Article is to protect the public health, safety and welfare by regulating the possession, storage and use of weapons.

### Sec. 10-9-20. – Definitions.

For purposes of this Article, all terms shall be defined as they are defined in C.R.S. § 18-1-101, *et seq.*, unless otherwise defined as follows:

*About the person* means sufficiently close to the person to be readily accessible for immediate use.

*Assault weapon* means:

(a)    A semi-automatic center-fire rifle that has the capacity to accept a detachable magazine and that has any of the following characteristics:

    (1)    A pistol grip or thumbhole stock;

    (2)    A folding or telescoping stock;

    (3)    A flash suppressor; or

    (4)    A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel.

(b)    A semi-automatic center-fire pistol that has any of the following characteristics:

    (1)    A threaded barrel;

    (2)    A secondary protruding grip or other device to allow the weapon to be stabilized with the non-trigger hand;

6

(3)    A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

(4)    A flash suppressor;

(5)    The capacity to accept a detachable ammunition feeding device at some location outside of the pistol grip;

(6)    A manufactured weight of fifty (50) ounces or more when unloaded; or

(7)    A buffer tube, arm brace, or other part that protrudes horizontally under the pistol grip.

(c)    A semi-automatic center-fire pistol with a fixed magazine that has the capacity to accept more than ten (10) rounds.

(d)    All semi-automatic shotguns with any of the following characteristics:

(1)    A pistol grip or thumbhole stock;

(2)    A folding or telescoping stock;

(3)    A fixed magazine capacity in excess of five (5) rounds; or

(4)    The capacity to accept a detachable magazine.

(e)    Any firearm which has been modified to be operable as an assault weapon, as defined herein.

(f)    Any part or combination of parts designed or intended to convert a firearm into an assault weapon, including any combination of parts from which an assault weapon may be readily assembled if those parts are in the possession or under the control of the same person.

(g)    An assault weapon does not include any firearm that has been made permanently inoperable, an antique firearm manufactured before 1899 or a replica of an antique firearm.

*Blackjack* means any billy club, sand club, sandbag or other hand-operated striking weapon consisting, at the striking end, of an encased piece of lead or other heavy substance and, at the opposite end, a strap or springy shaft that increases the force of the object.

*Constructive knowledge* means knowledge of facts or circumstances sufficient to cause a reasonable person to be aware of the fact in question.

*Deadly weapon* means any of the following that in the manner it is used or intended to be used is capable of producing death or serious bodily injury: a firearm, whether loaded or unloaded; a knife; a bludgeon; or any other weapon, device, instrument, material or substance, whether animate or inanimate.

*Federal licensee* means a federally licensed firearms manufacturer, importer or dealer licensed under 18 U.S.C. § 923(a) or other federal licensee authorized to identify firearms with serial numbers.

7

*Firearm* means any handgun, automatic revolver, pistol, rifle, shotgun, or other instrument or device capable or intended to be capable of discharging bullets, cartridges or other explosive charges, but excludes an "antique firearm", as defined in 18 U.S.C. § 921(a)(16).

*Frame* or *receiver* means the part of a firearm that, when the complete weapon is assembled, is visible from the exterior and provides the housing or structure designed to hold or integrate one (1) or more fire control components, even if pins or other attachments are required to connect those components to the housing or structure.  For models of firearms in which multiple parts provide such housing or structure, the part or parts that the Director of the Federal Bureau of Alcohol, Tobacco, Firearms & Explosives has determined are a frame or receiver constitute the frame or receiver.  For purposes of this definition, the term "fire control component" means a component necessary for the firearm to initiate, complete or continue the firing sequence, and includes a hammer, bolt, bolt carrier, breechblock, cylinder, trigger mechanism, firing pin, striker or slide rails.

*Gas gun* means a device designed for projecting gas-filled projectiles that release their contents after having been projected from the device and includes projectiles designed for use in such a device.

*Gas* or *mechanically operated gun* means an air or gas operated gun that discharges pellets, arrows or darts, including without limitation spring guns but excluding BB guns and toy guns.

*Gravity knife* means any knife with a blade that may be released from the handle or sheath thereof by the force of gravity or the application of centrifugal force, which when released is locked in place by means of a button, spring, lever or other device.

*Illegal weapon* means an assault weapon, large-capacity magazine, rapid-fire trigger activator, blackjack, gas gun, metallic knuckles, gravity knife or switchblade knife.

*Knife* means any dagger, dirk, knife or stiletto with a blade over three and one-half (3.5) inches in length, or any other dangerous instrument capable of inflicting cutting, stabbing or tearing wounds, but does not include a hunting or fishing knife carried for sports use.

*Large-capacity magazine* means any ammunition feeding device with the capacity to accept more than ten (10) rounds but shall not be construed to include any of the following:  a feeding device that has been permanently altered so that it cannot accommodate more than ten (10) rounds; a twenty-two (22) caliber tube rim-fire ammunition feeding device; or a tubular magazine that is contained in a lever-action firearm.

*Licensed firearms dealer* means any person who is a licensed importer, licensed manufacturer or dealer licensed pursuant to 18 U.S.C. § 923, as amended, as a federally licensed firearms dealer and has obtained all necessary state and local licenses to sell firearms in Colorado.

*6/8/2022*
*P:\SHARED\PATRICIA LEYVA\WPDOCS\MEETINGS\MEETINGS 2022\TOWN BOARD MEETINGS\TOWN BOARD REGULAR MEETINGS\JUNE 7, 2022 SPECIAL\POSESSION AND USE OF WEAPONS-060722.DOCX*

*Locked container* means a secure container which is enclosed on all sides and locked by a padlock, key lock, combination lock or similar device but does not include the utility compartment, glove compartment or trunk of a motor vehicle.

*Minor* means anyone under the age of twenty-one (21), as defined in C.R.S. § 2-4-401(6).

*Pistol grip* means a grip that protrudes conspicuously beneath the action of the weapon and that allows for a pistol style grasp in which the web of the trigger hand (between the thumb and index finger) can be placed below the top of the exposed portion of the trigger while firing.

*Provide* means to give, lend, sell or place in an unsecured location where a minor, unauthorized person or an incompetent person could foreseeably gain access to a firearm.

*Rapid-fire trigger activator* means a device that attaches to a firearm to allow the firearm to discharge two (2) or more shots in a burst when the power is activated; or a manual or power-driven trigger-activating device that, when attached to a firearm, increases the rate of fire of that firearm.

*Sale* means the actual approval of the delivery of a firearm in consideration of payment or promise of payment.

*Semi-automatic* means a firearm that fires a single round for each pull of the trigger and automatically chambers a new round immediately after a round is fired.

*Site* means the facility or location where a sale or transfer of firearms is conducted.

*Switchblade knife* means any knife, the blade of which opens automatically by hand pressure applied to a button, spring or other device on its handle.

*Transfer* means the intended delivery of a firearm from a dealer to another person without consideration of payment or promise of payment including without limitation gifts and loans.  "Transfer" does not include the delivery of a firearm owned or leased by an entity licensed or qualified to do business in Colorado to, or return of such firearm by, any of that entity's employees or agents for lawful purposes in the ordinary course of business.

*Unfinished frame* or *receiver* means any forging, casting, printing, extrusion, machined body or similar article that:  has reached a stage in manufacturing where it may readily be completed, assembled or converted to be used as the frame or receiver of a functional firearm; or is marketed or sold to the public to become or be used as the frame or receiver of a functional firearm once completed, assembled or converted.  For purposes of this definition, the term "assemble" means to fit together component parts.  In determining whether a forging, casting, printing, extrusion, machined body or similar article may be readily completed, assembled or converted to a functional state, the Town Manager may consider any available instructions, guides, templates, jigs, equipment, tools or marketing materials.

**Sec. 10-9-30. – Discharge of firearms.**

No person shall discharge any projectile from a firearm or gas or mechanically operated gun.  For purposes of this Section, any person who was the proximate cause of the discharge shall be deemed to have discharged the firearm.  It is a violation of this Section if the discharge occurs within the jurisdiction of the Town, or if the projectile travels over such jurisdiction.

**Sec. 10-9-40. – Possession and sale of illegal weapons.**

(a)       Prohibition.  No person shall knowingly possess, sell or otherwise transfer an illegal weapon.

(b)       Exemptions.  This Section shall not apply to:

        (1)       Any person holding a valid federal firearms license from possession of any firearm authorized pursuant to such license;

        (2)       A firearm for which the U.S. Government has issued a stamp or permit pursuant to the National Firearms Act;

        (3)       A firearm that has been modified either to render it permanently inoperable or to permanently make it not an assault weapon; or

        (4)       A person traveling with a firearm or other weapon in a private automobile or other private means of conveyance for lawful hunting, lawful competition or lawful protection of a person, another person or property while traveling into, through or within the Town, regardless of the number of times the person stops in the Town.

        (5)       A person performing their official duties as set forth in § 10-9-220 of this Article.

**Sec. 10-9-50. – Possessing and discharging firearm or bow in park or open space.**

(a)       No person shall possess any firearm or gas or mechanically operated gun in any park or open space.

(b)       No person shall discharge a missile from, into or over, or possess any bow, slingshot or crossbow in any park or open space.

**Sec. 10-9-60. – Negligently shooting bow or slingshot.**

No person shall shoot a bow and arrow, crossbow or slingshot in a negligent manner.

**Sec. 10-9-70. – Aiming weapon at another.**

No person shall knowingly aim a loaded or unloaded firearm or gas or mechanically operated gun at another person.

**Sec. 10-9-80. – Flourishing deadly weapon in alarming manner.**

No person shall display or flourish a deadly weapon in a manner calculated to alarm another person.

10

**Sec. 10-9-90. – Possession of loaded firearms.**

(a)      Except as set forth in this Section, no person shall possess a loaded firearm. For the purposes of this Section, a firearm is loaded if there is a projectile, with charge, in the chamber, in the cylinder, or in the clip in the firearm.

(b)      A law enforcement officer shall not undertake an arrest under this Section without first giving due consideration to the Town's burden of proof with regard to the affirmative defenses set forth in Section 10-9-190.

(c)      This Section shall not apply to persons possessing a loaded firearm:

        (1)      In their own domiciles or places of business or on property owned by or under their control;

        (2)      In private automobiles or other private means of conveyance who are carrying a firearm for hunting or the lawful protection of themselves or another person or property while traveling;

        (3)      Who, prior to the time of carrying a loaded firearm, has been issued a written permit to carry such firearm and is in compliance with such permit;

        (4)      Who is a U.S. Marshal, sheriff, constable, peace officer or member of the U.S. Armed Forces, Colorado National Guard or Reserved Officer Training Corps as set forth in Section 10-9-220 herein; and

        (5)      Who is employed in any other profession whereby possession of a loaded firearm is necessary and is authorized in the performance of their official duties.

**Sec. 10-9-100. – Carrying a concealed weapon.**

(a)      No person shall have a knife or firearm concealed on or about their body.

(b)      This Section shall not apply to persons carrying a concealed weapon:

        (1)      In their own domiciles or places of business or on property owned by or under their control;

        (2)      In private automobiles or other private means of conveyance who are carrying a weapon for hunting or the lawful protection of themselves or another person or property while traveling;

        (3)      Who, prior to the time of carrying a concealed weapon, has been issued a written permit to carry such weapon and is in compliance with such permit;

        4)      Who is a U.S. Marshal, sheriff, constable, peace officer or member of the U.S. Armed Forces, Colorado National Guard or Reserved Officer Training Corps as set forth in Section 10-9-220 herein; and

        (5)      Who is employed in any other profession whereby carrying a concealed is necessary and is authorized in the performance of their official duties.

**Sec. 10-9-110. – Possessing firearm while intoxicated.**

11

No person shall possess any firearm while such person's ability is impaired by alcohol, drugs, as defined by C.R.S. § 27-80-203(13), or any controlled substance, as defined by C.R.S. § 18-18-102(5).

### Sec. 10-9-120. – Providing firearm to intoxicated persons or minors.

No person shall provide any firearm to any person whose ability is impaired by alcohol, drugs, as defined by C.R.S. § 27-80-203(13); any controlled substance, as defined by C.R.S. § 18-18-102(5); to any person in a condition of agitation and excitability; or to any minor unless the person providing the firearm has obtained the consent of the minor's parent or legal guardian.  Knowledge of the minor's age shall not be an element of this offense.

### Sec. 10-9-130. – Setting spring gun.

No person shall knowingly set a loaded gun, trap or device designed to cause an explosion upon being tripped or approached and leave it unattended by a competent person immediately present.

### Sec. 10-9-140. – Possession of firearms by minors.

(a)     Prohibition.  No minor shall knowingly possess a firearm.

(b)     Defenses.  It is a specific defense to a charge of violating this Section that the minor was, with the consent of their parent or legal guardian:

(1)     In attendance at a hunter's safety course or a firearms safety course;

(2)     Engaging in practice in the use of a firearm or target shooting in an area designated as a target range for the type of weapon involved;

(3)     Engaging in an organized competition involving the use of a firearm or participating in or practicing for a performance by an organized group exempt from payment of income tax under 26 U.S.C. § 501(c)(3) as determined by the federal internal revenue service which uses firearms as a part of such performance;

(4)     Hunting or trapping pursuant to a valid license issued to such person pursuant to C.R.S. § 33-4-101, *et seq.*;

(5)     Traveling with a loaded firearm in such minor's possession to or from any activity described in subsection (b)(1), (b)(2), (b)(3) or (b)(4) hereof or to or from an established range authorized by the governing body of the jurisdiction in which such range is located or any other area outside the Town where target practice is legal and the minor has permission from the landowner for such practice;

(6)     Possessing a firearm at such minor's residence for the purpose of exercising the rights contained in C.R.S. §§ 18-1-704 or 18-1-704.5; and

(7)     For purposes of subsection (b)(5) hereof, a firearm is loaded if there is a cartridge in the chamber or cylinder of the firearm or in a clip in the firearm; or the firearm, and the ammunition for such firearm, is carried on the person of the minor or is in such close proximity to the minor that the minor could readily gain access to the firearm and the ammunition and load the firearm.

### Sec. 10-9-150. – Providing rifle or shotgun to minors.

12

(a)     No person shall provide a rifle or shotgun with or without remuneration to any minor under circumstances that cause the minor to be in violation of Section 10-9-140. Knowledge of the minor's age shall not be an element of this offense.

(b)     No parent or legal guardian of a minor shall provide a rifle or shotgun to the minor for any purpose or shall permit the minor to possess a rifle or shotgun for any purpose if the parent or guardian has actual or constructive knowledge of a substantial risk that the minor will use the rifle or shotgun to violate a federal, state or local law.

(c)     No parent or legal guardian of a minor shall provide a rifle or shotgun to, or permit the minor to possess, a rifle or shotgun for any purpose if the minor has been convicted of a crime of violence, as defined in C.R.S. § 18-1.3-406(2)(a)(I), or if the minor has been adjudicated a juvenile delinquent for an act which would have constituted a crime of violence, as so defined, if committed by an adult.

(d)     It is a specific defense to a charge of violating this Section that the firearm had been stolen from the defendant either by the minor or by another person who subsequently provided the firearm to the minor.

**Sec. 10-9-160. – Unlawful storage of assault weapons.**

(a)     Prohibition.  No person shall store, control or possess any assault weapon within any premises of which that person has an ownership interest, custody or control, in such a manner that the person knows, or has constructive knowledge, that a minor is likely to gain possession of the assault weapon or in fact does obtain possession of the assault weapon.

(b)     Defenses.  It is a defense to a charge or violation of this Section that:

        (1)     The assault weapon was located within a room or closet from which all minors were excluded by locks; or

        (2)     The assault weapon was stored in a locked container.

**Sec. 10-9-170. – Unlawful storage of firearms.**

(a)     Prohibition.  No person shall store, control or possess any firearm within any premises of which that person has an ownership interest, custody or control, in such manner that the person knows, or has constructive knowledge, that a minor is likely to gain possession of the firearm or in fact does obtain control of the firearm and either injures or kills themselves or another person with the firearm or uses the firearm in violation of federal, state or local law.

(b)     Defenses.  It is a specific defense to a charge of violation of this Section that:

        (1)     The firearm was located within a room or closet from which all minors were excluded by locks;

        (2)     The firearm was stored in a locked container; or

(3)    The firearm was used by a minor at such minor's residence with the permission of the minor's parent or legal guardian, for the purpose of exercising the rights contained in C.R.S. §§ 18-1-704 or 18-1-704.5.

**Sec. 10-9-180. – Parent or legal guardian liability.**

(a)    No parent or legal guardian, having actual or constructive knowledge of illegal possession of a firearm by a minor shall fail to either:

(1)    Immediately take possession of the firearm; or

(2)    Immediately notify law enforcement authorities of the details of the illegal possession so that law enforcement authorities can act to take possession of the firearm.

(b)    This Section does not create a duty on a parent or legal guardian to search the bedroom of a minor for firearms.

(c)    As used in this Section, illegal possession of a firearm by a minor means possession in violation of Section 10-9-140 or any provision of state or federal law concerning possession of a firearm by a minor.

**Sec. 10-9-190. – Defenses.**

(a)    It is an affirmative defense to a charge of violating Sections 10-9-30, 10-9-50, 10-9-60, 10-9-80 and 10-9-90 that the defendant was:

(1)    Reasonably engaged in lawful self-defense under applicable law; or

(2)    Reasonably exercising the right to keep and bear arms in defense of the defendant's or another's home, person and property or in aid of the civil power when legally thereto summoned.

(b)    It is an affirmative defense to a charge of violating Sections 10-9-90, 10-9-100, and 10-9-110 that the defendant was:

(1)    In the defendant's own dwelling or place of business or on property owned or under the defendant's control at the time;

(2)    In a private automobile or other private means of conveyance at the time and was carrying the weapon for lawful protection of the defendant's or another's person or property while traveling; or

(3)    Charged with carrying a knife that was a hunting or fishing knife carried by the defendant for sport use.

(c)    It is a specific defense to a charge of violating Sections 10-9-90 and 10-9-100 that the defendant was carrying the weapon pursuant to a concealed weapons permit valid under the statutes of the State of Colorado.

(d)    It is a specific defense to a charge of violating Sections 10-9-30 and 10-9-90 that the loaded firearm or gas or mechanically operated gun was possessed or

1 4

discharged in a building with the permission of the property owner and the projectile did not leave the building.

(e)     It is a specific defense to a charge of violating Section 10-9-40 that:

(1)     The person had a valid permit for such weapon pursuant to federal law at the time of the offense; or

(2)     That the illegal weapon was an assault weapon accompanied by a valid certificate of ownership.

(f)     It is a specific defense to a charge of violating Section 10-9-50 that the firearm, gas or mechanically operated gun, bow, slingshot or crossbow possessed by the person was being transported in a motor vehicle. This defense does not apply to a charge of violation involving discharge of a missile.

(g)     It is an affirmative defense to any charge of a violation of this Article relating to carrying firearms that the defendant was carrying the firearm in a private automobile or other private means of conveyance for lawful protection of such person or another person or property or for hunting while traveling in, into or through the Town, as permitted by C.R.S. § 18-12-105.6.

**Sec. 10-9-200. – Seizure.**

A law enforcement officer who has probable cause to believe that a violation of this Article has occurred may, in addition to taking any other action, seize the weapons or items used in said violation. Any weapon or items so seized shall be secure by the law enforcement officer in accordance with the rules of the Boulder County Sheriff's office.

**Sec. 10-9-210. – Forfeiture and disposition of deadly weapons.**

After final conviction, every person convicted of any violation of any provision of this Article shall forfeit to the Boulder County Sheriff's Office the weapon involved, and the Boulder County Sheriff's Office shall dispose of the weapon or item, as the Boulder County Sheriff's Office deems appropriate.

**Sec. 10-9-220. – Exemptions.**

(a)     Nothing in this Article shall be construed to forbid the following persons from having in their possession, displaying, concealing or discharging such weapons as are necessary in the authorized performance of their official duties:

(1)     A U.S. Marshal, sheriff, constable or their deputies;

(2)     A peace officer; or

(3)     A member of the U.S. Armed Forces, Colorado National Guard or Reserve Officer Training Corps, to the extent such person is otherwise authorized to acquire or possess an assault weapon or large-capacity magazine and does so within the scope of their duties.

(b)     Nothing in this Article shall be construed to authorize the Town to restrict the manufacture or sale of items pursuant to a military or law enforcement contract.

15

**Sec. 10-9-230. – Firearms dealers; display of weapons.**

No secondhand dealer, pawnbroker or any other person engaged in the wholesale or retail sale, rental or exchange of any firearms shall display or place on exhibition any firearm in any show window or other window facing upon any street of the Town.

**Sec. 10-9-240. – Assault weapons.**

(a)    Any person who, prior to July 1, 2022, was legally in possession of an assault weapon shall have until December 31, 2022 to obtain a certificate for the assault weapon as provided in subsection (c) hereof.

(b)    Any person who, prior to July 1, 2022, was legally in possession of a rapid-fire trigger activator shall have until August 1, 2022 to do any of the following without being subject to prosecution:

    (1)    Remove the rapid-fire trigger activator from the Town; or

    (2)    Surrender the rapid-fire trigger activator to the Boulder County Sheriff's Office for destruction.

(c)    Any person seeking to certify an assault weapon that they legally possessed prior to July 1, 2022, unless they obtained a certificate of ownership under previous ordinances, must comply with the following requirements:

    (1)    Submit to a background check conducted by the appropriate agency to confirm that they are not prohibited from possessing a firearm pursuant to 18 U.S.C. § 922 or C.R.S § 18-12-108; and

    (2)    Unless the person is currently prohibited by law from possessing a firearm, prior to December 31, 2022 apply for a certificate for the assault weapon from the Boulder County Sheriff's Office.

(d)    All persons who hold a certificate issued prior to December 31, 2022 or who obtain a certificate pursuant to subsection (c) of this Section shall:

    (1)    Safely and securely store the assault weapon pursuant to the regulations adopted by the appropriate law enforcement agency;

    (2)    Possess the assault weapon only on property owned or immediately controlled by the person, or while on the premises of a licensed gunsmith for the purpose of lawful repair, or while engaged in the legal use of the assault weapon at a duly licensed firing range, or while traveling to or from these locations, provided that the assault weapon is stored unloaded in a locked container during transport. The term "locked container" does not include the utility compartment, glove compartment or trunk of a motor vehicle; and

    (3)    Report the loss or theft of a certified assault weapon to the appropriate law enforcement agency within forty-eight (48) hours of the time the discovery was made or should have been made.

16

(e)     Certified assault weapons may not be purchased, sold or transferred in the Town, except for transfer to a licensed gunsmith for the purpose of lawful repair, or transfer to the appropriate law enforcement agency for the purpose of surrendering the assault weapon for destruction.

(f)     Persons acquiring an assault weapon by inheritance, bequest, or succession shall, within ninety (90) days of acquiring title, do one of the following:

(1)     Modify the assault weapon to render it permanently inoperable;

(2)     Surrender the assault weapon to the Boulder County Sheriff's Office for destruction;

(3)     Transfer the assault weapon to a firearms dealer who is properly licensed under federal, state and local laws; or

(4)     Permanently remove the assault weapon from the Town.

(g)     The owner of a certified assault weapon may not possess in the Town any assault weapons purchased after July 1, 2022.

**Sec. 10-9-250. – Possession of firearms in buildings and areas under the Town's control.**

(a)     Prohibition.  No person shall knowingly carry any firearm, whether in an open or concealed manner, in any of the following locations:

(1)     Any building or real property owned or operated by the Town, or an entity created or controlled by the Town;

(2)     The portion of any building that is being used for governmental purposes by the Town or an entity created or controlled by the Town;

(3)     Any public parks, playgrounds or open space;

(4)     Any recreation or community center facility owned, operated or managed by the Town;

(5)     At any demonstration as described in this Section held on public property;

(6)     Within five hundred (500) feet of any polling location within the Town on the day of an election or at a place officially designated for the counting of ballots on any day when ballots are being counted or conducting activities related to a federal, state or municipal election;

(7)     The area of any facility licensed to serve alcohol pursuant to C.R.S. § 44-3-101, *et seq.*;

(8)     A hospital;

(9)     A facility or office that has medical, mental health, or substance abuse professionals to provide screening, evaluation, or treatment for mental health or substance abuse disorders;

17

(10)    Any property or facility owned or operated by a church, synagogue, mosque, temple or other place of worship without explicit permission from the operating authority;

(11)    A stadium or arena;

(12)    A courthouse;

(13)    A depository financial institution or a subsidiary or affiliate of a depository financial institution;

(14)    A theater; or

(15)    A childcare center, preschool or other school or educational setting.

(b)    Signage. A sign providing notice that the concealed and open carry of firearms is prohibited shall be posted conspicuously at all public entrances to the locations identified in subsection (a) hereof as required by C.R.S. §§ 29-11.7-104 and 18-12-214(1)(c)(II). The form of such sign shall be approved by the Town. No person shall be charged with a violation of this Section if such signs are not posted.

(c)    Exemptions. This Section shall not apply to:

(1)    Any federal, state, or local law enforcement officer when engaged in official duties;

(2)    Any member of the United States Armed Forces or Colorado National Guard when engaged in official duties;

(3)    Private security guards; or

(4)    The carrying or possession of a firearm in a motor vehicle or other private means of conveyance.

(d)    Definitions. As used in this Section, "demonstration" means demonstrating, picketing, speechmaking, marching, holding vigils and all other like conduct occurring in a public place that involve the communication or expression of views or grievances engaged in by one (1) or more persons, the conduct of whom has the effect, intent or propensity to draw a crowd of onlookers, but excludes casual use of property by visitors or tourists who do not have an intent or propensity to attract a crowd of onlookers.

(e)    Violation and Penalty.

(1)    Any person violating the provisions of this Section shall be subject to immediate removal from the premises.

(2)    Any person violating the provisions of this Section who knew or reasonably should have known that their conduct was prohibited, including because notice of the firearm prohibition was posted conspicuously as required by this Section, shall be punished as follows:

a.    For a first offense, by a fine not to exceed fifty dollars ($50.00);

b.    For a second or subsequent offense, by a fine not to exceed five hundred dollars ($500.00);

18

c.      For any violation where the person refuses to leave the premises after receiving oral notice from the property owner or authorized representative, the person shall be subject to the fines as provided in this Section or to a period of imprisonment not to exceed thirty (30) days, or both.

**Sec. 10-9-260. – Open carry of firearms.**

(a)      Prohibitions.  No person shall knowingly openly carry a firearm on or about their person in a public place.

(b)      Exemptions.  This Section shall not apply to:

(1)      Any federal, state, or local law enforcement officer when engaged in official duties;

(2)      Any member of the U.S. Armed Forces or Colorado National Guard when engaged in official duties;

(3)      A person carrying a firearm when engaged in target shooting or when engaged in lawful hunting activity;

(4)      The carrying of a firearm on a person's own property, business or dwelling or on the property of another with permission from the property owner;

(5)      The carrying of a firearm in a motor vehicle or private means of conveyance;

(6)      The carrying of an unloaded firearm in a locked or enclosed case that must be recognizable as a gun carrying case by a reasonable person. A plain-shaped case must be clearly marked to be deemed recognizable under this standard. A holster satisfies the requirement of a carrying case for a pistol;

(7)      The carrying of a concealed handgun by a person with a valid permit to carry issued or recognized pursuant to C.R.S. § 18-12-201, *et seq.*, or the otherwise lawful use of a handgun by a person with a valid permit to carry; or

(8)      Private security guards.

(c)      As used in this Section, "public place" means a place to which the public or a substantial number of the public has access.

**Sec. 10-9-270. – Disclosure.**

(a)      At any site where firearm sales or transfers are conducted in the Town, a licensed firearms dealer shall conspicuously display a sign containing the information set forth in subsection (b) hereof in any area where the sales or transfers occur.  Such sign shall be posted in a manner so that it can be easily viewed by persons to whom firearms are sold or transferred, and shall not be removed, obscured or rendered illegible.  If the site where the sales or transfers occur are the premises listed on the licensed firearms dealer's federal license(s), an additional sign shall be placed at or near the entrance.

(b)      Each informational sign shall be at least eight and one-half (8.5) inches high by eleven (11) inches wide and feature black text against a white background and

19

letters that are at least one-half (0.5) inch high. The sign shall not contain other statements or markings other than the following text:

WARNING: Access to a firearm in the home significantly increases the risk of suicide, death during domestic violence disputes, and the unintentional death of children, household members, or others. If you or a loved one is experiencing distress or depression, call 1-844-493-8255. Posted pursuant to Section 10-9-270, Superior Municipal Code.

(c)    The Town shall make available a downloadable sign as described in this Section in English and make such sign available on the Town's website.

(d)    When violations of this Section occur, a warning shall first be given to the licensed firearms dealer or other person in charge of the site. Any subsequent violation is subject to punishment as set forth in Section 1-3-20 of this Code.

**Sec. 10-9-280. – Waiting period prior to firearm purchase.**

(a)    Prohibition. No licensed firearms dealer shall deliver a firearm, and no person shall take possession of a firearm from a licensed dealer, until both of the following have occurred:

(1)    Ten (10) days have elapsed from the date the dealer initiated the Colorado Bureau of Investigation check of the purchaser pursuant to C.R.S. § 24-33.5-424; and

(2)    The dealer has received approval for the firearms transfer as required by C.R.S § 18-12-112.5.

(b)    Exemptions. This Section shall not apply to:

(1)    A law enforcement or corrections agency, or law enforcement or corrections officer acting within the course and scope of their employment or official duties;

(2)    A U.S. Marshal or member of the U.S. Armed Forces or the National Guard, or a federal official transferring firearms as required in the operation of their official duties;

(3)    A licensed firearms manufacturer, importer or dealer, while engaged in the course and scope of their activities as licensees, provided that the transfers are between licensees and all such licensees are properly licensed under federal, state and local law;

(4)    A gunsmith who receives a firearm for service or repair;

(5)    A properly licensed private security firm, or private security personnel, who acquires the firearms for use in the course and scope of employment; or

(6)    A common carrier, warehouser or other person engaged in the business of transporting or storing goods, to the extent that the possession or receipt of any firearm or having on or about the person of any firearm, is in the ordinary course of business and not for the personal use of such person.

20

**Sec. 10-9-290. – Serial numbers.**

(a)      Prohibition.  No person shall possess any firearm that has not been identified with a serial number by a federal licensee.

(b)      Exemptions.  This Section shall not apply to:

(1)      A federal licensee;

(2)      Any firearm made before October 22, 1968 (unless remanufactured after that date); or

(3)      A local, state, or federal law enforcement officer who possesses a firearm pursuant to their official duties.

**Section 2**.    Severability.    If any article, section, paragraph, sentence, clause, or phrase of this Ordinance is held to be unconstitutional or invalid for any reason, such decision shall not affect the validity or constitutionality of the remaining portions of this Ordinance.  The Board of Trustees hereby declares that it would have passed this Ordinance and each part or parts hereof irrespective of the fact that any one or part or parts be declared unconstitutional or invalid.

**Section 3**.    Safety.    This Ordinance is deemed necessary for the protection of the health, welfare and safety of the community.

**INTRODUCED, READ, PASSED AND ORDERED PUBLISHED this 7ᵗʰ day of June, 2022.**

Clint Folsom, Mayor

**ATTEST:**

Patricia Leyva, Town Clerk

21