**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 22-cv-02680-NYW-TPO

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
GORDON MADONNA,
JAMES MICHAEL JONES, and
MARTIN CARTER KEHOE,

      Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE, COLORADO,
CITY OF BOULDER, COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

      Defendants.

---

## <u>AMENDED</u> ORDER

---

      This matter comes before the Court on the Plaintiffs['] Response to Order to Show Cause, [Doc. 100, filed November 1, 2024][1] ("Plaintiffs' Response to OSC"), and Defendants' Memorandum of Law in Support of Summary Judgment on Certain Claims For Lack of Standing, [Doc. 102, filed November 22, 2024] ("Defendants' Memorandum"). For the reasons set forth in this Order, the Order to Show Cause, [Doc. 96], is **DISCHARGED in part** and **MADE ABSOLUTE in part**. Although the Court originally contemplated reinstating Plaintiffs' Motion for Summary Judgment, [Doc. 76], and

---

[1] This Court uses the convention of [Doc. ___] and the page number assigned by the Electronic Case Files ("ECF") System for this District to refer to materials filed in this action.

Defendants' Motion for Summary Judgment, [Doc. 78], this Court finds that it is more efficient for the Parties to re-file their respective Motions for Summary Judgment taking into account the Court's rulings herein as well as the supplemental authorities identified to date. Plaintiffs' Motion for Additional Discovery, [Doc. 92], is sua sponte **REINSTATED**.

## BACKGROUND

The Court has previously set forth the factual background of this case and will only recite the facts that are most pertinent to this Order. *See* [Doc. 96 at ¶¶ 2–6]. Plaintiffs Rocky Mountain Gun Owners ("RMGO"), National Association for Gun Rights ("NAGR," and collectively with RMGO, "Organizational Plaintiffs"), Charles Bradley Walker ("Plaintiff Walker" or "Mr. Walker"), Bryan LaFonte ("Plaintiff LaFonte" or "Mr. LaFonte"), Gordon Madonna ("Plaintiff Madonna" or "Mr. Madonna"), James Michael Jones ("Plaintiff Jones" or "Mr. Jones"), and Martin Carter Kehoe ("Plaintiff Kehoe" or "Mr. Kehoe") (collectively with Plaintiffs Walker, LaFonte, Madonna, Jones, and Kehoe, "Individual Plaintiffs" and with Organizational Plaintiffs, "Plaintiffs") filed this suit to challenge the constitutionality of various county and municipal ordinances enacted by Defendants the Town of Superior ("Defendant Superior"), City of Louisville ("Defendant Louisville"), City of Boulder ("Defendant Boulder"), and Board of County Commissioners of Boulder County ("Defendant Boulder County") (collectively, "Defendants"),[2] which ban "assault weapons"

---

[2] Defendants filed, collectively, a Memorandum. [Doc. 102 at 6]. At times, however, the Court refers to the Defendants individually to assist the reader in parsing the standing arguments, evidence, and remaining claims because "[e]ach plaintiff must have standing to seek each form of relief in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007).

and "large capacity magazines" ("LCMs").[3]  Plaintiffs assert a single claim under the Second and Fourteenth Amendments of the United States Constitution.  *See* [Doc. 1 at ¶¶ 51–54].

*The Ordinances.*    The Ordinances at issue include the Town of Superior, Colorado, Code Ch. 10, art. IX (the "Superior Ordinance"), [Doc. 96-1];[4] City of Boulder, Colorado, Rev. Code Title 5, Ch. 8 (the "Boulder Ordinance"), [Doc. 96-2]; City of Louisville, Colorado, Code Title 9, Ch. VIII (the "Louisville Ordinance," and together with the Superior and Boulder Ordinances, the "Municipal Ordinances"), [Doc. 96-3]; and Boulder County, Colorado, Ord. No. 2022-5 (the "Boulder County Ordinance," and collectively with the Municipal Ordinances, the "Ordinances"), [Doc. 96-4].

*The Plaintiffs.*    Each of the Individual Plaintiffs challenges the Ordinance governing the municipality (or county) in which he resides:  Plaintiffs Walker and Jones reside in Superior and Boulder, respectively.  [Doc. 76-12 at ¶ 3; Doc. 76-7 at ¶ 3].  Plaintiffs LaFonte and Madonna reside in Louisville.  [Doc. 76-9 at ¶ 3; Doc. 76-10 at ¶ 3].  Plaintiff Kehoe resides in unincorporated Boulder County.  [Doc. 76-8 at ¶ 3].  Plaintiffs RMGO and NAGR are nonprofit membership- and donor-supported organizations that "seek to defend the right of all law-abiding individuals to keep and bear arms."  [Doc. 76-

---

[3] While Plaintiffs take issue with the terminology of "large-capacity magazine," [Doc. 1 at ¶ 18], this Court uses the terminology used in the Ordinances at issue.  "Assault weapon" and "LCMs" are defined uniformly throughout the Ordinances; for example, LCMs are defined as "any ammunition feeding device with the capacity to accept more than ten (10) rounds," with three limited exceptions not relevant to the instant Motions.  *See, e.g.*, [Doc. 20-1 at 9].

[4] The Court refers to the clean versions of the Ordinances in its prior Order, [Doc. 96], because the ECF markings and pagination on the versions filed by Plaintiffs and Defendants are often obscured.  *See* [Doc. 76-2; Doc. 76-4; Doc. 78-1; Doc. 78-2; Doc. 78-3].

6 at ¶ 3]. The Individual Plaintiffs are all members of at least one of the organizations that serve as Organizational Plaintiffs. [Doc. 76-7 at ¶ 2; Doc. 76-8 at ¶ 2; Doc. 76-9 at ¶ 2; Doc. 76-10 at ¶ 2; Doc. 76-12 at ¶ 2].

*Procedural History.* Plaintiffs initiated this action on October 12, 2022. [Doc. 1]. On November 3, 2022, and pursuant to the Parties' stipulation, the Court entered an Order approving a stay of enforcement of the Ordinances during the pendency of this litigation, insofar as they prohibit the possession, sale, or transfer of assault weapons and LCMs. [Doc. 38]. Pursuant to the Scheduling Order entered on January 19, 2023, discovery in this case closed on July 28, 2023. [Doc. 49 at 10–11].

The Parties subsequently filed motions under Rule 56 of the Federal Rules of Civil Procedure, which are fully briefed. *See* [Doc. 76; Doc. 82; Doc. 84]; *see also* [Doc. 78; Doc. 81; Doc. 83].[5] Both sides moved for summary judgment in their favor on Plaintiffs' Second Amendment claim. [Doc. 76; Doc. 78]. Defendants did not raise lack of standing as a basis for their first affirmative Motion for Summary Judgment, but did challenge standing in response to Plaintiffs' Motion for Summary Judgment. *See* [Doc. 78; Doc. 82 at 25–27]. Because a party may not include a motion in response to an original motion, D.C.COLO.LCivR 7.1(d), this Court issued an Order to Show Cause on September 30,

---

[5] On August 16, 2024, and with leave of Court, both Parties filed supplemental statements of authority regarding the issues briefed in their respective Motions for Summary Judgment. [Doc. 91; Doc. 93]. That same day, Plaintiffs also filed a Motion for Additional Discovery. [Doc. 92]. Defendants responded to the Motion for Additional Discovery on August 23, 2024. [Doc. 95]. On April 11, 2025 and May 8, 2025, Defendants filed two separate Notices of Supplemental Authority. [Doc. 103; Doc. 104]. On June 4, 2025, Defendants filed an additional Notice of Supplemental Authority, [Doc. 105], and on June 5, 2025, Plaintiffs filed an additional Notice of Supplemental Authority, [Doc. 106; Doc. 107]. The supplemental authorities do not pertain to the issue of standing and will not be addressed in this Order.

2024 to allow Plaintiffs a fulsome opportunity to respond to the standing inquiry. [Doc. 96 at 19]. Plaintiffs filed a consolidated Response to OSC on November 1, 2024, and a Notice of Supplemental Authority on November 8, 2024. [Doc. 100; Doc. 101]. Defendants filed their Memorandum, [Doc. 102]. The Court's analysis in this Order focuses solely on the issue of standing.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). A court may not simply presume jurisdiction to reach the substantive issues before it. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016). Rather, a federal court must resolve jurisdictional issues before reaching the merits. *United States v. Springer*, 875 F.3d 968, 973 (10th Cir. 2017).

The doctrine of standing serves as "[o]ne of those landmarks" in identifying "the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014) (standing is jurisdictional). Under Article III, standing requires

three elements: injury in fact, causation, and redressability. *Colo. Outfitters*, 823 F.3d at 544. These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Id*. at 561 (quotation omitted). At the summary judgment stage, a plaintiff's standing must be supported by specific evidentiary facts and not by mere allegations. *Id*. When a case involves multiple plaintiffs or claims, each plaintiff must prove standing to seek relief for each claim. *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007).

As previously noted, "the proof required to establish standing increases as the suit proceeds." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1162 (10th Cir. 2023) (quotation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, while on summary judgment, the plaintiff must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id*. (cleaned up).

## ANALYSIS

### I.    Individual Plaintiffs

In its September 30, 2024 Order, the Court concluded that the Individual Plaintiffs had failed to adduce sufficient facts to support standing to challenge any portion of the Ordinances, and issued an Order to Show Cause as to why summary judgment should not be granted in favor of Defendants on the basis of standing. [Doc. 96 at 10–15]. The Individual Plaintiffs must demonstrate standing with respect to each part of each Ordinance that they challenge. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) (stating that "the Court's standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press."). The Municipal Ordinances prohibit the

current possession of assault weapons and LCMs ("the Current Possession Clauses") and, along with the Boulder County Ordinance, the future sale, acquisition, or transfer of assault weapons and LCMs ("the Future Conduct Clauses").  *See generally* [Doc. 96-1; Doc. 96-2; Doc. 96-3; Doc. 96-4].  The Boulder County Ordinance contains no prohibition on present possession of assault weapons or LCMs.  [Doc. 96-4].

Defendants do not now contest that Individual Plaintiffs LaFonte and Jones have standing to challenge the City of Louisville and the City of Boulder's LCM Possession Clauses, respectively.  [Doc. 102 at 7, 9].  However, Defendants continue to challenge Plaintiffs' assertion of standing to challenge the remainder of Possession Clause claims with respect to assault weapons, the remainder of Possession Clause Claims by Plaintiffs Walker and Madonna with respect to LCMs as to the Superior and Boulder Ordinances, respectively, and all claims by the Individual Plaintiffs related to the Future Conduct Clauses.  [*Id.* at 10–21].

In Plaintiffs' Response to OSC, Plaintiffs include additional Declarations ("Supplemental Declarations") that provide further detail regarding what assault weapons and LCMs the Individual Plaintiffs possess and when they purchased them.  *See* [Doc. 100-1; Doc. 100-2; Doc. 100-3: Doc. 100-5; Doc. 100-6].  They also provide further detail on their plans to purchase and transfer firearms and LCMs that the Ordinances would

prohibit.  *See generally* [Doc. 100].  The following describes the contents of each Individual Plaintiff's Supplemental Declaration.[6]

**Plaintiff Jones.**  Plaintiff Jones declares that he owns 12 assault weapons, namely:  an S&W Sport I rifle (purchased on September 8, 2015); an S&W Sport II rifle (purchased on June 23, 2016); a Colt Expanse CE1000 rifle (purchased on July 21, 2016); eight S&W 6906 Magazines with a capacity of 12 rounds (purchased in August 2017); and a HEXMAG HX-AR Series 2 Magazine with a capacity of 15 rounds (purchased in July 2016).  [Doc. 100-2 at ¶¶ 1–6].  Mr. Jones states that "[he] did not register [his] 'assault weapons' because [he] do[es] not want the firearms [he] own[s] recorded in a government database."[7]  [*Id.* at ¶ 7].  He alleges that all of the assault weapons he owns would be prohibited under the Boulder Ordinance.  [*Id.* at ¶¶ 1–6].

**Plaintiff Kehoe.**  Plaintiff Kehoe declares that he owns the following:  a Zastava ZPAPM70 7.62x39 (purchased on June 30, 2023); a Rock River LAR-15 5.56 (purchased in May 2009); a Colt LE6920 5.56 (purchased in August 2019); a Colt LE6920 5.56 (c2) (purchased on March 17, 2022); and an Aero Precision M5 .308 semi-auto rifle (purchased on March 15, 2024).  [Doc. 100-3 at ¶ 2].  Mr. Kehoe states that the unincorporated Boulder County Ordinance defines each of these as assault weapons because "each of them is a semi-automatic center-fire rifle that has the capacity to accept a detachable magazine and each has a pistol grip."  [*Id.* at ¶ 3].  Further, Plaintiff Kehoe declares that he owns the following magazines:  two Sig Sauer 30-round magazines; one

---

[6] Unless otherwise noted, references to Declarations by each Plaintiff refers to statements made in his Supplemental Declaration.

[7] The Court reads Plaintiffs' assertions regarding "registration" of assault weapons to refer to the certification provisions in the Ordinances.

Glock 19 15-round magazine; four Springfield Hellcat 13-round magazines; and one Springfield Hellcat 15-round magazine. [*Id.* at ¶ 4]. He alleges that the Boulder County Ordinance would prohibit each of these magazines because they are "large capacity magazine[s] . . . [with] a capacity in excess of ten rounds." [*Id.* at ¶ 5]. Plaintiff Kehoe makes no statement regarding whether he has obtained a certificate or would obtain a certificate for his assault weapons. *See generally* [*id.*].

**Plaintiff LaFonte.** Plaintiff LaFonte declares that he owns a Daniel Defense DDM4V7 (purchased June 10, 2022); a Palmetto State Armory PA-15 (purchased February 28, 2024); and several Mission First Tactical 15/30PM556 AR-15 Magazines with capacities varying from 12 to 15 rounds (purchased between June 2022 and March 2024). [Doc. 100-4 at ¶¶ 2–22]. Mr. LaFonte alleges that the Louisville Ordinance would prohibit his possession of the Daniel Defense DDM4V7 "because it is a semi-automatic center-fire rifle that has the capacity to accept a detachable magazine and has a pistol grip, a telescoping stock, a flash suppressor, and a shroud that completely encircles the barrel," [*id.* at ¶ 5]; the Palmetto State Armory PA-15 "because it is a semi-automatic center-fire rifle that has the capacity to accept a detachable magazine and has a pistol grip, a telescoping stock, a flash suppressor, and a shroud that completely encircles the barrel," [*id.* at ¶ 9]; and all of his magazines "because each has a capacity of" 12, 14, or 15 rounds, [*id.* at ¶¶ 14, 22]. Mr. LaFonte states that he did not "register [his] 'assault weapons' because [he] do[es] not want the firearms [he] own[s] recorded in a government database." [*Id.* at ¶ 27].

**Plaintiff Madonna.** Plaintiff Madonna declares that he owns a Colt Model 6920 rifle purchased in "approximately 2010" and "approximately 15 magazines with a capacity

of 30 rounds." [Doc. 100-5 at ¶¶ 2–3]. Mr. Madonna alleges that the City of Louisville Ordinance would prohibit the ownership of his Colt because "it is a semi-automatic center-fire rifle that has the capacity to accept a detachable magazine and it has a pistol grip." [*Id.* at ¶ 2]. Mr. Madonna states that he "did not register [his] rifle because [he] was a police officer for 40 years and thus think[s] it is absurd to require [him] to register [his] firearms with the government." [*Id.* at ¶ 4].

***Plaintiff Walker.*** Finally, Plaintiff Walker declares that he owns: a Glock 17 (purchased in the 1990s); a Russian SKS (purchased in the 1990s); a Swedish army rifle (purchased "more than 10 years ago"); and a Browning shotgun (no purchase date listed). [Doc. 100-6 at ¶ 2]. Further, he declared that he owns LCMs with 19, 21, and 33 rounds. [*Id.* at ¶ 4]. Plaintiff Walker states that the Superior Ordinance would prohibit his possession of the LCMs because they have more than ten rounds. [*Id.*]. Plaintiff Walker makes no statement regarding whether he has obtained a certificate or would obtain a certificate for his assault weapons. *See generally* [*id.*].

### A.    Current Possession Clauses

#### 1.    Assault Weapons

***Injury in Fact.*** The injury in fact element of the standing analysis requires that a plaintiff "offer something more than the hypothetical possibility of injury. The alleged injury must be concrete, particularized, and actual or imminent." *Colo. Outfitters*, 823 F.3d at 544. "[I]mminence is . . . a somewhat elastic concept, [but] it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III

purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted).

In *Colorado Outfitters*, the plaintiffs brought a Second Amendment pre-enforcement challenge to a Colorado criminal statute. 823 F.3d at 542. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") observed that to satisfy the requirements of standing, "a plaintiff must typically demonstrate (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the challenged statute, and (2) that there exists a credible threat of prosecution thereunder." *Id.* at 545 (cleaned up). In *DeWilde v. Attorney General of United States*, the Tenth Circuit considered whether a plaintiff demonstrated standing to bring a pre-enforcement challenge to a firearm regulation based on the Second Amendment. *See* No. 23-8054, 2024 WL 1550708, at *1–2 (10th Cir. Apr. 10, 2024). Recently in *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 110–11 (10th Cir. 2024) ("*Polis*"), the Tenth Circuit concluded that a plaintiff's declaration of a present intent to purchase a prohibited firearm in the future can be considered an injury in fact for standing purposes. The Court follows the Tenth Circuit precedent in its standing analysis.

The Court first turns to whether Plaintiffs have presented sufficient evidence to establish that the Ordinances proscribe their existing conduct. The Municipal Ordinances prohibit the possession of certain assault weapons purchased after July 1, 2022, but the Municipal Ordinances allow individuals to maintain possession of assault weapons purchased prior to that date if individuals meet certain conditions. [Doc. 96-1 at 16 (§ 10-9-240(a)–(e))]. The Municipal Ordinances outright prohibit possession of LCMs. [*Id.*]. Individuals may maintain possession of otherwise prohibited assault weapons if they

purchased them before July 1, 2022 and obtain a certificate for the assault weapon.  *See,
e.g.*, [*id.* at 16 (§ 10-9-240(a))].   The Court must be able to discern, based on factual
evidence in the record at the summary judgment stage, that Plaintiffs have established
an injury in fact.

As their Supplemental Declarations state, Plaintiffs Jones, Kehoe, LaFonte,[8]
Madonna, and Walker each possess assault weapons purchased before July 1, 2022 that
have characteristics that would make them prohibited under the Ordinances.  [Doc. 100-
2 at ¶¶ 1–6; Doc. 100-3 at ¶ 2; Doc. 100-4 at ¶ 2; Doc. 100-5 at ¶¶ 1; Doc. 100-6 at ¶ 2].
Mr. Kehoe resides in unincorporated Boulder County, where the governing Ordinance
does not contain a Possession Clause, so Mr. Kehoe's statements regarding current
possession of assault weapons need not be addressed.  *See* [Doc. 100-3 at ¶ 2].   Mr.
Jones and Mr. LaFonte state that they have not obtained certificates for their assault
weapons because they "do not want the firearms [they] own recorded in a government
database," [Doc. 100-2 at ¶ 7; Doc. 100-4 at ¶ 27], and Mr. Madonna states that he has
not registered his rifle because he thinks it is "absurd to require [him] to register [his]
firearms with the government," [Doc. 100-5 at ¶ 4].  Mr. Walker does not indicate whether
he has completed the certification for his weapons, nor does he make a statement
whether he would complete a certification for his weapons.  *See generally* [Doc. 100-6].
As a result, Defendants assert that "[a]t the time the Complaint was filed, the Municipal
Ordinances allowed [Plaintiffs] to retain those weapons subject only to a certification

_____

[8] While Mr. LaFonte avers that he purchased a Palmetto State Armory PA-15 on February
28, 2024, [Doc. 100-4 at ¶¶ 6–7], his possession of this firearm cannot establish standing
because standing is determined at the time that the action is brought, not events
subsequent to the filing of an action, *see Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir.
2011).

requirement that they voluntarily eschewed and do not challenge in this case." [Doc. 102 at 10]. Thus, Defendants argue, Individual Plaintiffs lack standing because they have voluntarily inflicted their injuries. [*Id.*].

Contrary to any suggestion otherwise, [Doc. 100 at 7], each Plaintiff bears the burden to establish his own standing,[9] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). In *Clapper*, the Supreme Court concluded that a party may not generate standing for themselves through a self-inflicted harm. 568 U.S. at 416. The injury inquiry in the instant case thus turns on whether Plaintiffs' failure to obtain a certificate to maintain possession of their assault weapons acquired before July 1, 2022 is a self-inflicted injury that negates their standing to challenge the Current Possession Clauses of the Municipal Ordinances.

In its Order to Show Cause, the Court directed Plaintiffs to address this issue in particular. [Doc. 96 at 15 n.9]. However, Plaintiffs Jones, LaFonte, and Madonna have not addressed this argument in the Response to OSC and cite no authority that states that a plaintiff's voluntary refusal to obtain a certificate is an injury in itself and not a self-inflicted injury that negates standing. *See generally* [Doc. 100]. Respectfully, the Court cannot create jurisdiction where a party has not adequately demonstrated that jurisdiction is proper. *See Lebahn v. Owens*, 813 F.3d 1300, 1307–08 (10th Cir. 2016) (the Court has no duty to perform research for a party); *Nova Health Sys. v. Gandy*, 416 F.3d 1149,

---

[9] Though technically correct that only one plaintiff must have standing to avoid dismissal of a claim against Louisville, *see Does 1–11 v. Bd. Of Regents of Univ. of Colo.*, 100 F.4th 1251, 1263 (10th Cir. 2024), Mr. Madonna's and Mr. LaFonte's standing must be evaluated separately.

1154 (10th Cir. 2005) ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." (quotation omitted)).

Mr. Walker also has not demonstrated an injury. If Mr. Walker declines to obtain a certificate for his assault weapons, like Mr. Jones, Mr. LaFonte and Mr. Madonna, he also has not addressed whether the requirement to obtain a certificate is an injury in itself. If Mr. Walker has certified his weapons, he is permitted to maintain them and lacks a concrete injury of the deprivation of his weapons.[10]

Plaintiffs have not carried their burden to establish standing to challenge the Current Possession Clauses of any of the Municipal Ordinances with respect to assault weapons, and this Court does not reach the issues of causation and redressability.

**2.    LCMs**

Plaintiffs Jones, Kehoe, LaFonte, Madonna, and Walker declare that they possess LCMs that would be prohibited by the Ordinances because they contain over ten rounds. [Doc. 100-2 at ¶ 6; Doc. 100-3 at ¶ 5; Doc. 100-4 at ¶¶ 14, 22; Doc. 100-5 at ¶3; Doc. 100-6 at ¶ 4]. Unlike the certification requirement for assault weapons, the Municipal Ordinances provide no certification opportunity for LCMs and simply outright prohibit their possession. *See generally* [Doc. 96-1; Doc. 96-2; Doc. 96-3]. Defendants do not contest that Plaintiffs LaFonte and Jones have standing to challenge the LCM Possession Clauses of the Louisville and Boulder City Ordinances, respectively, [Doc. 102 at 10], and this Court has similarly satisfied itself that both Plaintiff LaFonte and Plaintiff Jones have

---

[10] Plaintiff Kehoe resides in unincorporated Boulder County, where the governing Ordinance does not contain a Possession Clause. While he obtained one of his firearms on or about March 15, 2024, [Doc. 100-3 at ¶ 2], and he possesses LCMs that would be prohibited because they contain over ten rounds, [*id.* at ¶ 5], the Boulder County Ordinance has been stayed during the pendency of this action, [Doc. 29].

standing.  And as discussed above, the Boulder County Ordinance does not include a Possession Clause.[11]  Accordingly, this Court's analysis focuses on Mr. Madonna and Mr. Walker.  Defendants Louisville and Superior do not appear to challenge that Plaintiffs Madonna and Walker have adequately demonstrated that each has suffered a cognizable injury in fact or contest causation, the second element of the standing analysis.  *See generally* [Doc. 102].  Rather, those Defendants appear to contest the redressability element of standing.  [*Id.* at 14–16].

The third element of the standing analysis, redressability, requires it to "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (quotation omitted).  The plaintiff must demonstrate that a judgment in his favor will resolve a concrete injury, *Nova Health Sys.*, 416 F.3d at 1158, and the mere possibility that the relief may resolve plaintiff's injuries does not meet the standard of the redressability prong, *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012).

In their respective Supplemental Declarations, Mr. Walker and Madonna state that they own LCMs with more than 15 rounds.  [Doc. 100-5 at ¶ 3; Doc. 100-6 at ¶ 4].  Specifically, Mr. Madonna declares that he possesses "approximately" 15 LCMs with a capacity of 30 rounds each.  [Doc. 100-5 at ¶ 5].  Plaintiff Walker declares that he possesses three LCMs with 19, 21, and 33 rounds, respectively.  [Doc. 100-6 at ¶ 4].  Defendants Superior and Louisville argue that Plaintiffs Walker and Madonna cannot satisfy the redressability prong, and thus do not have standing, because the LCMs they wish to continue to possess are otherwise prohibited under a pre-existing Colorado state

---

[11] *See supra* n.10.

law and Plaintiffs Walker and Madonna have not challenged the Colorado state law.  [Doc. 102 at 14].  Specifically, Colorado Revised Statute section 18-12-301(2)(a)(I) states that a "[l]arge-capacity magazine" means "[a] fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is designed to be readily converted to accept, more than fifteen rounds of ammunition."  Colo. Rev. Stat. § 18-12-301(2)(a)(I).  Furthermore, section 18-12-302(1)(a) states that "[e]xcept as otherwise provided in this section, on and after July 1, 2013, a person who sells, transfers, or possesses a large-capacity magazine commits a class 2 misdemeanor."  *Id.* § 18-12-302(1)(a).[12]

These statutes prohibit all of Plaintiff Walker and Madonna's magazines that exceed 15 rounds.  *See id.* § 18-12-301(2)(a)(I); *id.* § 18-12-302.  Superior and Louisville distinguish the Tenth Circuit's recent determination of redressability in *Polis* from the circumstances presented in this action by Plaintiffs Walker and Madonna.  [Doc. 102 at 15 n.10].  In *Polis*, an additional pre-existing federal statute precluded individuals under the age of 21 from purchasing firearms.  121 F.4th at 111.  The defendants argued that the plaintiffs lacked standing to challenge the Colorado statute prohibiting the same because an individual plaintiff's purchase of a firearm while under the age of 21 would nevertheless be illegal under the federal law.  *Id.*  However, the Tenth Circuit concluded that the statute did not preclude the plaintiff from satisfying the redressability element.  *Id.* at 111–12.  One of the individual plaintiffs in *Polis* indicated that he intended to "lawfully purchase" a firearm, which the Tenth Circuit understood to mean that he planned to purchase a firearm that complied with federal law but would otherwise be prohibited by

---

[12] The Court cites to the 2022 version of the statute, the applicable version at the time this suit was brought.  *See Jordan*, 654 F.3d at 1019.

the proposed Colorado statute in question in the case. *Id.* Accordingly, the Tenth Circuit concluded that the plaintiff's injury was redressable because he would otherwise be able to purchase a firearm since he indicated that he planned to do so lawfully. *Id.*

Here, Plaintiffs Walker and Madonna already possess prohibited LCMs and do not explain how their maintenance of such LCMs could be lawful under the Colorado statute but not under the Superior and Louisville Ordinances, respectively. *See generally* [Doc. 100-5; Doc. 100-6]. Accordingly, this Court finds *Polis* distinguishable and concludes that Plaintiffs Walker and Madonna have failed to carry their burden to establish standing to challenge the LCM provisions of the Current Possession Clauses of the Superior and Louisville Ordinances.

Based on the above, all of the Individual Plaintiffs have failed to carry their burden to adequately establish standing to challenge the assault weapons Possession Clauses of the Municipal Ordinances, and Plaintiffs Walker and Madonna similarly have failed to carry their burden to adequately establish standing to challenge the LCM Possession Clauses for Superior and Louisville, respectively. Accordingly, the only remaining viable challenges to the Current Possession Clauses of the Municipal Ordinances lie with Plaintiffs Jones and LaFonte against Defendants Boulder and Louisville, respectively.

**B.    Future Conduct Clauses**

The Court next considers the Individual Plaintiffs' standing with respect to the Future Conduct Clauses of the Ordinances. Defendants argue that all Plaintiffs lack standing to challenge the Future Conduct Clauses of the Ordinances. [Doc. 102 at 8, 16]. Specifically, Defendants argue that the Individual Plaintiffs' "generalized statements of intent to purchase assault weapons and LCMs at unspecified times are insufficient to

establish their standing." [*Id.* at 8]. Defendants argue that all Individual Plaintiffs have failed to articulate a concrete plan at the time of filing the case. [*Id.* at 19–21]. This Court respectfully agrees with respect to Plaintiff Walker, who articulates no intent to buy any assault weapons or LCMs in the future. *See* [*id.* at 19; Doc. 100-6]. Similarly, Plaintiff Kehoe declares that he had already followed through with his plans to buy additional assault weapons on March 15, 2024, and makes no statements with respect to future purchases of LCMs. [Doc. 102 at 19; Doc. 100-3]. Accordingly, neither Mr. Walker nor Mr. Kehoe has standing to challenge the Future Conduct Clauses of the Superior Ordinance or the Boulder County Ordinance, respectively. Thus, this Court focuses its standing analysis with respect to assault weapons and LCMs on the present intentions of Plaintiffs Jones, Madonna, and LaFonte as to the Boulder and Louisville Ordinances.

### 1.    Assault Weapons

***Injury in Fact.*** The injury inquiry asks whether Individual Plaintiffs have a present intent and sufficiently concrete plan to purchase assault weapons and/or LCMs in the future. Originally, each Individual Plaintiff declared that he had acquired assault weapons and LCMs in the past and he "would like to continue to be able to do so in the future." [Doc. 76-7 at ¶¶ 11–12; Doc. 76-8 at ¶¶ 10–11; Doc. 76-9 at ¶¶ 11–12; Doc. 76-10 at ¶¶ 11–12; Doc. 76-12 at ¶¶ 11–12]. Plaintiffs' Supplemental Declarations provide more specificity, but only Plaintiff LaFonte indicates that he has "current plans to purchase a Daniel Defense DD5V4 (7.62×51mm NATO) within the next year," a "Glock 19 Gen5 with a threaded barrel in the next 6 months," and "3 additional 12-round P365 XL magazines within one year." [Doc. 100-4 at ¶¶ 24–26]. Neither Plaintiff Jones nor Plaintiff Madonna makes any mention of any present intention to purchase assault weapons in the future.

*See generally* [Doc. 100-2; Doc. 100-5]. Thus, this Court respectfully concludes—consistent with its prior ruling—that generalized statements made by Mr. Jones and Mr. Madonna in their first Declarations, [Doc. 76-7 at ¶ 11; Doc. 76-10 at ¶ 11], without more, are still insufficient to support standing, and the supplemental authority cited by Plaintiffs does not change this Court's analysis, *see* [Doc. 103; Doc. 104; Doc. 105; Doc. 106; Doc. 107].

This Court reaches a different conclusion as to Mr. LaFonte. As discussed above, in *Polis*, the Tenth Circuit concluded that a plaintiff's declaration of a present intent to purchase a prohibited firearm in the future is sufficient to establish an injury in fact for standing purposes. 121 F.4th at 111. In that case, an individual plaintiff under the age of 21 articulated his desire and plan to purchase a firearm that the statute would prohibit. *Id.* at 107. Specifically, the individual plaintiff submitted a declaration that stated the following:

> 1. My name is Adrian Pineda. I am over the age of 18 and have personal knowledge of the matters set forth in this Declaration.
>
> 2. I am over the age of 18 but under the age of 21 and a citizen of Colorado and the United States. I have never been charged with nor convicted of any misdemeanor or felony offense. It is my present intention and desire to lawfully purchase a firearm for lawful purposes, including self-defense in my home. I am or soon will be precluded from purchasing a firearm by SB23-169, which bars me from exercising this fundamental right to keep and bear arms for lawful purposes protected by the Second Amendment.

*Id.* The Tenth Circuit concluded that the plaintiff's statements were sufficiently concrete to satisfy the injury in fact required for standing, because his future intended conduct would violate the challenged statute once it went into effect. *Id.* at 110.

Mr. LaFonte plans to purchase one assault weapon within six months, another assault weapon within one year, and LCMs with 12 rounds each within one year. [Doc.

100-4 at ¶¶ 24–26]. Therefore, applying *Polis,* the Court concludes that Mr. LaFonte has articulated sufficiently concrete plans to purchase one or more assault weapons that the Future Conduct Clause of the Louisville Ordinance would prohibit to satisfy the injury in fact prong.

> ***Causation and Redressability.*** Defendant Louisville does not appear to challenge whether causation and redressability is satisfied if Mr. LaFonte can establish an injury in fact. [Doc. 102 at 20–21]. The Court briefly turns to each element with respect to the Future Conduct Clauses of the Louisville Ordinance to satisfy itself that standing exists. There is no evidence in the record that Louisville has declined to apply the law to Mr. LaFonte. Nor is there any argument that a separate, unchallenged Colorado statute would preclude the purchase of the firearms that Mr. LaFonte indicates that he has a present intention to purchase. Accordingly, consistent with *Polis*, this Court concludes that both the causation and redressability prongs have been satisfied to conclude that Mr. LaFonte has standing to challenge the Future Conduct Clause of the Louisville Ordinance. *See Polis*, 121 F.4th at 111.

> **2.    LCMs**

The Court next turns to whether Mr. Jones, Mr. Madonna, or Mr. LaFonte has adduced sufficient evidence to establish standing to challenge the Future Conduct Clauses with respect to LCMs. Plaintiff Jones plans to purchase a "CZ compact 75D magazine with a capacity of 14 rounds within the next year." [Doc. 100-2 at ¶ 8]. Plaintiff Madonna declares that he has "current plans to replace at least two of [his] 30 round magazines within the next year because they are worn out." [Doc. 100-5 at ¶ 5]. Plaintiff

LaFonte declares that he "intend[s] to purchase 3 additional 12-round P365 XL magazines" in one year. [Doc. 100-4 at ¶ 26].

Defendants Superior and Louisville first argue that each of these statements is insufficient because these Plaintiffs did not make such statements at the time the action was filed, and their Second Declarations are not relevant. [Doc. 102 at 19–21]. This argument is not well-taken. While it may have been persuasive had Defendants moved, in their own right, for summary judgment based on standing, they did not. *See generally* [Doc. 78]. Instead, standing was only raised in response to Plaintiffs' Motion for Summary Judgment. *See* [Doc. 82 at 25–28]. And because a party may not include a motion in response to an original motion, D.C.COLO.LCivR 7.1(d), this Court issued an Order to Show Cause to allow Plaintiffs a fulsome opportunity to respond to the standing inquiry on September 30, 2024, [Doc. 96]. Thus, in light of the strong preference of courts to dispose of litigation on the merits and the lack of any discernible prejudice to Defendants, *see, e.g.*, *Gulley v. Orr*, 905 F.2d 1383, 1386 (10th Cir. 1990), this Court respectfully declines Defendants' request to ignore the Declarations executed by Plaintiffs in October 2024 in response to the Court's Order to Show Cause—particularly since they themselves appear to consider them in withdrawing the standing arguments with respect to Mr. Jones and Mr. LaFonte as to the Current Conduct Clauses of the Boulder and Louisville Ordinances, *see* [Doc. 102 at 9].

Defendants Boulder and Louisville further argue that even considering the Supplemental Declarations, Mr. Jones, Mr. Madonna, and Mr. LaFonte's intentions to purchase LCMs in the future are insufficiently concrete. [*Id.* at 19–21]. Defendants rely on *Colorado Outfitters*, a case in which the plaintiff stated that eventually her LCMs would

wear out, and that it would be possible that she would lose her LCMs.  [*Id.* (citing 823 F.3d at 551)].  The *Colorado Outfitters* plaintiff argued that the eventual wearing out or the possible loss generated an injury in fact, but the Tenth Circuit concluded that a generalized desire to purchase an LCM at some unspecified time within a year was inadequate to satisfy standing.  823 F.3d at 551.  Defendants further rely on *DeWilde v. Attorney General of United States*, in which the Tenth Circuit stated that the plaintiff's vague desires to own an M16 machinegun for all lawful purposes, when he gave no indication as to whether he had ever possessed a firearm or when or if he planned to acquire or manufacture a machinegun or transfer one, was insufficient for the purposes of establishing standing.  2024 WL 1550708, at *3; *see also* [Doc. 102 at 19–21].

This Court acknowledges that the Tenth Circuit's respective holdings in *DeWilde*, *Colorado Outfitters*, and *Polis* are difficult to square.  But the Court finds that the circumstances of the instant case are most analogous to those of *Polis*.  Accordingly, this Court concludes that Plaintiffs Jones, Madonna, and LaFonte have adequately established injury in fact and causation to challenge the Future Conduct Clauses of the Boulder and Louisville Ordinances.  However, as discussed above, *see supra* Section I.B.2, Mr. Madonna states that he has "current plans to replace at least two of [his] 30 round magazines within the next year because they are worn out."  [Doc. 100-5 at ¶ 5].  Unlike Mr. Jones and Mr. LaFonte, Mr. Madonna's plans would run afoul of the pre-existing state statute, which prohibits LCMs with more than 15 rounds.  *See* Colo. Rev. Stat. § 18-12-301(2)(a)(I); *see id.* § 18-12-302.  Therefore, even if he successfully challenges the Future Conduct Clauses of the Louisville Ordinance, his proposed future conduct would nevertheless still be illegal under Colorado state law.  Accordingly, Mr.

Madonna cannot demonstrate that his injury is redressable, and he does not have standing to challenge the Future Conduct Clauses of the City of Louisville Ordinance.

Based on the above, only Plaintiff LaFonte has introduced sufficient evidence to establish standing with respect to the Future Conduct Clause of the Louisville Ordinance with respect to assault weapons. Plaintiffs Jones and LaFonte have also introduced sufficient evidence to establish their standing with respect to the Future Conduct Clauses of the Boulder and Louisville Ordinances as to LCMs, respectively.

## II.    Organizational Standing

An organization may bring claims on behalf of its members so long as (a) its members would otherwise have standing to sue in their own right; (b) the interests the organization seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *N. N.M. Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*, 30 F.4th 1210, 1219 (10th Cir. 2022); *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (concluding that organizations must "identify members who have suffered the requisite harm"); *cf. Nat'l Ass'n for Gun Rights v. Polis*, No. 24-cv-00001-GPG-STV, 2024 WL 3085865, at *9 (D. Colo. May 2, 2024) (finding no organizational standing when members did not have standing in their own right).[13] Organizational standing can be proper even if the members are identified anonymously or with pseudonyms. *Speech First, Inc. v.*

---

[13] Organizations may also have standing for injuries they directly sustain, "but organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 369 (2024). But here, it appears that that RMGO and NAGR invoke standing based on representation of their individual members. *See* [Doc. 76 at 24–26; Doc. 100 at 9–12]. Thus, the Court focuses solely on the theory of associational standing.

*Shrum*, 92 F.4th 947, 951 (10th Cir. 2024) (citing *Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1254 n.4 (10th Cir. 2017)). The Organizational Plaintiffs continue to bear the burden of proof as to each element of standing. *See Lujan*, 504 U.S. at 561; *see also Speech First, Inc.*, 92 F.4th at 950 n.1 (observing that at the summary judgment stage, a district court may verify the existence and status of anonymous plaintiffs for purposes of standing).

### A.   Members' Standing

The Court first turns to the first element of organizational standing, namely whether individual members have standing to sue in their own right.  Initially, Defendants argued that RMGO and NAGR could not establish organizational standing with respect to the Current Possession Clauses because they had not established that any of their members may sue in their own right.  [Doc. 82 at 27].  In their Memorandum, Defendants do not contest that RMGO and NAGR "have standing to challenge [the] Louisville and Boulder City's LCM Possession Clauses," but assert that RMGO and NAGR lack standing to challenge all other aspects of the Louisville and Boulder City Ordinances and all aspects of the Superior and unincorporated Boulder County Ordinances.  [Doc. 102 at 7].

### 1.   Standing based on Plaintiffs Jones and LaFonte

Applying these principles to the Court's findings above, this Court concludes that RMGO and NAGR have organizational standing through their member, Plaintiff Jones, to challenge the Current Possession and Future Conduct Clauses of the Boulder Ordinance with respect to LCMs.  [Doc. 76-7 at ¶ 2].  The Court further concludes that RMGO has organizational standing through its member, Mr. LaFonte, to challenge the Future Conduct Clause of the Louisville Ordinance with respect to assault weapons and the

Current Possession and Future Conduct Clauses of the Louisville Ordinance with respect to LCMs.

Thus, this Court's frames Defendants' remaining arguments regarding RMGO and/or NAGR's standing consistent with the framework used above and considers whether either or both organization has standing to challenge: (1) the Current Possession Clauses of any of the Municipal Ordinances with respect to assault weapons; (2) the Current Possession Clauses of the Superior Ordinance with respect to LCMs when Plaintiff Walker lacks individual standing; (3) the Future Conduct Clause of the Superior, Boulder, and Boulder County Ordinances with respect to assault weapons when Plaintiffs Walker, Jones, and Kehoe respectively lack individual standing; and (4) the Future Conduct Clauses of the Superior and Boulder County Ordinances with respect to LCMs when Plaintiffs Walker and Kehoe lack individual standing, respectively.

### 2.    Hannah Hill as a Representative

In Plaintiffs' Response to OSC, Plaintiffs submit the Declaration of Hannah Hill ("Ms. Hill"), Vice President of the National Foundation for Gun Rights—a third party to this action—who manages litigation for NAGR and "often" manages litigation for RMGO. [Doc. 100-1 at ¶ 1]. Defendants first argue that Ms. Hill's testimony is inadmissible under Rule 26(a), or, in the alternative, is inadmissible hearsay. [Doc. 102 at 22–23]. The Court considers these arguments in turn.

***Disclosure under Rule 26(a)(1).*** District courts in the Tenth Circuit "have held that initial disclosures generically listing custodian of records or corporate representatives [are] insufficient [to comply] with Rule 26(a)(1)(A)(i)." *MTGLQ Invs., LP v. Wellington*, No. 17-cv-00487-KG-LF, 2018 WL 6416865, at *2 (D.N.M. Dec. 6, 2018) (quotation omitted),

*aff'd*, 856 F. App'x 146 (10th Cir. 2021); *see, e.g.*, *Tomelleri v. Zazzle, Inc.*, No. 13-cv-02576-EFM-TJJ, 2014 WL 12773569, at *2 (D. Kan. Dec. 12, 2014) ("[D]esignating a 'corporate representative,' without naming specific individual(s) is inadequate to satisfy initial disclosure obligations under Rule 26(a)(1)(A)." (quotation omitted)); *Hoffmeister v. United Student Aid Funds, Inc.*, 818 F. App'x 802, 805 (10th Cir. 2020) (concluding that the district court did not abuse its discretion when it ordered a party to disclose the names of corporate representatives).  On this basis, Plaintiffs' identification of "[a] representative of the Rocky Mountain Gun Owners" and "[a] representative of the National Association for Gun Rights" in their initial disclosures, *see* [Doc. 102-1 at ¶¶ 7–8], is insufficient to satisfy Rule 26(a).

A violation of Rule 26(a)(1), however, does not necessarily lead to preclusion of a witness.  Rule 37(c) governs violations of Rule 26(a).  The determination as to whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the Court.  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."  *Id*.  However, the Court's consideration is guided by the following four factors:  (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness.  *Id.*

Defendants' sole argument regarding Ms. Hill's Declaration is that she was not disclosed by name as a representative of either RMGO or NAGR.  But unlike the circumstances in *Watts v. Anthem, Inc.*, No. 18-cv-01732-NYW, 2020 WL 13933266 (D. Colo. Feb. 21, 2020), which Defendants cite in support, *see* [Doc. 102 at 22], Plaintiffs

have never suggested to Defendants that Ms. Hill would not testify, *see Watts*, 2020 WL 13933266, at \*4. Further, it has been clear since the filing of Plaintiffs' Motion for Summary Judgment in October 2023 that RMGO and NAGR were intending to rely upon their members' individual standing to justify their respective organizational standing. [Doc. 76 at 24–26]. Based on these particular circumstances, the Court is not persuaded that the failure to disclose Ms. Hill by name in the initial disclosures prejudiced Defendants.[14] *See Deere v. XPO Logistics Freight, Inc.*, No. 17-cv-01173-RM-KLM, 2019 WL 699112, at \*3 (D. Colo. Feb. 20, 2019) (declining to strike an affidavit when the "sole proffered reason for striking" the affidavit was that the witness was "previously undisclosed"), *aff'd*, 798 F. App'x 278 (10th Cir. 2020).

*Hearsay.* With respect to Defendants' hearsay arguments, *see* [Doc. 102 at 23], the Court notes that Ms. Hill's testimony must be admissible at trial, but need not be in a form that would be admissible at trial at this stage of the litigation. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). At the summary judgment stage, "a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross*

---

[14] The Court briefly considers whether Ms. Hill may speak on behalf of the organizations under its "independent obligation to assure that standing exists." *Summers*, 555 U.S. at 499. The doctrine of agency law "attributes the legal consequences of one person's action to another person" or entity. *State Farm Mut. Auto. Ins. Co. v. Johnson*, 396 P.3d 651, 655 (Colo. 2017). Ms. Hill's Declaration does not specify the legal relationship between Ms. Hill and/or National Foundation for Gun Rights and RMGO and NAGR. *See generally* [Doc. 100-1]. Nor does Ms. Hill describe what the management of litigation for RMGO and NAGR entails. [*Id.* at ¶ 1]. Nevertheless, Plaintiffs themselves submitted Ms. Hill's Declaration with Plaintiffs' Response to OSC. Under principles of agency law, an organization, as the principal, "can ratify the acts of its agents by acquiescence in or acceptance of the unauthorized acts." *Bielicki v. Terminix Int'l ¥Co., L.P.,* 225 F.3d 1159, 1164 (10th Cir. 2000) (quotation omitted); *Clews v. Jamieson*, 182 U.S. 461, 483 (1901) ("A principal can adopt and ratify an unauthorized act of his agent who in fact is assuming to act in his behalf."). Plaintiffs' submission of her Declaration ratifies Ms. Hill's authority to speak on behalf of both organizations in this particular circumstance.

& *Blue Shield of Kan., Inc*., 452 F.3d 1193, 1199 (10th Cir. 2006); *see also Gross v. Burggraf Constr. Co*., 53 F.3d 1531, 1541 (10th Cir. 1995) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing . . . summary judgment."). However, evidence at this stage need not "be submitted 'in a form that would be admissible at trial.'" *Trevizo*, 455 F.3d at 1160 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Parties may submit affidavits that would otherwise be inadmissible at trial as hearsay on the basis that the evidence contained therein could be presented at trial in an admissible form. *Argo*, 452 F.3d at 1199. Nonetheless, "the content or substance of the evidence must be admissible." *Id.* (quoting *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)). Typically, "[t]he requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form." 11 James Wm. Moore et al., Moore's Federal Practice–Civil § 56.91 (3d ed. 2015) (collecting cases); *see also* Fed. R. Civ. P. 56(c)(2), advisory committee's note to 2010 amendment ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."); *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (declining to consider hearsay statements that proponent failed to show could be presented in admissible form). Applying this standard, this Court finds that Ms. Hill's Declaration should not be precluded from consideration based on a hearsay objection.

## B.    Current Possession Clauses

### 1.    Assault Weapons

***Superior.*** Ms. Hill identifies an RMGO member in the town of Superior, identified as John Doe, who "owns a Bushmaster XM-15, which he purchased in 2014." [Doc. 100-

1 at ¶ 2].   Ms. Hill's Declaration states that John Doe's assault weapons would be prohibited under the Superior Ordinance because they are "semi-automatic center-fire rifle[s] that ha[ve] the capacity to accept a detachable magazine and ha[ve] . . . pistol grip[s]."  [*Id.*].

**Boulder.**   Ms. Hill identifies "NAGR/RMGO members" John Doe ("Doe II"), who "owns a 'VZ 58,'" and MG, who "owned an Aero Precision 556 at the time this action was filed," but "[a]fter this action was filed, he sold the Aero Precision 556 and acquired an AR-15."  [*Id.* at ¶ 3].   Ms. Hill states that each of these are assault weapons because "each is a semi-automatic center-fire rifle that has the capacity to accept a detachable magazine and each has a pistol grip."  [*Id.*].   The Boulder Ordinance would prohibit Doe II's ownership of the "VZ 58" and would have prohibited MG's "Aero Precision 556" at the time the action was filed.[15]

**Louisville.**   Ms. Hill states that an NAGR Member "AM" and an RMGO member "BP" are residents of Louisville.  [*Id.* at ¶ 4].   She states that BP "has owned an AR-15 since 1981" and AM "acquired a Daniels Defense Mark 12 on June 11, 2022," both of which are assault weapons because "each is a semi-automatic center-fire rifle that has the capacity to accept a detachable magazine and each has a pistol grip."  [*Id.*].

These Municipal Ordinances would prohibit John Doe, Doe II, AM, and BP from possessing their assault weapons in Superior, Boulder, and Louisville because they purchased the weapons before July 1, 2022 and owned them at the time the action was

---

[15] *See supra* n.8.

filed.[16]  But Ms. Hill's Declaration makes no statement as to whether John Doe, Doe II, AM, or BP have or are willing to obtain a certificate for their assault weapons.  *See generally* [*id.*].  As discussed above, if individual members have obtained certificates for their weapons with their respective municipalities, they are permitted to maintain them and they lack a concrete injury of the deprivation of their weapons.  *See supra* Section I.A.1.  If they elect not to obtain a certificate for their assault weapons, as Individual Plaintiffs Jones, LaFonte, and Madonna stated in their Declarations, the Organizational Plaintiffs have also not provided any authority to maintain standing in these circumstances.  *See id.*; *see also generally* [Doc. 100].  Therefore, RMGO and NAGR have not presented sufficient evidence to establish standing with respect to the Current Possession Provision of any of the Municipal Ordinances.

2.    **LCMs**

*Superior.*  Ms. Hill identifies two residents of the town of Superior:  (1) an NAGR member identified by the initials RP who "owns a magazine with a capacity of 32 rounds that a family member gave him 12 years ago," [Doc. 100-1 at ¶ 2]; and (2) the RMGO member identified as John Doe above, who owns a "15-round pistol magazine," [*id.*].  RP's 32-round LCM would run afoul of § 18-12-301(2)(a)(I) because it is a "magazine [that] accept[s] more than fifteen rounds of ammunition."  Colo. Rev. Stat. § 18-12-301(2)(a)(I).  However, John Doe's possession of a 15-round pistol magazine would not violate the state statute, and his outright possession of the magazine would otherwise be prohibited by the Superior Ordinance.  Accordingly, RMGO has carried its burden to establish

---

[16] However, MG has since sold his weapon, *see* [Doc. 100-1 at ¶ 3], and thus any injury-in-fact to MG arising from the Louisville Ordinance is now moot, *see S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997).

standing to challenge the Current Possession Clause of the Superior Ordinance proscribes the existing conduct of its member, John Doe, with respect to LCMs.

### C.    Future Conduct Clauses

#### 1.    Assault Weapons

***Superior and City of Boulder.***   Ms. Hill's Declaration does not allege that any members of NAGR or RMGO who reside in Superior or Boulder plan to purchase or transfer assault weapons in the future. *See* [Doc. 100-1 at ¶¶ 1, 3]. Accordingly, RMGO and NAGR have not carried their burden of establishing standing to challenge the Future Conduct Clause of the Superior or Boulder Ordinances with respect to assault weapons.

***Boulder County.***   Ms. Hill's Declaration states that three RMGO and NAGR members in unincorporated Boulder County "will obtain banned rifles or magazines within the next 18 months" and "two [members] plan to transfer banned rifles and magazines." [*Id.* at ¶¶ 6–7]. Specifically, Ms. Hill discusses the future plans of each member: John Doe ("Doe III"), an RMGO member, who "plans to purchase a Wilson Combat Recon Tactical AR-15" and who "plans to give his Smith and Wesson M&P 15 to his adult daughter," JB, a member of both organizations, who "would like to purchase an AK-47." [*Id.* at ¶¶ 5–7].

As discussed above, under *Polis*, a present intention to lawfully purchase a firearm is sufficiently concrete to demonstrate an injury under a pre-enforcement challenge to a statute. 121 F.4th at 110–11. Applying *Polis*, Doe III and JB have indicated a present intent to purchase or transfer an assault weapon in the near future that the Boulder County Ordinance would otherwise prohibit. No such purchases or transfers would be prohibited under other Colorado state law. Accordingly, RMGO and NAGR have introduced

sufficient evidence to challenge the Future Conduct Clause of the unincorporated Boulder County Ordinance with respect to assault weapons based on Doe III and JB's future conduct.

### 2.    LCMs

***Superior.*** Ms. Hill's Declaration does not allege that any members of NAGR or RMGO who reside in Superior plan to purchase or transfer LCMs in the future. *See* [Doc. 100-1 at ¶ 1]. Accordingly, RMGO and NAGR have not carried their burden of establishing standing to challenge the Future Conduct Clause of the Superior Ordinance with respect to LCMs.

***Boulder County.*** Ms. Hill's Declaration states that three RMGO and NAGR members in unincorporated Boulder County "will obtain banned rifles or magazines within the next 18 months" and that two "plan to transfer banned rifles and magazines." [*Id.* at ¶¶ 6–7]. With respect to LCMs, Ms. Hill states that NAGR member CG "plans to transfer [his] Glock 17 15-round magazine to children and grandchildren." [*Id.* at ¶ 7]. Applying *Polis*, CG has indicated a present intent to make an otherwise prohibited transfer of a firearm in the near future. Accordingly, NAGR carried its burden of establishing standing to challenge the Future Conduct Clause of the Boulder County Ordinance with respect to LCMs.

### C.    Germaneness of the Interests to the Organization's Purpose

The next element of organizational standing considers whether the interests the organization seeks to protect are germane to the organization's purpose. *N. N.M. Stockman's Ass'n*, 30 F.4th at 1219. Plaintiffs initially submitted the Declaration of Dudley Brown ("Mr. Brown"), President of RMGO and NAGR, in support of their assertion of

associational standing, [Doc. 76-6], which the Court found insufficient to justify standing, [Doc. 96 at 16].  However, as pertinent here, Mr. Brown's initial Declaration stated that "RMGO and NAGR represent the interests of those of their members whose Second Amendment rights have been infringed by the Ordinances challenged in this action"  and that "RMGO and NAGR are nonprofit membership and donor-supported organizations that seek to defend the right of all law-abiding individuals to keep and bear arms."  [Doc. 76-6 at ¶¶ 3, 5].  RMGO and NAGR seek to protect the Second Amendment rights of their members, and Mr. Brown alleges that the Ordinances would infringe upon those Second Amendment rights.  [*Id.* at ¶ 4].

Therefore, RMGO and NAGR have demonstrated that the interests they seek to protect, namely Second Amendment rights, are germane to their purpose of "defend[ing] the right of all law-abiding individuals to keep and bear arms."  [*Id.* at ¶ 3].

### D.    Participation of Individual Members

Third and finally, the Court considers whether the claim Plaintiffs assert, or the relief they request, requires the participation of individual members in the lawsuit.  Here, because RMGO and NAGR present a facial challenge to the Ordinances, there is no need for the organizational members to participate in the lawsuit.  *Cf. Colo. Outfitters*, 823 F.3d at 549–50 (finding no organizational standing when members did not have standing in their own right, not on the basis of participation of individual members in the suit itself).

RMGO and NAGR challenge the Ordinances on their face, alleging that the Ordinances unconstitutionally infringe upon Plaintiffs' Second Amendment Rights.  [Doc. 1 at ¶ 48].  Therefore, the individual members of RMGO and NAGR need not participate in the suit for the organizations to have standing.

**CONCLUSION**

To clearly reflect the scope of this action and its constitutional challenges, this Court finds that it is appropriate to **ORDER** Plaintiffs to file a Verified Second Amended Complaint that reflects the remaining Plaintiffs and claims resulting from the rulings set forth herein. *See* Fed. R. Civ. P. 1. Then, the Parties shall file any renewed Motions for Summary Judgment directed at the Verified Second Amended Complaint, incorporating all arguments and authority in such document.

For the reasons set forth herein, it is **ORDERED** that:

(1)   The Court's Order to Show Cause [Doc. 96] is **DISCHARGED in part** and **MADE ABSOLUTE in part**;

(2)   Plaintiffs **SHALL FILE** a Verified Second Amended Complaint no later than **July 23, 2025** reflecting the following claims that remain:

a.   A challenge of the Current Possession Clause of the applicable Ordinance with respect to large capacity magazines brought by:

i.   Plaintiff Rocky Mountain Gun Owners against the City of Superior, Colorado;

ii.   Plaintiffs Bryan LaFonte and Rocky Mountain Gun Owners against the City of Louisville, Colorado; and

iii.   Plaintiffs James Michael Jones, Rocky Mountain Gun Owners, and National Association of Gun Rights against the City of Boulder, Colorado;

b.   A challenge to the Future Possession Clause of the applicable Ordinance with respect to assault weapons brought by:

      i.  Plaintiffs Bryan LaFonte and Rocky Mountain Gun Owners against City of Louisville, Colorado;

      ii.  Plaintiffs Rocky Mountain Gun Owners and National Association of Gun Rights against the Board of County Commissioners of Boulder County, Colorado;

  c.  A challenge to the Future Possession of the applicable Ordinance with respect to large capacity magazines brought by:

      i.  Plaintiffs Bryan LaFonte and the Rocky Mountain Gun Owners against City of Louisville, Colorado; and

      ii.  Plaintiffs James Michael Jones, Rocky Mountain Gun Owners, and National Association of Gun Rights against the City of Boulder, Colorado; and

      iii.  Plaintiff National Association of Gun Rights against the Board of County Commissioners of Boulder County, Colorado;

(3)    All other claims are **DISMISSED without prejudice** for lack of standing;

(4)    Plaintiffs' Motion for Additional Discovery [Doc. 92] is **REINSTATED**, and **no further briefing is permitted**; and

(5)    The Parties **SHALL FILE** any renewed Motions for Summary Judgment no later than 14 days after the Court resolves Plaintiffs' Motion for Additional Discovery [Doc. 92].

DATED:  July 21, 2025                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge