## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02680-NYW-TPO

ROCKY MOUNTAIN GUN OWNERS,
NATIONAL ASSOCIATION FOR GUN RIGHTS,
CHARLES BRADLEY WALKER,
BRYAN LAFONTE,
GORDON MADONNA, and
JAMES MICHAEL JONES,

       Plaintiffs,

v.

THE TOWN OF SUPERIOR,
CITY OF LOUISVILLE, COLORADO,
CITY OF BOULDER, COLORADO, and
BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY,

       Defendants.

---

## FIRST AMENDED COMPLAINT
---

Pursuant to the Court's July 21, 2025, Order ("Order"), Plaintiffs submit the following First Amended Complaint.[1]

## I.  PARTIES

1.    Plaintiff Rocky Mountain Gun Owners ("RMGO") is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4) that does business in Colorado.

---

[1] The Order directed Plaintiffs to file a Second Amended Complaint. This is not possible because the complaint in this matter has not been amended previously.

2.      Plaintiff National Association for Gun Rights ("NAGR") is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4) that does business in Colorado.

3.      Plaintiff Bryan LaFonte ("LaFonte") is a law-abiding citizen. He resides in the Town of Louisville, Colorado.

4.      Plaintiff James Michael Jones ("Jones") is a law-abiding citizen. He resides in the City of Boulder.

5.      Defendant Town of Superior is a Colorado statutory town with an address of 124 East Coal Creek Drive, Superior, Colorado 80027.

6.      Defendant City of Boulder, Colorado is a Colorado home rule municipal corporation with an address of 1777 Broadway, Boulder, Colorado 80302.

7.      Boulder County is a subdivision of the State of Colorado and is a body corporate and politic in the State of Colorado empowered to sue and be sued.  Its address is 1325 Pearl Street, Boulder, Colorado 80302.

8.      Defendant City of Louisville, Colorado is a Colorado home rule municipal corporation with an address of 749 Main Street, Louisville, Colorado.

9.      At all times relevant to this Complaint, Defendants have been or will be acting under color of state law within the meaning of 42 U.S.C. § 1983.

## II.  JURISDICTION AND VENUE

10.     The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983.

11.    Plaintiffs' claims for declaratory and injunctive relief are authorized by
28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is
authorized by 42 U.S.C. § 1988.

12.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because
a substantial part of the events or omissions giving rise to Plaintiffs' claims
occurred in this district.

### III.  GENERAL ALLEGATIONS

**A.    The Ordinances**

13.    The Defendants are all political subdivisions of the State of Colorado. Each
Defendant passed separate but substantially similar ordinances regulating certain
arms, all of which became effective between July 7, 2022, and August 2, 2022.

14.    The Ordinances at issue include the Town of Superior, Colorado, Code Ch. 10,
art. IX (the "Superior Ordinance"), [Doc.[2] 96-1]; City of Boulder, Colorado, Rev. Code
Title 5, Ch. 8 (the "Boulder Ordinance"), [Doc. 96-2]; City of Louisville, Colorado,
Code Title 9, Ch. VIII (the "Louisville Ordinance," and together with the Superior
and Boulder Ordinances, the "Municipal Ordinances"), [Doc. 96-3]; and Boulder
County, Colorado, Ord. No. 2022-5 (the "Boulder County Ordinance," and
collectively with the Municipal Ordinances, the "Ordinances"), [Doc. 96-4].

15.    Each of the Ordinances set forth in the previous paragraph have similar
definitions of the statutory terms.  One such definition is "assault weapon."  The
term "assault weapon" as used in these Ordinances is not a technical term used in

---

[2] Plaintiffs use the convention of [Doc. ___] and the page number assigned by the
Electronic Case Files System for this District to refer to materials filed in this action.

the firearms industry or community for firearms commonly available to civilians. Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by tens of millions of law-abiding American citizens for lawful purposes.  However, as this is the term used by the Court in its Order, Plaintiffs will use the term under protest.

16.    The Ordinances' characterization of certain firearms magazines as large capacity ("LCM") is a politically-charged misnomer. Magazines capable of holding more than 10 rounds are standard capacity magazines. However, as this is the term used by the Court in its Order, Plaintiffs will use the term under protest.

17.    Each of the Individual Plaintiffs challenges the Ordinance governing the municipality (or county) in which he resides. Plaintiffs RMGO and NAGR are nonprofit membership- and donor-supported organizations that "seek to defend the right of all law-abiding individuals to keep and bear arms."  [Doc. 76-6 at ¶ 3]. The Individual Plaintiffs are all members of at least one of the organizations that serve as Organizational Plaintiffs.  [Doc. 76-7 at ¶ 2; Doc. 76-8 at ¶ 2; Doc. 76-9 at ¶ 2; Doc. 76-10 at ¶ 2; Doc. 76-12 at ¶ 2].

**B.    The Superior Ordinance**

18.    Section 10-9-20 of the Superior Ordinance defines the term "assault weapon." Section 10-9-20 states that the term "illegal weapon" includes any "assault weapon." Section 10-9-40 makes it illegal to possess, sell or otherwise transfer any "illegal weapon."

4

19.      Generally, under section 10-9-240, no person may acquire an assault weapon in the Town.

20.      Section 10-9-20 defines the term "large-capacity magazine" to mean any firearm magazine capable of holding more than ten rounds of ammunition.  Section 10-9-20 states that the term "illegal weapon" includes any "large-capacity magazine."  Section 10-9-40 makes it illegal to possess, sell or otherwise transfer any "illegal weapon."

**C.      The Boulder Ordinance**

21.      Section 5-8-2 of the Boulder Ordinance defines the term "assault weapon." Section 5-8-2 states that the term "illegal weapon" includes any "assault weapon." Section 5-8-10(a) makes it illegal to possess, sell or otherwise transfer any "illegal weapon" in the City of Boulder.

22.      Section 5-8-2 defines the term "large-capacity magazine" to mean any firearm magazine capable of holding more than ten rounds of ammunition.  Section 5-8-2 states that the term "illegal weapon" includes any "large-capacity magazine." Section 5-8-10 makes it illegal to possess, sell or otherwise transfer any "illegal weapon."

**D.      The County Ordinance**

23.      Section 1(a) of the County Ordinance defines the terms "assault weapon." Section 2(a) of the Ordinance makes it illegal to manufacture, import, purchase, sell or transfer any assault weapon in an unincorporated part of the County.

24.     Section 1(c) of the Ordinance defines the term "large-capacity magazine" to
mean any firearm magazine capable of holding more than ten rounds of
ammunition.  Section 2(a) of the Ordinance makes it illegal to manufacture, import,
purchase, sell or transfer any such magazine in an unincorporated part of the
County.

**E.      The Louisville Ordinance**

25.     Section 9.80.010 of the Louisville Ordinance defines the term "assault
weapon."  Section 9.80.010 states that the term "illegal weapon" includes any
"assault weapon."  Section 9.84.010(a) makes it illegal to possess, sell or otherwise
transfer any "illegal weapon" in the City of Louisville.

26.     Section 9.80.010 defines the term "large-capacity magazine" to mean any
firearm magazine capable of holding more than ten rounds of ammunition.  Section
9.80.010 states that the term "illegal weapon" includes any "large-capacity
magazine."  Section 9.84.010(a) makes it illegal to possess, sell or otherwise transfer
any "illegal weapon."

**F.      Plaintiffs' Activities**

**1.      Individual Plaintiffs**

27.     Plaintiff Jones. Plaintiff Jones owns three assault weapons, namely: an S&W
Sport I rifle (purchased on September 8, 2015); an S&W Sport II rifle (purchased on
June 23, 2016); a Colt Expanse CE1000 rifle (purchased on July 21, 2016); eight
S&W 6906 Magazines with a capacity of 12 rounds (purchased in August 2017); and
a HEXMAG HX-AR Series 2 Magazine with a capacity of 15 rounds (purchased in

6

July 2016). [Doc. 100-2 at ¶¶ 1–6]. All of the assault weapons he owns would be prohibited under the Boulder Ordinance. [*Id.* at ¶¶ 1–6].

28.     Plaintiff LaFonte. Plaintiff LaFonte owns a Daniel Defense DDM4V7 (purchased June 10, 2022); a Palmetto State Armory PA-15 (purchased February 28, 2024); and several Mission First Tactical 15/30PM556 AR-15 Magazines with 15-round capacities (purchased between June 2022 and March 2024). [Doc. 100-4 at ¶¶ 2–22]. He also owns several Sig Sauer magazines with capacities from 12 to 14 rounds. *Id.* The Louisville Ordinance would prohibit his possession of the Daniel Defense DDM4V7 "because it is a semi-automatic center-fire rifle that has the capacity to accept a detachable magazine and has a pistol grip, a telescoping stock, a flash suppressor, and a shroud that completely encircles the barrel," [*id.* at ¶ 5]; the Palmetto State Armory PA-15 "because it is a semi-automatic center-fire rifle that has the capacity to accept a detachable magazine and has a pistol grip, a telescoping stock, a flash suppressor, and a shroud that completely encircles the barrel," [*id.* at ¶ 9]; and all of his magazines "because each has a capacity of" 12, 14, or 15 rounds, [*id.* at ¶¶ 14, 22].

29.     The Municipal Ordinances simply outright prohibit the possession of LCMs. See generally [Doc. 96-1; Doc. 96-2; Doc. 96-3]. Defendants do not contest that Plaintiffs LaFonte and Jones have standing to challenge the LCM Possession Clauses of the Louisville and Boulder City Ordinances, respectively, [Doc. 102 at 10], and this Court has previously satisfied itself that both Plaintiff LaFonte and Plaintiff Jones have standing to assert these claims.

30.    Plaintiff LaFonte has "current plans to purchase a Daniel Defense DD5V4 (7.62×51mm NATO) within the next year," a "Glock 19 Gen5 with a threaded barrel in the next 6 months," and "3 additional 12-round P365 XL magazines within one year." [Doc. 100-4 at ¶¶ 24–26].

31.    Plaintiff Jones plans to purchase a "CZ compact 75D magazine with a capacity of 14 rounds within the next year." [Doc. 100-2 at ¶ 8]. Plaintiff LaFonte declares that he "intend[s] to purchase 3 additional 2-round P365 XL magazines" in one year. [Doc. 100-4 at ¶ 26].

### 2.    The Organizational Plaintiffs

32.    Defendants do not contest that RMGO and NAGR "have standing to challenge the Louisville and Boulder City's LCM Possession Clauses.

33.    Hannah Hill has authority to speak on behalf of both RMGO and NFGR regarding this matter.

34.    Superior. According to Hill an RMGO member identified as John Doe owns a "15-round pistol magazine". [Doc. 100-1 at ¶ 2]

35.    Boulder County. Hill's states that three RMGO and NAGR members in unincorporated Boulder County "will obtain banned rifles or magazines within the next 18 months" and "two [members] plan to transfer banned rifles and magazines." [*Id.* at ¶¶ 6–7]. Specifically, Hill discusses the future plans of each member: John Doe ("Doe III"), an RMGO member, "plans to purchase a Wilson Combat Recon Tactical AR-15" and "plans to give his Smith and Wesson M&P 15 to his adult

daughter," and JB, a member of both organizations, "would like to purchase an AK-47." [*Id*. at ¶¶ 5–7].

36.    Boulder County. Hill's states that three RMGO and NAGR members in unincorporated Boulder County "will obtain banned rifles or magazines within the next 18 months" and that two "plan to transfer banned rifles and magazines." [*Id*. at ¶¶ 6–7]. With respect to LCMs, Hill states that NAGR member CG "plans to transfer [his] Glock 17 15-round magazine to children and grandchildren." [*Id*. at ¶ 7].

37.    Dudley Brown is President of RMGO and NAGR. [Doc. 76-6]. Brown states that "RMGO and NAGR represent the interests of those of their members whose Second Amendment rights have been infringed by the Ordinances challenged in this action" and that "RMGO and NAGR are nonprofit membership and donor-supported organizations that seek to defend the right of all law-abiding individuals to keep and bear arms." [Doc. 76-6 at ¶¶ 3, 5]. RMGO and NAGR seek to protect the Second Amendment rights of their members, and Mr. Brown alleges that the Ordinances would infringe upon those Second Amendment rights. [*Id*. at ¶ 4]. Therefore, RMGO and NAGR have demonstrated that the interests they seek to protect, namely Second Amendment rights, are germane to their purpose of "defend[ing] the right of all law-abiding individuals to keep and bear arms." [*Id*. at ¶ 3].

38.    The individual members of RMGO and NAGR need not participate in this suit.

**G.      The Ordinances are Unconstitutional**

39.      The Second Amendment to the United States Constitution declares that "the

right of the people to keep and bear arms shall not be infringed."  U.S. Const.

Amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*,

561 U.S. 742 (2010); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S.

1 (2022).

40.      The right to keep and bear arms recognized in the Second Amendment is

made applicable to the states by the Fourteenth Amendment.  *McDonald, supra.*

41.      The Second Amendment protects the right of law-abiding citizens to own

weapons in common use by law-abiding citizens for lawful purposes.  *Heller*, *supra*,

at 627.

42.      There is a venerable tradition in this country of lawful private ownership of

semiautomatic rifles such as those banned by the Ordinances. Thus, the

Ordinances' prohibitions regarding such firearms are unconstitutional. Justice

Kavanaugh recently remarked:

> This case primarily concerns Maryland's ban on the AR–15, a semi-automatic
> rifle. Americans today possess an estimated 20 to 30 million AR–15s. And
> AR–15s are legal in 41 of the 50 States, meaning that the States such as
> Maryland that prohibit AR–15s are something of an outlier. See *Staples v.
> United States*, 511 U.S. 600, 612, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)
> (stating that AR–15s "traditionally have been widely accepted as lawful
> possessions"). . . .
>
> Under this Court's Second Amendment precedents, moreover, it can be
> analytically difficult to distinguish the AR–15s at issue here from the
> handguns at issue in *Heller*. AR–15s are semi-automatic, but so too are most
> handguns. (Semi-automatic handguns and rifles are distinct from automatic
> firearms such as the M–16 automatic rifle used by the military.) Law-abiding
> citizens use both AR–15s and handguns for a variety of lawful purposes,

including self-defense in the home. For their part, criminals use both AR–15s
and handguns, as well as a variety of other lawful weapons and products, in
unlawful ways that threaten public safety. But handguns can be more easily
carried and concealed than rifles, and handguns—not rifles—are used in the
vast majority of murders and other violent crimes that individuals commit
with guns in America.

*Snope v. Brown*, 145 S. Ct. 1534 (2025) (Kavanaugh, J., statement respecting denial
of certiorari).

43.    Justice Thomas stated the following in that same case:

"[W]eapons 'in common use' today for self-defense" and other lawful purposes
remain fully protected. *Bruen*, 597 U.S., at 32, 142 S.Ct. 2111 (quoting *Heller*,
554 U.S., at 627, 128 S.Ct. 2783). And, AR–15s appear to fit neatly within
that category of protected arms. Tens of millions of Americans own AR–15s,
and the "overwhelming majority" of them "do so for lawful purposes,
including self-defense and target shooting."

*Id*. (Thomas, J., dissenting from denial of certiorari).

44.    On June 5, 2025, the Court entered its decision in *Smith & Wesson Brands,*
*Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556 (2025) (Kagan, J.), in which the
Court dismissed Mexico's case against seven gun manufacturers for failure to state
a claim. Critically for purposes of this case, Mexico argued that its claim was
supported by the fact that the manufacturers sold "military style" assault weapons
including AR–15 rifles and AK–47 rifles. The Court rejected this argument, holding:

Finally, Mexico's allegations about the manufacturers' "design and marketing
decisions" add nothing of consequence. As noted above, Mexico here focuses
on the manufacturers' production of "military style" assault weapons, among
which it includes AR–15 rifles [and] AK–47 rifles. But those products are
both widely legal and bought by many ordinary consumers. (The AR–15 is the
most popular rifle in the country. See T. Gross, How the AR–15 Became the
Bestselling Rifle in the U. S., NPR (Apr. 20, 2023).) The manufacturers
cannot be charged with assisting in criminal acts just because Mexican cartel
members like those guns too.

*Id*., at 1569 (cleaned up; emphasis added). See also *Garland v. Cargill*, 602 U.S.

406, 429 (2024) (Sotomayor, J., dissenting) (semiautomatic rifles like those used in

11

Las Vegas shooting, which included AR-15s, are "commonly available, semiautomatic rifles").

45.     The AR-15 and other modern semiautomatic rifles epitomize the firearms the Defendants have banned. But as Justices Kagan, Kavanaugh, Thomas and Sotomayor observed in the cases cited above, these firearms are commonly owned for lawful purposes. Indeed, they are owned by tens of millions of law-abiding citizens, who use them for multiple lawful purposes including self-defense. Accordingly, under *Heller*, the Ordinances' ban on these firearms violates the Second Amendment.

46.     Magazines are indisputably "arms" protected by the Second Amendment, as the right to keep and bear arms necessarily includes the right to keep and bear components such as ammunition and magazines that are necessary for the firearm to operate. *See United States v. Miller*, 307 U.S. 174, 180 (1939) (citing seventeenth century commentary recognizing that "[t]he possession of arms also implied the possession of ammunition"); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("[W]ithout bullets, the right to bear arms would be meaningless").

47.     The magazines the Defendants have banned unquestionably satisfy the "common use" test.

48.     In *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated by Bruen, supra*, Judge Traxler stated:

> The record also shows unequivocally that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as

there are more than 75 million such magazines owned by them in the
United States. These magazines are so common that they are standard
on many firearms: On a nationwide basis most pistols are manufactured
with magazines holding ten to 17 rounds. Even more than 20 years ago,
fully 18 percent of all firearms owned by civilians were equipped with
magazines holding more than ten rounds."

*Id.*, 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks
omitted).

49.    Tens of millions of magazines capable of holding more than 10 rounds of

ammunition are commonly owned by millions of Americans for all manner of lawful

purposes, including self-defense, sporting, and hunting. They come standard with

many of the most popular handguns and long guns on the market, and Americans

own over 100 million of them.

50.    There can be no serious dispute that magazines capable of holding more than

10 rounds are bearable arms that satisfy the common use test and thus are

protected by the Second Amendment. The Ordinances' prohibition on the

possession, sale, or other transfer of the LCMs owned by Plaintiffs and/or their

members violates the Second Amendment.

51.    The Second Amendment's plain text covers the assault weapons and the

LCMs. It therefore falls to the Defendants to justify their regulations as consistent

with historical tradition rooted in the Founding. This they cannot possibly do so,

because *Bruen* and *Heller* have has already established that there is no tradition of

banning commonly possessed arms, such as the assault weapons and the LCMs.

52.    There is an actual and present controversy between the parties. The

Ordinances infringe on Plaintiffs' right to keep and bear arms under the Second

Amendment by generally prohibiting the possession of arms that are commonly possessed by millions of Americans for lawful purposes. Defendants deny these contentions. Plaintiffs desire a judicial declaration that the Ordinances, facially and/or as applied to them, violate their constitutional rights. Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights. The risk of criminal prosecution on account of exercising a constitutionally protected right unlawfully chills the exercise of that right and thus violates the Constitution even if the criminal defendant ultimately prevails.

53.     Plaintiffs are or will be injured by Defendants' enforcement of the Ordinances insofar as those provisions violate Plaintiffs' rights under the Second Amendment by precluding the acquisition, possession, transfer and use of arms that are "typically possessed by law-abiding citizens for lawful purposes." If not enjoined by this Court, Defendant will enforce the Ordinances in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to Defendant's present or contemplated enforcement of these provisions.

### IV. FIRST CLAIM FOR RELIEF
### Right to Keep and Bear Arms
### U.S. Const., amends. II and XIV

54.     The preceding paragraphs are realleged and incorporated by reference.

55.    The Ordinances ban firearms and firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide.  The Ordinances, therefore, generally prohibit residents of the Municipalities including Plaintiffs, from acquiring, keeping, possessing, and/or transferring arms protected by the Second Amendment.  There are significant penalties for violations of the Ordinances.

56.    These restrictions infringe on the right of the people of the Municipalities, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment.

57.    The Ordinances' prohibitions extend into Plaintiffs' homes, where Second Amendment protections are at their zenith.

58.    Defendants cannot satisfy their burden of demonstrating that these restrictions on the Second Amendment right of Plaintiffs to bear, acquire, keep, possess, transfer, and use arms that are in common use by law-abiding adults throughout the United States for the core right of self-defense in the home and other lawful purposes are consistent with this Nation's historical tradition of firearm regulation.

59.    The Order requires Plaintiffs to file this amended complaint asserting certain claims by certain parties and, apparently, not others. Plaintiffs do not understand this procedure as they explained in their July 17, 2025, Request for Clarification [Doc. 110].

60.    Accordingly, as required by the Court in its Order, Plaintiffs assert the following specific claims under this Claim for Relief:

a. A challenge of the Current Possession Clause of the applicable Ordinance with respect to large capacity magazines brought by:

   i. Plaintiff Rocky Mountain Gun Owners against the City of Superior, Colorado;

   ii. Plaintiffs Bryan LaFonte and Rocky Mountain Gun Owners against the City of Louisville, Colorado; and

   iii. Plaintiffs James Michael Jones, Rocky Mountain Gun Owners, and National Association of Gun Rights against the City of Boulder, Colorado;

b. A challenge to the Future Possession Clause of the applicable Ordinance with respect to assault weapons brought by:

   i. Plaintiffs Bryan LaFonte and Rocky Mountain Gun Owners against City of Louisville, Colorado;

   ii. Plaintiffs Rocky Mountain Gun Owners and National Association of Gun Rights against the Board of County Commissioners of Boulder County, Colorado;

c. A challenge to the Future Possession of the applicable Ordinance with respect to large capacity magazines brought by:

   i. Plaintiffs Bryan LaFonte and the Rocky Mountain Gun Owners against City of Louisville, Colorado; and

ii. Plaintiffs James Michael Jones, Rocky Mountain Gun Owners, and National Association of Gun Rights against the City of Boulder, Colorado; and

iii. Plaintiff National Association of Gun Rights against the Board of County Commissioners of Boulder County, Colorado.

61.    Nevertheless, for the purposes of preserving their claims that were dismissed without prejudice in the Order, all Plaintiffs incorporate herein and re-allege all factual allegations set forth in the original complaint and the various declarations they have previously filed in this case and reassert all claims set forth in the original complaint, including those previously dismissed without prejudice.

## V.  PRAYER FOR RELIEF

Plaintiffs pray that the Court:

62.    Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Ordinances are unconstitutional on their face or as applied to the extent their prohibitions apply to law-abiding adults seeking to acquire, use, transfer, or possess arms that are in common use by the American public for lawful purposes;

63.    Enter permanent injunctive relief enjoining Defendants and their officers, agents, and employees from enforcing the Ordinances;

64.    Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law;

65.    Award actual compensatory and/or nominal damages; and

66.     Grant any such other and further relief as the Court may deem proper.

## VI. PRESERVATION OF WALKER AND MADONNA CLAIMS

67.     Plaintiff Charles Bradley Walker ("Walker") is a law-abiding citizen. He resides in the Town of Superior, Colorado.

68.     Plaintiff Gordon Madonna ("Madonna") is a law-abiding citizen. He resides in the Town of Louisville, Colorado.

69.     In the Order, the Court appears to have dismissed without prejudice all of Walker's and Madonna's claims and ordered Plaintiffs to file this amended complaint without asserting those claims.

70.     As Plaintiffs explained in their July 17, 2025, Request for Clarification [Doc. 110], Walker and Madonna wish to preserve their claims for appeal.

71.     Accordingly, Walker and Madonna reassert the factual allegations concerning them that have been previously filed in this case, including, without limitation, the facts stated in Doc. 100-5 and Doc 100-6. They also re-assert their claims pursuant to the Second Amendment set forth in the original complaint.

Respectfully submitted this 1st day of August 2025.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge Colorado  80033
Voice:  (303) 205-7870; Fax:  (303) 463-0410
Email:  barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard

Wheat Ridge Colorado  80033
Phone Number:  (303) 991-7600
Fax Number:  (303) 991-7601
E-mail:  shaun@pearmanlawfirm.com
*Attorneys for Plaintiffs*

I, Dudley Brown, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury

that I have reviewed the foregoing, that I am competent to testify in this matter,

and that the facts contained therein related to RMGO and NAGR are true and

correct.

_____
Dudley Brown
Date:  August ____, 2025

I, Hannah Hill, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that

I have reviewed the foregoing, that I am competent to testify in this matter, and

that the facts contained therein related to RMGO and NAGR are true and correct.

_____
Hannah Hill
Date:  August ____, 2025

I, James Michael Jones, pursuant to 28 U.S.C. § 1746, declare under penalty

of perjury that I have reviewed the foregoing, that I am competent to testify in this

matter, and that the facts contained therein related to me are true and correct.

_____
James Michael Jones
Date:  August ____, 2025

Wheat Ridge Colorado 80033
Phone Number: (303) 991-7600
Fax Number: (303) 991-7601
E-mail:  shaun@pearmanlawfirm.com
*Attorneys for Plaintiffs*

I, Dudley Brown, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury

that I have reviewed the foregoing, that I am competent to testify in this matter,

and that the facts contained therein related to RMGO and NAGR are true and

correct.

_____

Dudley Brown
Date: August _____, 2025

I, Hannah Hill, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that

I have reviewed the foregoing, that I am competent to testify in this matter, and

that the facts contained therein related to RMGO and NAGR are true and correct.

_____

Hannah Hill
Date: August _____, 2025

I, James Michael Jones, pursuant to 28 U.S.C. § 1746, declare under penalty

of perjury that I have reviewed the foregoing, that I am competent to testify in this

matter, and that the facts contained therein related to me are true and correct.

_____

James Michael Jones
Date: August _____, 2025

19

I, Bryan LaFonte, pursuant to 28 U.S.C. § 1746, declare under penalty of

perjury that I have reviewed the foregoing, that I am competent to testify in this

matter, and that the facts contained therein related to me are true and correct.

Bryan LaFonte
Date: August ___, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2025, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email to parties of record.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington